UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GISSELLE RUIZ,<br>Individually and on behalf of all others<br>Similarly situated,<br>　　　　Plaintiff,<br><br>v.<br><br>BALLY TOTAL FITNESS HOLDING CORP.,<br>A Delaware Corporation, and<br>HOLIDAY UNIVERSAL, INC.,<br>A Delaware Corporation,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.05-11052 NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **AFFIDAVIT OF KATHLEEN M. GENOVA, ESQ.**

Now comes Kathleen M. Genova, Esq. and hereby deposes and states as follows:

1.　　I am counsel to Defendants, Bally Total Fitness Holding Corp. and

Holiday Universal, Inc. in this action. I make this affidavit of my own personal

knowledge.

2.　　On August 11, 2005, I spoke with Jane Kenworthy Lewis, who is

Assistant Clerk of the Supreme Judicial Court of the Commonwealth of Massachusetts.

Ms. Lewis indicated that the Supreme Judicial Court disposes of 95% of its cases within

130 days of oral argument, in conformity with its so-called 130 days rule. She also told

me that cases heard in September and October, which is early in the Court's term (which

begins in September) when it thus has a clear docket, are generally decided within an

average of sixty days and that it thus is likely that a case heard in September might be

decided in less than sixty days. She said that someone else at the Court keeps statistics

concerning such matters but that the statistics are not public and that I should report these figures as reflecting the Clerk's Office's "sense" of things.

    3.    Attached hereto as Exhibit A is a true and accurate copy of Memorandum of Decision and Order, dated May 10, 2004, in *Albats v. Town Sport Int'l.*, SJC-09432.

    4.    Attached hereto as Exhibit B is a true and accurate copy of the First Amended Complaint in *Albats*.

    5.    Attached hereto as Exhibit C is a true and accurate copy of Mass. R. App. P. 11.

    6.    Attached hereto as Exhibit D is a true and accurate copy of Supreme Judicial Court Standing Order, "Time Within Which Cases May Be Determined By The Appellate Courts."

    7.    Attached hereto as Exhibit E is a true and accurate copy of Supreme Judicial Court Rule 1:03.

    Signed under the pains and penalties of perjury this 17th day of August.

Kathleen M. Genova, Esq.

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the within document was served upon counsel of record for the Plaintiff, John J. Roddy, Jr., Esq., Roddy Klein & Ryan, 727 Atlantic Avenue, Boston, MA 02111, by sending a copy of the same to him by hand-delivery this 17th day of August, 2005.

Kathleen M. Genova

2

EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**CIVIL ACTION**
**No. 2002-04910**

### YEVGENIA ALBATS[1]

### TOWN SPORTS INTERNATIONAL, INC. d/b/a
### BOSTON SPORTS CLUB, & another[2]

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS'
### MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The plaintiff, Yevgenia Albats ("Albats"), filed a First Amended Class Action Complaint

on May 12, 2003 against the defendants, Town Sports International, Inc., d/b/a Boston Sports

Club and TSI Central Square, Inc. (collectively "TSI"). Albats asserts claims, on behalf of

herself as well as a class and sub-class similarly situated,[3] that the defendants violated G.L. c. 93,

§ 78 et seq., the Health Club Services Act (Count I), that the defendants were unjustly enriched

(Count II), for money had and received (Count III), for declaratory judgment pursuant to G.L. c.

231A (Count IV), and that the defendants committed unfair and deceptive trade practices, in

violation of G.L. c. 93A (Count V). The defendants now move to dismiss the amended

complaint, or in the alternative for summary judgment. For the reasons set forth below, the

defendants' motion for summary judgment is **ALLOWED** on all counts.

---

[1]Individually and on behalf of all others similarly situated.

[2]TSI Central Square, Inc.

[3]No class has been certified.

## BACKGROUND

The record reveals the following undisputed facts.[4] Both of the defendants are New York corporations. TSI is a leading owner and operator of fitness clubs in Massachusetts. With its wholly owned subsidiaries, TSI operates approximately twenty clubs in the Commonwealth. TSI Central Square, Inc. is one of those subsidiaries.

The primary membership sold by TSI is month-to-month, which may be terminated at will with thirty days advance notice. TSI drafts form contracts for use by its subsidiaries, and instructs that they be used. Those contracts provide standard language that applies to all members, and for monthly payment terms and initiation fees which vary. When executed, these contracts are between individual members and both TSI and a subsidiary.

On or about August 30, 2002, Albats executed a form contract to purchase a month-to-month membership at a health club owned and operated by the defendants. According to the terms of the contract, she paid a "non-refundable" initiation fee of $89.00 and the first month's dues, $52.50. The form contract signed by Albats includes the following provisions:

> **3.1 Medical Recommendation & Member Conduct.** Members and members' guests shall hold the club(s) harmless from any cost, claim, injury, dmage, or liability incurred at the club(s) except resulting from the negligence of TSI, its agents or employees ...

> **3.4 Activity Risk.** ... Members and members' guests assume the risk of any and all accidents or injuries of any kind which may be sustained by reason of or in connection with use of the facilities and release, discharge and absolve TSI, its agents and employees from any and all liability or responsibility except if such accident or injury is the result of the negligence of TSI, its agents or employees.

---

[4]Extraneous materials submitted by the defendants with their motion present material facts not included in the amended complaint. The plaintiff's responsive 9A materials do not dispute these facts, and so the plaintiff is deemed to have admitted them. Superior Court Rule 9A(b)(5). The motion will be treated as one for summary judgment pursuant to Mass. R. Civ. P. 12(b).

2

**3.5 Loss of Property.** TSI shall not be liable for the disappearance, loss or theft of, or damage to, personal property, including money, negotiable securities or jewelry, unless the member or guest shall have deposited the same with TSI and received a receipt in writing for such property. In no event, however, even though such property is so deposited and a receipt is given, shall TSI's liability for disappearance, loss, theft or damage thereof exceed the lesser of the actual value or $100.

The front page of the form contract contained the following provision:

**CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL WITHOUT ANY PENALTY OR FURTHER OBLIGATION BY CAUSING A WRITTEN NOTICE OF YOUR CANCELLATION TO BE DELIVERED IN PERSON OR POSTMARKED BY CERTIFIED OR REGISTERED UNITED STATES MAIL WITHIN THREE (3) BUSINESS DAYS OF THE DATE OF THIS CONTRACT OR THE DATE OF YOUR RECEIPT TO THE ADDRESS SPECIFIED IN THIS CONTRACT.**

The reverse side of the form contract contained the following provision regarding the initiation

fee.

**1.2 Initiation Fee.** There will be a one-time initiation fee. This fee may change from time to time at TSI's discretion. This fee is non-refundable. Resignation from the club(s) shall not terminate the obligation to pay the initiation fee in full. There will be no further initiation fee as long as the membership has not expired.

On December 5, 2002, Albats made a demand under G.L. c. 93A § 9, on behalf of herself

and all others similarly situated. She made that demand on the grounds that the form contract she

signed failed to comply with the provisions of the G.L. c. 93, §§ 78-88, referred to as the Health

Club Services Act. In a letter dated January 30, 2003, the defendants responded to the plaintiff's

c. 93A demand (the "response letter").[5] The defendants did not respond with any offer of

monetary damages, as they took the position that the plaintiff had failed to specify an injury to

herself or any member of the proposed class. Although maintaining that the form contracts did

not violate any law, TSI offered to make two changes to the contract language. First, TSI offered

---

[5] By agreement of the parties, additional time was allowed for the defendants to respond.

to replace the "Medical Recommendation and Member Conduct" and "Activity Risk" provisions

with a new provision which provides:

> **Activity Risk & Medical Recommendations:** Any strenuous athletic or physical activity
> involves certain risks. Members represent that they are aware of the possibility that
> accidents or injuries of any kind may be sustained by reason of or in connection with use
> of the facilities. Further, members that [sic] there are no medical or physical conditions
> that would prevent them from using exercise facilities at the club(s), and that they have
> not been instructed by any physician to refrain from using such facilities. Physical
> examinations are recommended for all members and especially for members who are
> elderly, pregnant, unaccustomed to physical exertion, or who have physical limitations, a
> history of high blood pressure, heart problems, or other chronic illness. Before beginning
> any fitness program, each member is responsible for obtaining authorization, if
> appropriate, from his or her doctor. Members who are over thirty-five years of age, or
> have any Coronary Risk Factors, should have a full cardiovascular stress test
> administered by a doctor. Members shall not use the club(s) facilities in such a way as to
> endanger the health or safety of themselves or others.

Additionally, TSI proposed to modify the "Loss of Property" provision to read:

> **Personal Property:** Health and fitness clubs experience some incidents of theft,
> including theft from lockers. Accordingly, members and their guests are warned not to
> bring valuable personal property to a BSC [TSI] club. Members and their guests agree to
> take all reasonable precautions to protect any personal property that they choose to bring
> to a club.

In the response letter, counsel for the defendants requested of plaintiff's counsel that "If

you believe that the above changes will not bring TSI into compliance with the Massachusetts

Health Club Act, please let me know in writing with particular suggestions for further revision as

soon as possible." Plaintiff's counsel did not respond to the letter. TSI has since implemented

the proposed changes to the language of the form contract.

The records of TSI show that Albats used the health club facility several times a week

between September 23, 2002 and June 17, 2003, the date of the affidavit submitted with

defendants' motion. The original complaint in this matter was filed on November 20, 2002.

4

Albats filed the present amended complaint, adding her claims under G.L. c. 93A, on May 12, 2003.

## DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); *Cassesso v. Comm'r of Correction*, 390 Mass. 419, 422 (1983); *Community National Bank v. Dawes*, 360 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles him to judgment as a matter of law. *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809 (1991); *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991).

### I. Health Club Services Act

Count I of Albats' amended complaint seeks damages pursuant to G.L. c. 93,§ 86. However, as she fails to allege any injury, she lacks standing to bring this claim. The statute provides in part, that "[a]ny buyer who has suffered any injury as a result of a violation of sections seventy-eight to eighty-eight, inclusive, or the attorney general, may bring an action for recovery of damages or other relief..." G.L. c. 93, § 86. The Health Club Services Act, G.L. c. 93, §§ 78-88, provides specific rules about the form and content of contracts for health club services. Albats asserts she was injured because her contract with TSI failed to conform with

5

sections of that statute, and thus she lost her protections under the law. However, this argument

fails. A statute is to be read for its plain meaning. *Iodice v. City of Newton*, 397 Mass. 329, 332-

333 (1986); *Gurley v. Commonwealth*, 363 Mass. 595, 598 (1973). The language of § 86 clearly

indicates that the legislature contemplated that a plaintiff have both a contract that violates a

provision of the act, as well as an injury resulting from that violation. Albats cannot make that

showing. The defendants' motion for summary judgment on Count I is allowed.

## II. Declaratory Judgment

Count IV of the amended complaint seeks a declaratory judgment of the rights of the

parties under the form contract, and a declaration that the contract is "void and unenforceable"

pursuant to G.L. c. 93, § 85. That statute provides, in part, that "[a]ny contract for health club

services which does not comply with the applicable provisions of this chapter shall be void and

unenforceable as contrary to public policy." G.L. c. 93, § 85. The defendants contend that they

are entitled to summary judgment on Count IV because the plaintiff lacks standing and fails to

allege an "actual controversy." Further, they assert that any controversy that is alleged is moot,

in light of the changes made to the form contract provisions.

The Superior Court may "make binding declarations of right, duty, status and other legal

relations," provided there is an actual controversy, specifically pled by a plaintiff with standing to

assert the claim. G.L. 231A, § 1; *Massachusetts Assn. of Independent Insurance Agents &*

*Brokers, Inc. v. Comm'r of Insurance*, 373 Mass. 290, 292-293 (1977). An actual controversy is

"a real dispute caused by the assertion by one party of a legal relation, status or right in which he

has a definite interest, and the denial of such assertion by another party also having a definite

interest in the subject matter, where the circumstances attending the dispute plainly indicate that

6

unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *Bunker Hill Distributing, Inc. v. District Attorney for the Suffolk District*, 376 Mass. 142, 144 (1978), quoting *School Comm. of Cambridge v. Superintendent of Schools of Cambridge*, 320 Mass. 516, 518 (1946).

Declaratory judgment is not appropriate in the present case. The plaintiff claims that her disagreement with TSI over the validity of the original form contract presents an actual controversy. However, the undisputed facts do not support the conclusion that without a declaration of the parties' rights litigation will immediately follow. There is no further conflict pending. Albats does not seek this declaration in any way to resolve an immediate question as to her rights. She does not assert a desire to be released from her contractual obligation to TSI. She continues to honor the contract, and to participate in activities at TSI clubs. The contract has been modified.[6]

Although determination of the rights of parties to a contract is an appropriate subject for declaratory judgment, *Sahli v. Bull HN Systems, Inc.*, 437 Mass. 696, 705 (2002), and a party to a contract need not place himself in jeopardy in order to obtain a declaratory judgment, *School Comm. of Cambridge*, 320 Mass. at 518, he must present more than a theoretical or abstract disagreement. See *Brown v. Neelon*, 335 Mass. 357, 360-361 (1957). As the undisputed facts do not present an imminent conflict that, if resolved, would avoid litigation, the plaintiff's claim

---

[6]As to the issues addressed by TSI's changes to the form contract, the plaintiff's claim is likely moot. "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome." *Acting Superintendent of Bournewood Hosp. v. Baker*, 431 Mass. 101, 103 (2000), quoting *Attorney Gen. v. Comm'r of Insurance*, 403 Mass. 370, 380 (1988).

7

fails as a matter of law and the motion for summary judgment is allowed on Count IV.

### III. G.L. c. 93A

In Count V of the amended complaint, the plaintiff alleges that the defendants committed

unfair and deceptive trade practices in violation of G.L. c. 93A. The defendants contend that,

because a reasonable response to the plaintiff's demand letter bars recovery beyond what was

offered, G.L. c. 93A, § 9(3), this count should be dismissed. Further, they assert that Albats fails

to state a claim because she does not allege an injury due to the defendants' conduct.

The defendants' first contention is not persuasive. They assert that they made a

reasonable response to the plaintiff's demand letter, that the plaintiff's recovery would be limited

to what was offered, and that they have implemented the changes proposed in their response.

Thus, defendants conclude that the Court should dismiss or grant summary judgment because,

essentially, the issue is moot. However, although a reasonable response to a 93A demand letter

can limit a plaintiff's recovery, it is well settled law that the reasonableness of a response is a

question of fact. *Shanley v. Rockland Trust Co.*, 49 Mass. App. Ct. 1119 (2000). It is the

defendant's burden to demonstrate that a response was reasonable. *Id.*, quoting *Kohl v. Silver

Lake Motors, Inc.*, 369 Mass. 795, 799 (1976). The defendant asks that the Court make a finding

of fact that the response was reasonable. This is improper on a motion for summary judgment.

The defendants argue, in the alternative, that Albats has failed to satisfy the injury

requirement of G.L. c. 93A. A consumer may bring suit if he is injured by unfair or deceptive

acts or practices in the conduct of trade or commerce. G.L. c. 93A, §§ 2, 9. He is entitled to

damages "in the amount of actual damages or twenty-five dollars, whichever is greater; or up to

three but not less than two times such amount if the court finds that the use or employment of the

8

act or practice was a willful or knowing violation..." .G.L. c. 93A, § 9(3).

Section 84 of G.L. c. 93 provides that a violation of the provisions of the statute by a seller or his agents is a per se "unfair and deceptive trade practice," violating G.L. c. 93A. Albats must also, however, show an injury resulting from the violation. *Lord v. Commercial Union Insurance Co.*, 60 Mass. App. Ct. 309, 321-322 (2004) (holding that the trial court's award of the statutory minimum $25 damages, and attorney's fees, was improper where there was a finding of fact that the c. 93A violation did not cause the plaintiff's loss), review denied, 441 Mass. 1104 (2004). The plaintiff asserts that her injury exists in the denial of her protections under G.L. c. 93. Although the "invasion of a legally protected interest" may satisfy the injury requirement of G.L. c. 93A, § 9, see *Leardi v. Brown*, 394 Mass. 151, 160 (1985), that is a limited holding. *Lord*, 60 Mass. App. Ct. at 323. "The legislature ... did not intend to confer on plaintiffs who have suffered no harm the right to receive a nominal damage award which will in turn entitle them to a sometimes significant attorney's fee recovery." *Id.*, at 321-322. The defendants' motion is allowed as to Count V.

### IV. Quasi-Contractual Remedies

In Counts II and III Albats asserts claims for unjust enrichment and for money had and received, respectively. These are equitable remedies, for quasi-contract. However, the form contract remains in effect, as modified, see *supra*, and "(t)he law will not imply a contract where there is an existing express contract covering the same subject." *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956). Further, Albats received the benefit of her bargain with TSI. The defendants are entitled to judgment as a matter of law, and the motion for summary judgment on Counts II and III are allowed.

9

## ORDER

For the foregoing reasons, defendants' motion to dismiss or for summary judgment is

**ALLOWED**. Summary judgment shall enter for the defendants on all counts.

Julian T. Houston
Justice of the Superior Court

DATE: May _/0_ , 2004

10

205



## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO. 02-4910

| | |
|---|---|
| YEVGENIA ALBATS, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> TOWN SPORT INTERNATIONAL, Inc. d/b/a BOSTON SPORTS CLUB, a New York Corporation, and TSI CENTRAL SQUARE, INC. A New York Corporation <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

### First Amended Class Action Complaint

### Introduction

1. Plaintiff, Yevgenia Albats brings this class action against defendants Town Sport International, Inc d/b/a Boston Sports Club ("TSI, Inc."), and TSI Central Square, Inc. (collectively "TSI") to stop defendants' use of illegal, unfair and deceptive contract provisions and to obtain restitution for all persons injured by their conduct in Massachusetts.

### Nature of Action

2. Through its form health club agreements ("the Form Contracts"), TSI violates the express provisions of Massachusetts' law regulating health club service contracts, M.G.L. c. 93, § 78 *et seq.* (the "Act"), in three separate ways:

> a. TSI charges a non-refundable "initiation" fee, in contravention of section 81 of the Act, which requires that every member be given a three day period to rescind and be refunded "[a]ll monies paid pursuant to such contract;"

)       9.  TSI Central Square, Inc., a wholly-owned subsidiary of TSI, Inc., is a New York corporation with its principal place of business in New York, NY.

### Facts

10. TSI, Inc., operating under the name Boston Sports Club, is one of the leading owners and operators of health and fitness clubs in Massachusetts, operating, together with its wholly-owned subsidiaries, clubs at approximately twenty locations state-wide.

11. TSI, Inc. drafts Form Contracts and provides them to its subsidiaries, including TSI Central Square, Inc. with instructions to use them in the regular course of business.

12. TSI's Form Contracts, when completed, contain monthly payment terms and initiation fee amounts which vary with respect to individual consumers and uniform, boilerplate terms applicable to all contracting consumers. A copy of TSI's challenged Form Contract is attached hereto as Exhibit A.

13. These Form Contracts are entered into by and between a specific member on the one hand and TSI, Inc. and a specific TSI subsidiary on the other hand.

14. TSI principally sells month-to-month payment plans, cancelable at the member's will by providing thirty day advance notice.

15. On or about August 30, 2002, Ms. Albats executed a Form Contract for a month long membership at a health club owned and operated by TSI, Inc. and TSI Central Square, Inc.

16. Ms. Albats' contract evidences that she paid an "initiation" fee of $89.00 as well as the first month's dues of $52.50.

17. On December, 5, 2002, Ms. Albats made demand upon Defendants pursuant to M.G.L. c. 93A, § 9, on behalf of herself and all similarly situated
)    individuals.

3

.. of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club."

22. In violation of the Act, TSI's Form Contracts provide that:

**3.1    Medical Recommendation & Member Conduct:** Members and members' guests shall hold the club(s) harmless from any cost, claim, injury, damage, or liability incurred at the club(s) except resulting from the negligence of TSI, its agents or employees.....

**3.4    Activity Risk:** . . . Members and members' guests assume the risk of any and all accidents or injuries of any kind which may be sustained by reason of or in connection with use of the facilities and release, discharge and absolve TSI, its agents and employees from any and all liability or responsibility except if such accident or injury is the result of the negligence of TSI, its agents or employees.

**3.5    Loss of Property:** TSI shall not be liable for the disappearance, loss or theft of, or damage to, personal property, including money, negotiable securities or jewelry, unless the member or guest shall have deposited the same with TSI and received a receipt in writing for such property. In no event, however, even though such property is so deposited and a receipt is given, shall TSI's liability for disappearance, loss, theft or damage thereof exceed the lesser of the actual value or $100.

*Mandated Consequences Of TSI's Statutory Violations*

23. As TSI's Form Contracts do not comply with the provisions of the Act, c. 93, § 85 deems them "void and unenforceable as contrary to public policy."

24. In addition, TSI's purported waiver of refund rights and waiver of certain claims and defenses as recited above violate:

a. M.G.L. c. 93, § 101, which expressly prohibits the waiver of statutorily endowed consumer rights;

b. Section 84(7) of the Act, which provides that the direct or indirect misrepresentation of members' "rights to cancel under

5

22

29. Common questions of law and fact exist as to all members of the class and predominate over questions affecting individual members of the class. Common questions include:

> a. Does TSI's provision that initiation fees are non-refundable violate M.G.L. c. 93, § 81?
>
> b. Does the foregoing provision violate M.G.L. c. 93, § 82?
>
> c. Do TSI's Form Contracts violate M.G.L. c. 93, § 80 because they require members to waive various claims against it?
>
> d. Do TSI's Form Contracts violate M.G.L. c. 93,§ 101 because they require members to waiver statutorily endowed consumer rights?
>
> e. Are TSI's contracts void as a result of its violations of M.G.L. c. 93, § 78, *et seq.*?
>
> f. Are the class members entitled to damages for unjust enrichment and/or monies had and received?
>
> g. Do TSI's form contracts violate c. 93A?

30. Plaintiff will fairly and adequately protect the interests of the class, her claims are typical of the claims of the class, and she has retained counsel competent and experienced in complex class action litigation.

29. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

### Sub-class Allegations

30. Ms. Albats also brings this action on behalf of herself and all persons similarly situated, (referred to herein as the "Plaintiff Sub-Class") and defined as all persons who:

7

24

## COUNT I

### (Violations of M.G.L. c. 93 § 78, *et seq.*)

37. Plaintiff incorporates by reference and realleges the foregoing allegations.

38. Because TSI's Form Contracts fail to conform to M.G.L. c. 93, § 78, *et seq.*, pursuant to section 85 of the Act, they are rendered "void and unenforceable".

39. Pursuant to section 86 of the Act, the class members are entitled to recover "multiple damages" due to TSI's violations.

## COUNT II

### (Unjust Enrichment)

40. Plaintiff incorporates by reference and realleges the foregoing allegations.

41. TSI has been wrongfully and unjustly enriched by its sale of void agreements.

42. In addition and in the alternative, TSI has been wrongfully and unjustly enriched by its inclusion and use of illegal contract provisions.

43. It is against equity and good conscience to permit Defendants to retain the monies and benefits they have received as a result of their wrongful practices described above.

## COUNT III

### (Money Had and Received)

44. Plaintiff incorporates by reference and realleges the foregoing allegations.

45. TSI received money belonging to the plaintiff and the Plaintiff Class.

46. TSI benefited from receipt of the money.

47. Under principles of equity and good conscience, TSI should not be allowed to keep the money.

9

)        55. TSI's violations of c. 93, §§ 80-82 are *per se* violations of c. 93A pursuant to c. 93, § 84.

56. TSI's conduct was willful or knowing within the meaning of M.G.L. c. 93A, §2.

57. The plaintiff and class members have suffered damages by virtue of TSI's violations.

58. TSI's refusal to grant relief upon demand was in bad faith, with knowledge or reason to know that the acts or practices complained of violated c. 93A, §2.

### Count V:  Unfair and Deceptive Acts or Practices

59. Plaintiff incorporates by reference and realleges the foregoing allegations:

60  By engaging in the conduct complained of, Defendants engaged in unfair

and deceptive acts and practices, in violation of M.G.L.. c. 93A. As a result thereof,

plaintiff and the class have been damaged in an amount to be determined at trial.

61. The unfair and deceptive acts include, but are not limited to:

a) misrepresenting Ms. Albats' and class members' rights to cancel their contracts under M.G.L. c. 93 § 81, 82;

b) requiring members to waive broad categories of claims against TSI, its agents and employees, in direct violation of M.G.L. c. 93 80.

c) failing to implement systems and procedures sufficient to insure that TSI would abide by its obligations under applicable Massachusetts law;

d) failing to act in good faith and deal fairly in its interactions with Ms. Albats and other similarly situated individuals

e) engaging in other unfair and deceptive practices in the marketing and sale of membership contracts.

62. TSI's violations of c. 93, §§ 80-82 are *per se* violations of c. 93A pursuant to c.

93, § 84.

ｊ

)

Respectfully submitted,
Yevgenia Albats
By her attorneys

John Roddy, BBO #424240
GRANT & RODDY
44 School Street
Boston, MA 02108
Telephone: (617) 248-8700
Fax: (617) 248-0720

John Blim
Jay Edelson
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Fax: (312) 913-9401

Christopher P. Edelson
CHAO & EDELSON, LLC
230 Park Avenue
26th Floor
New York, NY 10169
Telephone: (212) 867-4751
Fax: (212) 867-4755

## JURY DEMAND

Plaintiff demands a trial by jury.

John Roddy

Date:  May 8, 2003

13

30

**EXHIBIT A**

## Town Sports International (TSI) Clubs Rules and Regulations

**1.0 MEMBERSHIP AND PAYMENTS**

**1.1 Rules and Regulations.** Each member shall complete and sign a membership application form and agree to abide by the club(s) rules and regulations, and any amendments and/or modifications subsequently made by the club(s) management. Upon joining, members must pay the appropriate initial charges.

**1.2 Initiation Fee.** There will be a one-time initiation fee. This fee may change from time to time at TSI's discretion. This fee is non-refundable. Resignation from the club(s) shall not terminate the obligation to pay the initiation fee in full. There will be no further initiation fee as long as the membership has not expired.

**1.3 Monthly Dues.** Members shall pay, in advance, monthly membership dues. TSI may adjust monthly dues once each calendar year upon giving members thirty (30) days prior notice, posted in the clubs, and/or sent by mail. TSI may adjust court fees, or any other fees, other than monthly dues, at any time.

**1.4 Form of Payment.** Monthly dues and incidental charges are payable only by electronic funds transfer from the member's checking account, American Express, MasterCard, or VISA account. Members must authorize such payments to be made through a third-party administered electronic funds transfer system. Members maintain full control and privacy over their accounts at all times, and the transfer of funds affects only those fees which have prior authorization of the member. The transfers will take place automatically once every month unless TSI notifies the member otherwise. TSI has placed, in accordance with Massachusetts State Law, security guaranteeing fulfillment of its obligations under membership contracts entered into, should the company be unable to fulfill its obligation prior to the termination of the member's contract.

**1.5 Advance Payment.** Members may pay the full year's dues, as well as the initiation fees, in advance (by cash, check or acceptable credit card). After the member's first year, he or she may continue membership in the club(s) by either again paying the next year's dues in advance or converting to monthly payments using the Electronic Funds Transfer system.

**1.6 Change of Membership Type.** Members may change their membership classification upon request in writing and upon payment of additional initiation fees and membership dues, if required. No refund of initiation fees will be made by TSI. However, an appropriate increase or decrease in monthly dues will be made. There will be a processing charge, which may be adjusted from time to time.

**1.7 Change of Membership Information.** Members should promptly notify the club in writing of any changes in address or telephone number. Failing such notice, all communications shall be presumed to have been received by the members within five days after mailing. Members should notify TSI of a change in their billing information.

**1.8 Returned Payment Penalty.** Members will automatically be charged $10 for any returned payment item due to closed accounts, insufficient funds, etc. This charge may be adjusted from time to time.

**1.9 Limited Memberships.** It is to be expected that there may be occasional delays, especially during prime time, in using the fitness equipment; that members may not always be able to reserve a court for the preferred time; or that members may not be able to attend preferred exercise classes.

**1.10 Indebtedness of Member.** If the indebtedness of any member so notified exceeds $25 and he or she fails to pay same within the time specified in the notice requesting payment, he or she may be denied the use of the club(s) facilities until such indebtedness has been paid in full.

**1.11 Delinquency Assessments.** If a member fails to pay when due any amount owed to TSI, (i) such member shall pay to TSI interest on such amount at the rate of eighteen percent (18%) per annum, or if lesser, the highest possible rate of interest legally permitted, and (ii) such member agrees to pay all court costs plus reasonable attorney's fees if TSI must refer such member's account to an attorney who is not a TSI employee.

**2.0 TRANSFERS AND CANCELLATIONS OF MEMBERSHIP**

**2.1 Transfer of Membership.** A member may transfer his or her membership to another person or another TSI club at any time, subject to the club's approval, such approval not to be unreasonably withheld. The transfer will become effective when the transferee has provided the club with all necessary information and financial authorizations and has signed a membership application agreeing to abide by the rules and regulations of the club. There is a transfer fee, which may be adjusted from time to time. Membership rights may not be assigned or transferred until such time as the initiation fee and any dues and incidental charges have been paid in full, and the membership card has been returned to TSI.

**2.2 Membership Term.** See front of Contract

**2.3 Cancellation of Membership.** See front of Contract

**2.4 Revocation of Membership.** At the discretion of TSI, a membership may be revoked at any time or extension of a membership may be denied if in the reasonable judgment of TSI the member constantly failed to observe the rules and regulations or has otherwise behaved in a manner contrary to the best interests of the club(s) or the club(s) members.

**3.0 MEMBER RISK**

**3.1 Medical Recommendation & Member Conduct.** Members and members' guests shall hold the club(s) harmless from any cost, claim, injury, damage, or liability incurred at the club(s) except resulting from the negligence of TSI, its agents or employees. Members are required to complete a medical history questionnaire, which includes a representation that there are no medical or physical conditions which would prevent them from using the club(s) exercise facilities, and that they have not been instructed by any physician to refrain from using such facilities. Physical examinations are recommended for all members and especially for members who are elderly, pregnant, unaccustomed to physical exertion, or who have physical limitations, a history of high blood pressure, heart problems, or other chronic illness. Before beginning any fitness program, each member is responsible for obtaining authorization, if appropriate, from his or her doctor. Members who are over thirty-five years of age, or have any Coronary Risk Factors, should have a full cardiovascular stress test administered by a doctor. Members shall not use the club(s) facilities in such a way as to endanger the health or safety of themselves or others. Members shall be responsible for any property damage or personal injury caused by them, their family, or their guests.

**3.2 Orientation.** Members and members' guests should seek instruction in the use of all equipment, including fitness machines, free-weights, and cardio-aerobic equipment, before using the club(s) facilities.

**3.3 Medical Disclaimer.** Each member has been informed and acknowledges that the club(s) have made no claims as to medical results which can or may be obtained through use of the club(s) facilities. The club(s) have neither suggested nor will suggest any medical treatment to members. Only licensed professionals are qualified to give medical advice. Members are instructed not to act on the advice given by any unlicensed employee until such advice has been verified with a licensed professional or their own physician. Each member represents that there is no medical or physical condition which would prevent them from using all or any of the club(s) exercise facilities, and each member further represents that he/she has not been instructed by any physician not to do so.

**3.4 Activity Risk.** Any strenuous athletic or physical activity involves certain risks. Members and members' guests assume the risk of any and all accidents or injuries of any kind which may be sustained by reason of or in connection with use of the facilities, and release, discharge and absolve TSI, its agents and employees from any and all liability or responsibility except if such accident or injury is the result of the negligence of TSI, its agents or employees.

**3.5 Loss of Property.** TSI shall not be liable for the disappearance, loss or theft of, or damage to, personal property, including money, negotiable securities or jewelry, unless the member or guest shall have deposited the same with TSI and received a receipt in writing for such property. In no event, however, even though such property is so deposited and a receipt given, shall TSI's liability for disappearance, loss, theft or damage thereof exceed the lesser of the actual value or $100.

**4.0 GENERAL PROVISIONS**

**4.1 Membership Cards.** Members must present their own valid membership cards to the reception desk personnel upon entering the clubs. Members wishing to use the club(s) facilities without their membership card will be required to provide photo proof of identity. Lost membership cards will be replaced for a $5 fee. Lost or stolen cards must be replaced.

**4.2 Overnight Locker Use.** Athletic equipment and attire shall not be left in the clubs overnight unless stored in an assigned permanent storage locker.

**4.3 Permanent Locker Rental.** TSI will remove the contents of any per month rental locker after the rental period and will not be responsible for the contents.

**4.4 Pets and Bicycles.** Pets and bicycles will not be permitted in the clubs.

**4.5 Proper Attire & Equipment.** Club members and members' guests must wear appropriate attire when using the club's facilities. Shirts and closed-toe athletic shoes must be worn on the court and in the fitness and exercise areas.

**4.6 Protective Eye Wear.** Squash and racquetball players are required to wear eye protection on the courts.

**4.7 Personal Training.** Personal Training in TSI clubs is provided exclusively by employees or contractors of TSI. Members or members' guests may not provide personal training services or solicit clients in the clubs.

**4.8 Guest Fees.** There will be a guest fee for each guest that a member brings to the club. The fee may vary depending on the facilities used and the time of day, and these fees may be adjusted from time to time. The guest must be accompanied by a member at all times. All guests shall abide by the club(s) rules and regulations.

**4.9 Spotting.** Spotting by a member or trainer is required for all use of free-weights. Free-weights may not be used without supervision.

**4.10 Reciprocity & Use Privileges.** If you have a Passport membership, you may use any TSI club at any time. If you have a Gold membership, you are entitled to off-peak use of other clubs. The Off-Peak membership restricts use at your club to non-prime hours. Members must abide by the host club's rules and regulations. A club closing which is not the member's principal club does not entitle the member to dues credit or early cancellation refunds.

**4.11 Change of Facilities.** The club(s) reserves the right to change their facilities from time to time, to eliminate some of their facilities and services, or to add others.

**4.12 Closing of Clubs.** It is anticipated that, from time to time, a part of a club, or the entire facility will be temporarily unavailable to members while repairs, renovations or special events take place. Management will make every effort to minimize any disruption to members during these periods and if possible to schedule any work during off hours or summer months. Management may also offer members the use of other conveniently located clubs during the period of unavailability. The club(s) may be closed for holidays. Club hours of operation are displayed in each club and may be modified from time to time.

**4.13 Non-Discrimination.** TSI represents that it will not discriminate against any person because of sex, race, creed, age, color, national origin or ancestry in considering applications for membership clubs. The minimum age for club membership is 18 unless parental permission and TSI's consent is given.

**4.14 Act of God.** In the event an act of God, such as a hurricane, earthquake, etc., causes more than a temporary closing of the club(s), members' dues obligations will be suspended until such time as use of the facilities can be safely resumed. Original dues obligations will not otherwise be affected unless the club cannot reopen within one year.

**4.15 Changing these Rules.** TSI has the right to change these Rules at any time. TSI will notify members of any changes, and TSI will consider that a member has accepted the changes if such member keeps or uses his or her membership card after receipt of our notice. If a member does not accept the changes, such member may terminate his or her membership in the manner provided on the front of the contract.

---

*American Express, MasterCard and VISA are registered trademarks

EXHIBIT C

**Rule 10**                    **RULES OF APPELLATE PROCEDURE**

**Reporter's Notes to Appellate Rule 10(a)(1)—2001**

Prior to amendment in 2001, the first sentence of Appellate Rule 10(a)(1) provided that "the appellant" was to pay the docket fee to the clerk of the appellate court within ten days after receipt of notice of the assembly of the record or approval of an agreed statement. Where there have been multiple appellants or cross-appeals, the appellate clerks have required each appellant or cross-appellant to pay a separate docket fee. The 2001 amendment makes clear that separate docket fees are required.

## RULE 11.  DIRECT APPELLATE REVIEW

**(a) Application; When Filed; Grounds.** An appeal within the concurrent appellate jurisdiction of the Appeals Court and Supreme Judicial Court shall be entered in the Appeals Court before a party may apply to the Supreme Judicial Court for direct appellate review. Within twenty days after the docketing of an appeal in the Appeals Court, any party to the case (or two or more parties jointly) may apply in writing to the Supreme Judicial Court for direct appellate review, provided the questions presented by the appeal are: (1) questions of first impression or novel questions of law which should be submitted for final determination to the Supreme Judicial Court; (2) questions of law concerning the Constitution of the Commonwealth or questions concerning the Constitution of the United States which have been raised in a court of the Commonwealth; or (3) questions of such public interest that justice requires a final determination by the full Supreme Judicial Court. Oral argument in support of an application will not be permitted except by order of court.

**(b) Contents of Application; Form.** The application for direct appellate review shall contain, in the following order: (1) a request for direct appellate review; (2) a statement of prior proceedings in the case; (3) a short statement of facts relevant to the appeal; (4) a statement of the issues of law raised by the appeal, together with a statement indicating whether the issues were raised and properly preserved in the lower court; (5) a brief argument thereon (covering not more than ten pages of typing) including appropriate authorities, in support of the applicant's position on such issues; and (6) a statement of reasons why direct appellate review is appropriate. A certified copy of the docket entries shall be appended to the application. The applicant shall also append a copy of any written decision, memorandum, findings, rulings, or report of the lower court relevant to the issues on appeal. The application shall comply with the requirements of Rule 20.

**(c) Opposition; Form.** Within ten days after the filing of the application, any other party to the case may, but need not, file and serve an opposition thereto (covering not more than ten pages of typing) setting forth reason why the application should not be granted. The opposition shall not restate matters described in subdivision (b)(2) and (3) of this rule unless

the opposing party is dissatisfied with the statement thereof contained in the application. The opposition shall comply with the requirements of Rule 20.

**(d) Filing; Service.** One copy of the application and one copy of each opposition shall be filed in the office of the clerk of the Appeals Court. An original and seventeen copies of the application and of each opposition shall be filed in the office of the clerk of the full Supreme Judicial Court. Filing and service of the application and of any opposition shall comply with Rule 13.

**(e) Effect of Application Upon Appeal.** The filing of an application for direct appellate review shall not extend the time for filing briefs or doing any other act required to be done under these rules.

**(f) Vote of Direct Appellate Review; Certification.** If any two justices of the Supreme Judicial Court vote for direct appellate review, or if a majority of the justices of the Appeals Court shall certify that direct appellate review is in the public interest, an order allowing the application (or transferring the appeal sua sponte) or the certificate, as the case may be, shall be transmitted to the clerk of the Appeals Court; upon receipt, direct appellate review shall be deemed granted. The clerk shall forthwith transmit to the clerk of the full Supreme Judicial Court all papers theretofore filed in the case and shall notify the clerk of the lower court that the appeal has been transferred.

**(g) Cases Transferred for Direct Review; Time for Serving and Filing Briefs.** In any appeal transferred to the full Supreme Judicial Court from the Appeals Court:

(1) If at the time of transfer all parties have served and filed briefs in the Appeals Court, no further briefs may be filed except that a reply brief may be served and filed on or before the last date allowable had the case not been transferred, or within ten days after the date on which the appeal is docketed in the full Supreme Judicial Court, whichever is later.

(2) If at the time of transfer only the appellant's brief has been served and filed in the Appeals Court, the appellant may, but need not, serve and file an amended brief within twenty days after the date on which the appeal is docketed in the full Supreme Judicial Court. The appellee shall serve and file his brief within thirty days after service of any amended brief of the appellant, or within fifty days after the date on which the appeal is docketed in the full Supreme Judicial Court, whichever is later.

(3) Service and filing of a reply brief shall comply with Rule 19.

(4) If at the time of transfer to the full Supreme Judicial Court no party to the appeal has served or filed a brief, the appellant shall serve and file a brief within twenty days after the date on which the appeal is docketed in the full Supreme Judicial Court or

272

Case 1:05-cv-11052-NMG    Document 16-4    Filed 08/17/2005    Page 2 of 2

within forty days after the date on which the appeal was docketed in the Appeals Court, whichever is later.

Amended May 15, 1979, effective July 1, 1979; amended effective July 1, 1991; April 14, 1995; January 29, 1996; amended October 30, 1997, effective January 1, 1998; June 26, 2002, effective September 3, 2002.

#### Reporter's Notes—1973

Appellate Rule 11 implements the statutorily-authorized direct review by the Supreme Judicial Court of cases which would otherwise first be heard and determined in the Appeals Court; G.L. c. 211A, § 10. (For procedure subsequent to an Appeals Court decision, see Appellate Rule 27.1). Direct review may result if: (1) The Supreme Judicial Court (or two justices thereof) shall so order, either (a) sua sponte, or (b) on application of one or more parties; or (2) The Appeals Court (or a majority of the justices thereof) shall certify that direct review is in the public interest.

The rule deals with the mechanics of application for direct review, and also prescribes the procedure governing cases accorded direct review, no matter what the means which caused such review (order by the Supreme Judicial Court ex mero motu, order on application, or certification by the Appeals Court).

Of the routes to direct review, only one—Supreme Judicial Court order after application—ought appropriately to be governed by the Appellate Rules. The other two, self-initiated exercises of judicial discretion and administration, are intracourt matters not subject to procedural regulation.

What Appellate Rule 11(a)–(d) accomplishes, therefore, is to assure appellate parties the right to put the matter before the Supreme Judicial Court and to urge direct review; the rule leaves all other means by which review may be granted out of the parties' control entirely, and completely in the dispositive power of the respective courts.

The application for direct review proceeds parallel to the usual requirements, Appellate Rule 11(e). Application does not in any way "stop the clock" with respect to normal appellate procedure. Once review is granted, however, a special timetable controls, Appellate Rule 11(g). In general, any brief already filed in the Appeals Court need not be refiled in the Supreme Judicial Court; if no party has yet filed, the briefing schedule, proceeding as though the appeal had commenced initially in the Supreme Judicial Court, is controlled by Appellate Rule 19.

#### Reporter's Notes—1979

Appellate Rule 11 was previously applicable to direct appellate review in criminal cases by virtue of Supreme Judicial Court Rule 3:24, § 4(1) (1975) 366 Mass. 870, (1975) except that the words "the appeal is docketed" were taken to mean "the case is entered." That distinction is no longer viable (see Rule 10[ [a][2] ).

Only two changes are made in the former rule. A new first sentence is added to subdivision (a), which restates the first sentence of Supreme Judicial Court Rule 3:24 supra § 3. Section 3 also provided that:

All matters preliminary to the entry of . . . appeals [within the concurrent appellate jurisdiction of the Appeals and Supreme Judicial Court] which require action by an appellate court shall be presented to and disposed of by the Appeals Court.

That requirement is implicit in Rule 11.

Secondly, the time within which an application for direct appellate review may be filed is increased from ten to twenty days after the docketing of the appeal in the Appeals Court. The remainder of the rule is unchanged.

#### Reporter's Notes—1996

The 1996 amendment to Mass.R.A.P. 11(f), effective January 29, 1996, is a technical amendment to that portion of the first sentence relating to certification that direct appellate review by the Supreme Judicial Court is in the public interest. The amendment provides for certification by "a majority of the justices of the Appeals Court," replacing earlier language providing for certification by "all of the justices of the Appeals Court or any majority thereof."

#### Reporter's Notes—1997

The 1997 amendment to Appellate Rule 11(d) increased to seventeen the number of copies of an application for direct appellate review and of each opposition to be filed in the clerk's office of the Supreme Judicial Court. The amendment also clarified that an original is to be filed together with the seventeen copies.

#### Reporter's Notes—1999

The cover of applications for direct appellate review shall be white. See Appellate Rule 20(b), as amended in 1999.

#### Reporter's Notes to Appellate Rule 11(b)—2002

In 2002, the Supreme Judicial Court amended Appellate Rule 11(b) to require that an application for direct appellate review contain "a statement indicating whether the issues were raised and properly preserved in the lower court" and that "a copy of any written decision, memorandum, findings, rulings, or report of the lower court relevant to the issues on appeal" be appended to the application. Having a statement regarding whether issues were raised below and a copy of the lower court's decision will serve to benefit the court's determination in considering the application for direct appellate review.

## RULE 11.1  TRANSFER FROM SUPREME JUDICIAL COURT

In the case of a direct appeal to the Supreme Judicial Court, within fourteen days after the appeal has been docketed, or such further time as a single justice upon motion for cause shown may allow, any party may serve and file a motion, on notice, to transfer the appeal to the Appeals Court. The motion: (a) shall not exceed five typewritten pages; (b) shall succinctly specify the grounds for transfer; and (c) shall conform to Rules 13, 14, 15, and 20(b). Within seven days after filing of the motion, any other party may serve and file an opposition to the transfer. The opposition: (a) shall not exceed five typewritten pages; (b) shall succinctly specify the reasons for opposing the transfer; and (c) shall conform to Rules 13, 14, 15, and 20(b).

No oral argument will be permitted.

#### Reporter's Notes—1973

Appeals which have proceeded direct to the Supreme Judicial Court without application of a party, that is, on judicial certification or order, see Appellate Rule 11(f), have by definition not afforded the parties an opportunity to

273

EXHIBIT D

# STANDING ORDERS OF THE SUPREME JUDICIAL COURT

### Including Orders and Amendments Received Through January 15, 2005

*Table of Standing Orders*

Matters Not Disposed of in the County Court for More Than Six Months.*

Record of Proceedings in the Supreme Judicial Court of Suffolk County.*

Time Within Which Cases May Be Determined by the Appellate Courts.*

Storage of Documents at State Archives.*

Agreement Between the Supreme Judicial Court and the State Archivist.*

Time Standards for Civil Cases [Repealed].*

Authority of Appellate Clerks to Make Microforms of Transcripts in Their Custody.*

Advisory Committee to the Judicial Training Institute.*

Dismissals of Appeals and Reports Pending in the Supreme Judicial Court for Lack of Prosecution.*

Matters Pending in the Supreme Judicial Court for More Than Six Months Without Activity.*

Applications to a Single Justice Pursuant to Mass.R.Crim.P. 15(a)(2).

Suffolk County MPRE Notice and Filing Requirements.*

* Suggested title added by Publisher.

## MATTERS NOT DISPOSED OF IN THE COUNTY COURT FOR MORE THAN SIX MONTHS*

1. It is ORDERED that in May and November of each year there shall be a call, in the county court (single justice session), of all petitions and suits which have remained for more than six months upon the docket of the county court, without final disposition. The clerk of the Supreme Judicial Court for Suffolk County shall, without further order of the court, prepare lists for such calls, and shall give seasonable and appropriate notice by mail to all interested parties or their attorneys of record. The notice in each case shall state that the matter is being called for dismissal or other appropriate order, and that failure of a party or his attorney to answer may result in dismissal of the matter.

2. A copy of this order shall be filed with the clerk of the Supreme Judicial Court for Suffolk County.

Adopted February 8, 1972.

* Suggested title added by Publisher.

## RECORD OF PROCEEDINGS IN THE SUPREME JUDICIAL COURT OF SUFFOLK COUNTY*

Unless a justice shall otherwise direct, all proceedings in the Supreme Judicial Court for the county of Suffolk shall be recorded electronically, subject to the availability and functioning of the appropriate recording devices. Cassette or similar tape recordings of the original recording shall be available to counsel through the clerk's office on the payment of a reasonable fee and notice of the making of such request to all parties.

If a transcript of the proceedings is required by statute or is requested by a justice, unless an official stenographer has been appointed, a transcript of the proceedings shall be made under the direction of the clerk and certified by him.

A certified copy of any transcript prepared under the direction of the clerk shall be available to counsel on the payment of a reasonable fee. In his discretion, a justice of the court may order a party or parties to bear the cost of the preparation of a transcript for use of the court.

Adopted August 18, 1976.

* Suggested title added by Publisher.

## TIME WITHIN WHICH CASES MAY BE DETERMINED BY THE APPELLATE COURTS *

WHEREAS the Chief Justice and the Justices of the Supreme Judicial Court recognize the necessity for reasonably expeditious disposition of appealed cases, and appreciate the Court's duty of public accountability in this matter; and

## SUPREME JUDICIAL COURT

WHEREAS the Justices of the Appeals Court have expressed their agreement with those views by adopting today such portions of this order as relate to the Appeals Court,

Now therefore it is ORDERED:

The following standards are adopted as administrative goals establishing a time within which cases can be expected to be determined by the appellate courts of Massachusetts. Variation from the 130-day standard set out in paragraph 2 should be permitted by vote of the quorum when necessary to accommodate special problems in individual cases. Docket entries will be made as to any such action.

**1.** Oral argument, or the decision conference in cases not orally argued, should be held promptly after the appellee's brief is filed or should have been filed. Cases in which the appellee's brief is due on or before February 1 should be heard or made the subject of a decision conference during that court year. (Court year: September 1 through August 31.)

**2.** Cases should be decided within 130 days after argument or after submission without argument.

**3.** Paragraphs one and two shall be applicable in the Supreme Judicial Court forthwith, and paragraph two shall be applicable in the Appeals Court for all cases argued or submitted for decision after the date of this order. Paragraph one shall be applicable in the Appeals Court as soon as possible after the additional justices authorized by St. 1978, c. 478, § 104, have assumed their duties, with a tentative goal of full applicability not later than the close of the 1979-1980 court year.

Adopted October 2, 1978. Amended January 24, 1983.

\* Suggested title added by Publisher.

### STORAGE OF DOCUMENTS AT STATE ARCHIVES*

ORDERED: That any papers, records, exhibits and artifacts which have been filed or deposited in or which are located in any court of the Commonwealth may be moved to the State Archives at Columbia Point in Boston, Massachusetts provided that the Administrative Assistant (G.L., c. 211, § 3A) to the Supreme Judicial Court approves, G.L. c. 221, § 27A. The State Archivist shall be the custodian of all court papers, records, exhibits and artifacts maintained at the State Archives. The Supreme Judicial Court shall retain control of such papers, records, exhibits and artifacts under such conditions as shall be agreed to by the State Archivist and the Supreme Judicial Court.

\* Suggested title added by Publisher.

### AGREEMENT BETWEEN THE SUPREME JUDICIAL COURT AND THE STATE ARCHIVIST

Pursuant to the provisions of the order of the Supreme Judicial Court dated January 17, 1984, the State Archivist and the Administrative Assistant to the Supreme Judicial Court hereby agree to the following terms and conditions with respect to all judicial papers, records, exhibits and artifacts to be moved to the State Archives at Columbia Point in Boston, Massachusetts:

(1) Consistent with the Separation of Powers Clause (Article 30) of the Constitution of the Commonwealth, there shall be a separate judicial archives located within the space occupied by the State Archives. The Supreme Judicial Court acting through the Administrative Assistant to the Supreme Judicial Court, and the Judicial Records Committee of the Supreme Judicial Court, shall maintain control of all court papers, records, exhibits and artifacts moved to the State Archives. The State Archivist, as a member ex officio of the Judicial Records Committee of the Supreme Judicial Court, shall be the physical custodian of all court papers, records, exhibits and artifacts stored at the State Archives.

(2) Subject to appropriation, there shall be a curator of judicial records at the State Archives who shall be responsible for the administration of the judicial archives. The curator of judicial records shall be an employee of the Office of the Secretary of the Commonwealth. The job description of the curator of judicial records shall be subject to the approval of the Supreme Judicial Court.

In addition to the curator of judicial records, employees of the State Archivist shall be authorized to administer the judicial archives in a manner consistent with the policies established by the Supreme Judicial Court.

The State Archivist shall periodically report to the Administrative Assistant to the Supreme Judicial Court.

(3) The procedures for processing judicial records for entry into the State Archives shall be established by the Supreme Judicial Court in consultation with the State Archivist.

Upon the completion of construction of the State Archives and Records Center at Columbia Point, the State Archivist shall designate a single location in the State Archives portion of the building consisting of approximately 12,000 cubic feet of shelving space to be occupied by the judicial archives. The space shall be discrete and continuous. It shall be distinct from the non-judicial archival collections with adequate access to the public research room of the State Archives. If at some time in the future additional space is necessary for expansion of the judicial archives, the State Archivist shall make reasonable attempts to designate such additional space as may be necessary consistent

EXHIBIT E

## GENERAL RULES

**Rule 1:04**

Department of the Trial Court, or a session thereof for holding court.

"Chief Justice" of a Trial Court Department shall mean the "Administrative Justice" of that Department.

To the extent of any conflict between the Massachusetts Rules of Civil Procedure, the Massachusetts Rules of Criminal Procedure, the Massachusetts Rules of Appellate Procedure and the rules of the Supreme Judicial Court, the Appeals Court, and the various Departments of the Trial Court, the Massachusetts Rules of Civil, Criminal and Appellate Procedure shall control.

Amended May 29, 1986, effective July 1, 1986; June 16, 1987, effective July 1, 1987, amended effective June 8, 1989; amended June 9, 1997, effective January 1, 1998; March 30, 1999, effective April 5, 1999.

## RULE 1:02 SITTINGS OF THE SUPREME JUDICIAL COURT

Sittings of the full court for hearing questions of law pursuant to G. L. c. 211, § 12, as amended, shall be held at Boston on the first Monday of October, November, December, January, February, March, April and May, and at such other places or times as the court from time to time may order.

## RULE 1:03 UNIFORM CERTIFICATION OF QUESTIONS OF LAW

**Section 1. Authority to Answer Certain Questions of Law.** This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.

**Section 2. Method of Invoking.** This rule may be invoked by an order of any of the courts referred to in Section 1 upon that court's own motion or upon the motion of any party to the cause.

**Section 3. Contents of Certification Order.** A certification order shall set forth

(1) the question of law to be answered; and

(2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

**Section 4. Preparation of Certification Order.** The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to this court by the clerk of

the certifying court under its official seal. This court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of this court, the record or portion thereof may be necessary in answering the questions.

**Section 5. Costs of Certification.** Fees and costs shall be the same as in civil appeals docketed before this court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

**Section 6. Briefs and Arguments.** Proceedings in this court shall be those provided in these rules, the Massachusetts Rules of Appellate Procedure or statutes governing briefs and arguments, so far as reasonably applicable.

**Section 7. Opinion.** The written opinion of this court stating the law governing the questions certified shall be sent by the clerk under the seal of this court to the certifying court and to the parties.

**Section 8. Power to Certify.** This court on its own motion or the motion of any party may order certification of questions of law to the highest court of any state when it appears to the certifying court that there are involved in any proceeding before the court questions of law of the receiving state which may be determinative of the cause then pending in the certifying court and it appears to the certifying court that there are no controlling precedents in the decisions of the highest court or intermediate appellate courts of the receiving state.

**Section 9. Procedure on Certifying.** The procedures for certification from this state to the receiving state shall be those provided in the laws of the receiving state.

**Section 10. Uniformity of Interpretation.** This rule shall be so construed as to effectuate its general purpose to make uniform the law of those states which adopt it; or enact a uniform certification statute.

**Section 11. Short Title.** This rule may be cited as the Uniform Certification of Questions of Law Rule.

## RULE 1:04 JUDICIAL CONFERENCE

**G.L. c. 211, § 3B, as amended \***

\* provides statutory authority for this rule.

(1) The Massachusetts Judicial Conference is hereby constituted to consist of the following: (a) the Chief Justice (who shall serve as chairman of the Conference) and the Associate Justices of this court; (b) the Chief Justice of the Appeals Court; (c) the Chief Administrative Justice of the Trial Court; (d) the Administrative Justice of the Superior Court Department; (e) the Administrative Justice of the Probate and Family Court Department; (f) the Administrative Justice of the Land Court Department; (g) the Ad-