UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GISSELLE RUIZ,<br>individually and on behalf of all others<br>similarly situated, | )<br>)<br>) | |
| | ) | Civil Action No. |
| Plaintiff | ) | 05-11052-NMG |
| | ) | |
| v. | ) | |
| | ) | |
| BALLY TOTAL FITNESS HOLDING CORP.,<br>a Delaware Corporation<br>HOLIDAY UNIVERSAL, INC.<br>a Delaware Corporation | )<br>)<br>)<br>) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY**

Plaintiff, Gisselle Ruiz, ("Ms. Ruiz"), hereby files this response to Defendants', Bally Total Fitness Holding Corporation and Holiday Universal, Inc. (collectively referred to as "Bally's") Motion To Stay these proceedings pending the decision of the Massachusetts Supreme Judicial Court ("SJC") in *Albats v. Town Sport Int'l.*, SJC 09432. Bally's argues that the SJC's decision in *Albats* will be dispositive of this case, and that therefore this court should stay these proceedings. *Albats,* however, raises an entirely distinct claim, based on the violation of a separate provision of the Massachusetts Health Club Services Act (the Act), and a distinct claim of injury. In addition, Bally's argument in favor of a stay is based on an overly broad application of the legal standard justifying a stay of litigation, which is limited to extremely narrow circumstances. Finally, staying this litigation will impose undue delay and prejudice Ms. Ruiz and the class of individuals she seeks to represent. As such, Bally's Motion To Stay should be denied.

I.      **Statement Of Case**

On April 14, 2005, Ms. Ruiz filed a class action complaint in state court against Bally's to stop their use of illegal, unfair and deceptive contract provisions and to obtain restitution for all persons injured by Bally's conduct in Massachusetts. Bally's removed the state court action to this court on May 19, 2005 based on diversity jurisdiction, and subsequently filed its Motion To Stay. Bally's has not yet answered the complaint.

In her complaint, Ms. Ruiz alleges that certain provisions contained in Bally's form health club membership agreements ("contracts"), violate the express provisions of M.G.L. c. 93 § 78 *et seq.*, the Health Club Services Contracts Act (the "Act"). Specifically, Ms. Ruiz claims that the contracts contain an upfront membership fee which Bally's finances over a thirty-six month period, when the initial term of the contract is one month and renewable on a month-to-month basis. This financing provision violates section 80 of the Act, which expressly prohibits financing that requires payments that extend more than one month beyond the end of the contract term. Second, Bally's contracts contain a waiver by which members agree not to assert any claim against Bally's, "for the loss or theft of, or damage to, [their] personal property". Section 78 of the Act, however, expressly prohibits "any provisions whereby the buyer agrees not to assert against the seller …. any claim or defense arising out of the health club services contract or buyer's activities at the health club." Ms. Ruiz further alleges that this waiver provision also violates the prohibition on waiver of consumer rights separately codified in M.G.L. c. 93, §101 and that Bally's violations of the Act constitute violations of the Massachusetts Consumer Protection Statute, M.G.L. c. 93A.

Ms. Ruiz sought actual and statutory damages for herself and all individuals similarly situated, for money paid in illegal interest charges and for fees paid pursuant to illegal and unenforceable contracts. Ms. Ruiz also sought relief based on a diminution in the value of Bally's contracts to consumers based on Bally's deprivation of the benefits and protections of the law.

## II.     Legal Standard For Staying Proceedings

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), *quoting, County of Allegheny v. Frank Mashuda Col,* 360 U.S. 185, 188-189, 79 S. Ct. 1060, 1063, 3 L. Ed. 2d 1163, 1166 (1959). *See also, Rojas-Hernandez v. P.R. Elec. Power Auth.*, 925 F. 2d 492, 495-96 (1st Cir. 1990); *Villa Marina Yacht Sales, Inc. v. Hatteras* Yachts, 915 F. 2d 7,12 (1st Cir. 1990); *KPS & Associates, Inc.  v. Designs By FMC, Inc.,* 318 F. 3d 1, 10 (1st Cir. 2003), *citing, Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 19, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (Abstention of litigation is greatly constrained by what the Supreme Court has labeled an "exceptional-circumstances test."). Under the exceptional-circumstances test, "there must be some extraordinary circumstances for a federal court to shrink from 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Currie v. Group Ins. Comm'n*, 290 F. 3d 1, 10(1st

Cir. 2002) (*quoting, Colorado River,* 424 U.S. at 817). "There is a heavy presumption favoring the exercise of jurisdiction." *Villa Marina Yacht* at 13.

In *Colorado River*, the Supreme Court articulated three specific circumstances in which abstention from the exercise of federal jurisdiction is appropriate. *Colorado River* at 814-816. One situation warranting abstention, which Bally's argues is applicable here, is when a case presents difficult questions of state law which bear on policy problems of substantial public import.[1] However, if state claims are involved but the state law to be applied is settled, stay is not appropriate. *Colorado*, at 815. The Supreme Court made it clear in *Colorado River* that the circumstances of the case would have to extraordinary to justify a stay of litigation; "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado*, at 816, *citing, Meredith v. Winter Haven,* 320 U.S. 228, 64 S. Ct. 7, 88 L. Ed. 9 (1943); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 43 S. Ct. 79, 67 L. Ed. 226 (1922); *McClellan v. Carland,* 217 U.S. 268, 30 S. Ct. 501, 54 L. Ed. 762 (1910).

**III.    Argument**

*1.    The Court's Decision In Albats Will Not Dispose Of The Issues Present Here*

Bally's argument that the SJC's decision in *Albats* will be dispositive of the issues present here is simply wrong. The claims in the two cases are based on different provisions of the Act and the resulting injuries alleged are distinct. While it is true that Ms. Ruiz, like the plaintiff in *Albats*, ("Ms. Albats") brought a claim for violation of

---

[1] The other two circumstances are; (1) when a case presents a federal constitutional issue which might be mooted by a state court determination of state law and (2) "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings."

4

Section 78 of the Act, which prohibits "any provisions whereby the buyer agrees not to assert against the seller …. any claim or defense arising out of the health club services contract or buyer's activities at the health club," a decision regarding this claim in *Albats* will not dispose of all of the issues present in this case. The core issue before the SJC in *Albats*, whether a health club injures consumers when it requires, as a condition of club membership, that they sign contracts which waive rights expressly granted by the Act and which misrepresent statutory cancellation rights, is not the sole issue raised by Ms. Ruiz.

The *Albats* case asserts that a health club's contractual imposition of a non-refundable "initiation" fee violates section 81 of the Act, which requires that every member be given a three day period to rescind and be refunded "[a]ll monies paid pursuant to such contract." *Albats* contends that the offending contract misrepresents its members' statutory cancellation rights by deceptively representing that in order to exercise those rights, members must forfeit any initiation fees they paid. *Albats* also challenges the contractual waiver of broad categories of claims against the health club for injuries and property damage, despite the express prohibition on waiver of members' claims contained in sections 80 and 85 of the Act. In her complaint, Ms. Albats alleged that she and the class she seeks to represent were damaged by defendants' illegal conduct in that they paid and continue to pay defendant for fees pursuant to void and unenforceable contracts; and/or they were deprived by defendant of the benefits and protections of the law and suffered a diminution in the value of their contracts thereby.

By contrast, this case is based on Bally's violation of section 80 of the Act, which prohibits financing of the membership fee that extends more than one month beyond the end of the contract term. Ms. Ruiz claims that by financing its substantial "membership

fee" for nearly three years after the initial term of the contract, Bally's effectively locks members into long-term contracts and that Bally's use of such prohibited long-term financing imposes hundreds of dollars of illegal interest upon each of the putative Class Members.

Bally's assertion that Ms. Ruiz has not alleged that she suffered any injury as a result of Bally's alleged violations of this provision is patently untrue. In her complaint, Ms. Ruiz specifically identified three ways in which she was injured as a result of Bally's deceptive contracts; (1) that she and class members paid hundreds of dollars in illegal interest charges; (2) that she and class members paid and continue to pay Bally's for fees pursuant to illegal and unenforceable contracts; and (3) that she and class members were deprived by Bally's of the benefits and protections of the law and suffered a diminution of the value of their contracts thereby.  Nonetheless, Bally's asserts repeatedly that Mr. Ruiz suffered no injury and mischaracterizes the claimed violations as merely "technical."

There is also a distinction between the injury that Ms. Ruiz suffered as a result of Bally's alleged violations of section 80 of the Act and the injury alleged in *Albats* under section 81 of the Act. In *Albats*, the issue is whether Ms. Albats suffered an injury without showing some loss of money or property, based on the inclusion of a contract provision which deprived class members of statutorily protected rights to cancel their contracts. In this case, Ms. Ruiz challenges a provision under which she and the class she seeks to represent suffer monetary damages caused by the financing of membership fees over a period of three years, a provision which directly violates section 80 of the Act. In *Albats* the illegal provision was not necessarily enforced against all class members, while

in this case all putative class members were subject to the same financing term and charges.

The trial court's holding that Ms. Albats suffered no injury and therefore could not recover under the Act or c. 93A was primarily based upon its interpretation of *Lord v. Commercial Union Ins. Co.*, 801 N.E. 2d 303, 60 Mass. App. Ct. 309 (2004), which it read to require proof of a loss caused by the defendant in order to recover under c. 93A. The trial court acknowledged in its decision that under the principle of *Leardi v. Brown*, 474 N.E. 2d 1094, 1102, 394 Mass. 151, 160 (1985), which holds that c. 93A "creates a legal right, the invasion of which without more constitutes injury," Ms. Albats may have satisfied c. 93A's injury requirement. The court ruled, however, that *Leardi* was inapplicable, relying on a mistaken interpretation of language contained in *Lord*, to the effect that *Leardi* was limited to its particular facts.

Since the *Albat's* ruling, the SJC issued a decision in *Aspinall v. Philip Morris Companies, Inc.*, 813 N.E. 2d 476, 442 Mass. 381 (2004), which rejected this interpretation of Lord. It affirmed the fundamental holding of *Leardi*; that the invasion of a legal right constitutes an injury under c. 93A and entitles the plaintiff to at least statutory damages, and emphasized that *Leardi* was not a limited holding.

    2.    *A Stay Is Not Appropriate Because This Case Does Not Present An Unsettled State Law Issue*

Bally's argues that a stay will provide this Court with the benefit of the SJC's ruling in *Albats*. As discussed above, a ruling in *Albats* will not effect this case because the issues are different. Moreover, because state law is settled on the issue of the requisite injury under c. 93A there are no grounds for a stay. The SJC has already

established in *Leardi* that contract terms which misrepresent consumer rights violate c. 93A and cause injury, even if the offending terms are not enforced and even if no actual damages can be shown. The SJC has interpreted the word "injury" in the context of c. 93A to mean the "invasion of a legally protected interest." *Leardi,* at 159-160. Consumers suffer such injury by being subject to a form contract which misrepresents the drafter's statutory obligations and the consumer's legal rights. *Id.* The Court noted in *Leardi* that its holding was not novel, but instead was based upon longstanding caselaw and principles recognized by commentators like McCormick approximately seventy years ago;

> The result we reach hinges on our interpretation of the word "injury." "The interpretation of well-defined words and phrases in the common law carries over to statutes" as long as such interpretation "appear[s] fitting and in the absence of evidence to indicate contrary intent." *Sutherland Statutory Construction* ß 50.03 (Sands 4th ed. 1983). *See Comey v. Hill*, 387 Mass. 11, 15 438 N.E.2d 811 (1982). According to the Restatement (Second) of Torts § 7 (1965), the term "injury" denotes "the invasion of any legally protected interest of another." Moreover, "[t]he most usual form of injury is the infliction of some harm; but there may be an injury although no harm is done." *Restatement (Second) of Torts* § 7, comment a (1965). As Professor McCormick has explained, "What the law always requires as a basis for a judgment for damages is not loss or damage, but '*injuria,*' and hence damages are allowed, though there has been no loss or damage." *McCormick, Damages* ß 20 (1935). *See, e.g., Rosnick v. Marks*, 218 Neb. 499, 504-505, 357 N.W.2d 186 (1984).

*Leardi* at 159-160.

As controlling precedent, *Leardi* and *Aspinall* make clear that a consumer does not need to prove actual damages to recover statutory damages under c. 93A. The SJC clarified the scope of *Leardi* in *Aspinall*, by emphasizing that, for purposes of the "injury" analysis under c. 93A, "the circumstances in the *Leardi* case, in which [the plaintiffs] challenged a landlord's efforts to mislead tenants by deceptive use of language

in a lease, were essentially no different from the case before us," where a tobacco company misled consumers by deceptive advertising. *Aspinall,* at 402.

    The rulings in *Leardi* and *Aspinal* affirm previous rulings by Massachusetts courts which are consistent on this issue. *See e.g., Poncz v. Loftin,* 607 N.E.2d 765, 767, 34 Mass. App. Ct. 909, 911 (1993)(landlord violated sanitary code and thereby c. 93A, by requiring tenant to pay utilities without a written agreement to that effect; no actual damages were proved so tenant was entitled to $25; had tenant shown that the arrangement had any negative impact on his use of the premises, or that he had objected to the arrangement, he may have been entitled to actual damages); *Brow v. Stanton,* 12 Mass. App. Ct. 992, 993, 429 N.E.2d 60, 61 (1981)(plaintiff entitled to summary judgment on c.93A claim, where defendant violated debt collection regulation prohibiting contact with represented debtor by sending letter suggesting that she contact collector to make settlement arrangements; because plaintiff established no actual damages, she was entitled to $25); *Herman v. Home Depot, Inc.*, 2001 WL 705723, *3 (Mass. App. Div.,2001)(affirming award of statutory damages for defendant's failure to affix prices to its merchandise).

    The trial court in *Albats* refused to follow *Leardi*, on the mistaken basis that *Leardi* was limited to landlord/tenant cases, citing *Lord v. Commercial Union Ins. Co.,* 60 Mass.App.Ct. 309, 801 N.E.2d 303 (2004). The SJC emphatically rejected this notion in *Aspinall v. Phillip Morris,* 442 Mass. 381, 401, 813 N.E. 2d 476, 491 (2004), criticizing the holding in *Lord* on which the *Albats* court relied.   In *Aspinall* the SJC made clear once again that the invasion of a legally protected right, such as the rights protected by the Health Club Act, constitute sufficient injury to assert a claim under c. 93A.   After *Aspinal,* there can be

doubt that state law is settled on this point. As such, there is no reason for this court to stay these proceedings.

>    3.   *Staying This Litigation Will Prejudice Ms. Ruiz And The Class Of Individuals She Seeks To Represent*

The existence of different claims under the Act and distinct injuries in *Albats* and the present case necessitates continuing this litigation, since the outcome in *Albats* will not dispose of the issues present here and a stay will serve merely to delay the litigation to the detriment of Ms. Ruiz and the class of individuals she seeks to represent.

Bally's reasoning that a decision in *Albats* will be issued in less than sixty days because cases decided early in the Court's term generally are decided within that time period is unreliable. It is based on projections and assumptions, which, if they turn out to be wrong, as is possible here, will result in undue delay. The SJC's Standing Order to which Bally's refers in its motion, "Time Within Which Cases May Be Determine By The Appellate Courts," is not a steadfast rule, but rather an "administrative goal." The language of the standing order states that cases "should be" decided within 130 days after argument. Therefore, that *Albats* will be decided within the time period argued by Bally's is not guaranteed, making a stay in this litigation inappropriate.

**IV.**     **Conclusion**

WHEREFORE, Bally Holding and Holiday's Motion To Stay should be denied.

                                                Respectfully submitted,
Gisselle Ruiz,
by her attorneys,


/s/ John Roddy
John Roddy
Elizabeth Ryan
Roddy Klein & Ryan
727 Atlantic Avenue, 2nd Floor
Boston, MA 02111
p.617.357.5500 ext. 16
f. 617.357.5030
roddy@roddykleinryan.com


Dated: August 31, 2005