IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GISSELLE RUIZ,<br>individually and on behalf of all<br>others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>BALLY TOTAL FITNESS HOLDING<br>CORPORATION, a Delaware<br>corporation, and<br>HOLIDAY UNIVERSAL, INC.,<br>a Delaware corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-11052 NMG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
PURSUANT TO RULE 12(b)(2) and 12(b)(6)**

Defendants Bally Total Fitness Holding Corporation ("Bally Holding") and Holiday Universal, Inc. ("Holiday"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), move to dismiss the First Amended Class Action Complaint ("Amended Complaint") of Plaintiff Gisselle Ruiz ("Plaintiff") and, in support thereof, state as follows:

## I. INTRODUCTION

Plaintiff's Amended Complaint purports to state actions against Bally Holding and Holiday in connection with Plaintiff's health club membership contract. Plaintiff alleges that her health club contract with Holiday violates the Massachusetts Health Club Services Act (the "Act") in two respects: (1) a violation of that portion of section 80 which prohibits any requirement of payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract (the "Financing Claim"); and (2) a violation of that portion of section 80 which prohibits any contract provision whereby the health club member agrees not to assert against the seller or any

1

assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club (the "Waiver of Liability Claim").  Based solely upon these two alleged violations, Plaintiff's Amended Complaint asserts actions for: (1) violation of the Act (Count I); (2) unjust enrichment (Count II); (3) money had and received (Count III); (4) declaratory judgment (Count IV); and (5) violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count V).  In other words, Plaintiff's entire basket of claims rests upon her assertion that her contract with Holiday violated Section 80 of the Act. Mass. Gen. Laws ch. 93, § 80.

Plaintiff's Amended Complaint must be dismissed for each and all of the foregoing reasons:

- Bally Holding is not subject to jurisdiction in Massachusetts.
- Plaintiff fails to state a cause of action against Bally Holding because Bally Holding is not a  "seller" of health club contracts under the Act, and Bally Holding is not subject to the Act.
- Plaintiff's Financing Claim fails to state a cause of action against either defendant because the contract does not require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract.
- Plaintiff lacks standing to bring the Financing Claim because Plaintiff has not suffered any injury as a result of any alleged requirement of payments or financing that extends more than one month beyond the expiration of the contract.
- Plaintiff's Waiver of Liability Claim fails to state a cause of action against either defendant because the contract does not contain a provision whereby Plaintiff agreed not to assert against the seller any claim or defense arising out of the health club services contract or her activities at the health club.
- Plaintiff lacks standing to bring the Waiver of Liability Claim because Plaintiff has

not suffered any injury as a result of any alleged contract provision whereby Plaintiff agreed not to assert against the seller any claim or defense arising out of the health club services contract or her activities at the health club

## II. ALLEGATIONS OF THE AMENDED COMPLAINT[1]

Bally Holding is a Delaware corporation with its principal place of business in Chicago, Illinois. (Amended Complaint, ¶ 7). Holiday is a Delaware corporation which operates a health club in Lowell, Massachusetts. (Amended Complaint, ¶ 8). Holiday is a wholly-owned subsidiary of Bally Holding. (Amended Complaint, ¶ 9).

On March 11, 2004, Plaintiff entered into a contract (the "Contract") with Holiday. (Amended Complaint, ¶ 11). A copy of the Contract is attached to the Amended Complaint as Exhibit A. As set forth in the Contract, Plaintiff agreed to a renewable membership with an initial membership term of one month. (Amended Complaint, Ex. A., p. 1). Under her Contract, Plaintiff agreed to pay a "membership fee" (the "Membership Fee") of $1,565. (Amended Complaint, Ex. A., p. 1). Plaintiff chose to finance payment of her Membership Fee through Holiday by paying $150 down, and agreeing to pay the balance over 36 months with a finance charge at an annual percentage rate of 14.75%. (Amended Complaint, Ex. A., p. 1). The membership was renewable at Plaintiff's option by payment of monthly dues ("Monthly Dues") of $8 per month during the first 36 months of the Contract. (Amended Complaint, ¶ 13, Ex. A., p. 1).

Plaintiff's Amended Complaint refers to Bally Holding and Holiday collectively as "Bally's." Plaintiff alleges that in 2004, she requested that "Bally's" cancel her membership and cancel her obligation to pay the remaining balance of her Membership Fee, but "Bally's refused." (Amended Complaint, ¶ 14). The Contract contains express cancellation provisions, including, *inter alia*, the right to cancel within three business days for any reason,

---

[1] For purposes of this motion, Defendants assume the truth of the allegations contained in the Amended Complaint except the conclusory allegations as to jurisdiction over Bally Holding.

or the right to cancel at any time in the event of the relocation, disability or death of the member, or the closing of the health club. (Amended Complaint, Ex. A, ¶¶ 5-6). These express cancellation provisions of Plaintiff's Contract are appended hereto as Exhibit A. Plaintiff does not allege that she ever satisfied the cancellation requirements or complied with the cancellation procedures set forth in the Contract.

### III. THIS COURT LACKS JURISDICTION OVER BALLY HOLDING

This Court lacks personal jurisdiction over Bally Holding as to the matters at issue in this case. Thus, plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Plaintiff admits that Bally Holding is a Delaware corporation with its principal place of business in Illinois. Plaintiff has not and cannot set forth any facts to support personal jurisdiction over Bally Holding. Bally Holding should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiff does not allege that Bally Holding regularly conducts business in Massachusetts, nor does Bally Holding in fact do so. By definition a holding company has no employees or business operations of its own. Plaintiff must, therefore, establish the basis for the exercise of specific jurisdiction. *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). "To achieve this goal, the [plaintiff] must present sufficient facts to satisfy two cornerstone conditions: 'first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" 239 F.3d at 26, quoting, *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994).

> "Compliance with the state standard for personal jurisdiction necessitates a showing that the cause of action arises from the defendant's 'transacting any business' in Massachusetts, [Mass. Gen. Laws ch.] 223A § 3(a), or from a tortious in-state 'act or omission,' *id.* § 3(c). Compliance with the federal constitutional standard involves a somewhat more extensive showing. That showing has three aspects:
>
> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state

contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *United Elec., Radio & Mach. Workers v.163 Pleasant St. Corp.*, 960 F.2d 1080,1089 (1st Cir. 1992).

*Id.* "In order to defeat a motion to dismiss for want of *in personam* jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality." *Id.* at 27.

A.    **Bally Holding Is Not Subject To The Personal Jurisdiction Of This Court Under The Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, §3.**

Plaintiff incorrectly asserts that jurisdiction over Bally Holding is proper under Mass. Gen. Laws ch. 223A § 3.  Plaintiff has not and cannot offer facts sufficient to show that her cause of action arises out of Bally's Holding's transaction of business in Massachusetts or from a tortious act committed by Bally Holding in Massachusetts. Bally Holding does not transact business in Massachusetts.   As the Amended Complaint reflects, plaintiff's Contract is with Holiday and only Holiday.  Plaintiff admits that Holiday is an existing corporation. Plaintiff does not allege any tortious action by Bally Holding in Massachusetts or, indeed, that Bally Holiday even engaged in any action in Massachusetts.   Plaintiff cannot and does not allege that Bally Holding "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in" Massachusetts. Mass. Gen. Laws ch. 223A § 3(d).  It is Holiday which sells health club contracts (the allegedly tortious act) and which derives the revenues in Massachusetts.

The sole allegation against Bally Holding in the Amended Complaint is that:

"BTF Holding drafts form health club agreements, or contracts, and provides them to its subsidiaries, including Holiday, with instructions to use them in the regular course of business." (Amended Complaint, ¶ 10).

Even if accepted as true for purposes of this motion to dismiss, this allegation is insufficient to afford jurisdiction under the Massachusetts' long-arm statute. If the mere drafting of a contract or agreement rendered one liable under the statute and subject to personal jurisdiction in Massachusetts, then logically an attorney who drafted the contract would similarly be liable and subject to this Court's jurisdiction. This would be an absurd result and not in accordance with the law. Bally Holding does not offer contracts in Massachusetts; Holiday does, and Holiday derives the revenues from those contracts. Even where a non-resident parent owns the controlling shares of a subsidiary doing business in Massachusetts, personal jurisdiction does not exist under the Massachusetts long-arm statute unless the stringent Massachusetts veil-piercing test is satisfied. *In re Lupron Marketing and Sales Practices Litigation*, 245 F.Supp.2d 280, 289 (D. Mass. 2003). Plaintiff has not and cannot establish any basis for piercing the corporate veil of Holiday.

**B.    Due Process Does Not Permit Personal Jurisdiction Over Bally Holding.**

The exercise of jurisdiction over Bally Holding also would not comport with due process requirements. A foreign corporation simply employing a subsidiary corporation as a means of doing business within a state is not doing business there so as to be subject to personal jurisdiction. *Canon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Mitchell v. Airline Reservations*, 265 Wis. 313, 61 N.W.2d 496, 497 (1953). The transaction of business by a controlled subsidiary corporation is unimportant in determining jurisdiction over a parent corporation. *Consolidated Textile Corp. v. Gregory*, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1933) (Parent corporation was not subject to jurisdiction in Wisconsin by virtue of the fact that wholly controlled subsidiary sold goods within Wisconsin.) An out-of-state parent corporation's controlling interest in a subsidiary does not alone create jurisdiction over the parent. *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943

(7th Cir. 2000); see also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg*, 295 F.3d 59, 64 n. 3 (1st Cir. 2002)(Sales of separately incorporated subsidiary do not normally count as "contacts" for a parent corporation.).  "Courts begin with the presumption of corporate separateness." *Insolia v. Philip Morris, Inc.*, 31 F. Supp.2d 660, 669 (W.D. Wis. 1998).  "Where two corporations are in fact separate, permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates . . . due process." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d at 944.  See also, *Universal Services of Indiana, Inc. v. General Waste Systems, Division of Indiana Waste Systems, Inc.*, 1976 WL 1389 at *1 (S.D. Ind. April 12, 1976) Facts of parent's ownership of subsidiary corporations for which it performs various services such as central purchasing, computer accounting, and financing;  that some officers and employees of the defendant serve on the board of directors of its subsidiary corporation;  and that the in-state subsidiary purchased employment and customer service contract forms from the defendant, taken together, were not sufficient to show that the foreign parent actually managed and directed the daily internal affairs of its subsidiary corporation, and therefore were not sufficient to satisfy due process for personal jurisdiction over the foreign parent corporation).  Therefore, this Court has no personal jurisdiction over Bally Holding and Bally Holding must be dismissed based upon the Massachusetts long-arm statute and due process considerations.

## IV.  PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(6).

### A.    Standards under Rule 12(b)(6).

"A plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory.'" *Campagna v. Massachusetts Department of Environmental Protection*, 334 F.3d 150, 155 (1st Cir. 2003), quoting, *Dartmouth Review v. Dartmouth Colllege*, 889 F.3d 13, 16 (1st Cir. 1989).  While all well-

pleaded facts and reasonable inferences therefrom are taken as true, a Court gives no weight to "bald assertions, unsupportable conclusions, and opprobrious epithets." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18 (1st Cir. 2002), quoting, *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987). A plaintiff may not rest on unsupported conclusions or interpretations of law. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). "[S]ubjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts" will not defeat a motion to dismiss." 45 F.3d at 522, quoting, *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992). "When a complaint annexes and incorporates by reference a written instrument, any inconsistencies between the complaint and the instrument must be resolved in favor of the latter." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d at 18.

## B.   Plaintiff Has Failed to State a Claim Against Bally Holding.

Plaintiff's claims rest upon her assertion that the Contract violates the Act. As a preliminary matter, the Act does not apply to Bally Holding. On its face, the Act applies to a "seller" of health club contracts. "Seller" is defined in the Act as "any person, firm, corporation, partnership, unincorporated association, franchise, franchisor, or other business enterprise which operates a health club or which offers or enters into contracts for health club services." Mass. Gen. Laws ch. 93 §78. Bally Holding does not operate health clubs in Massachusetts or offer or enter into contracts for sale in Massachusetts. Bally Holding is not a "seller" under the Act and, therefore, not subject to that statute.

Plaintiff has not and cannot state any basis for holding Bally Holding liable for the Contract of Holiday. Bally Holding and Holiday are separate corporations. As stated by the United States Supreme Court:

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Douglas & Shanks, Insulation from Liability Through Subsidiary Corporations, 39 Yale L.J. 193 (1929) (hereinafter Douglas);

> see also, e.g., Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del. Ch. 490, 494, 154 A.2d 684, 687 (1959); Berkey v. Third Ave. R. Co., 244 N.Y. 84, 85, 155 N.E. 58 (1926) (Cardozo, J.); 1 W. Fletcher, Cyclopedia of Law of Private Corporations § 33, p. 568 (rev. ed. 1990) ('Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate'); Horton, Liability of Corporation for Torts of Subsidiary, 7 A.L.R.3d 1343, 1349 (1966) ('Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary'); cf. Anderson v. Abbott, 321 U.S. 349, 362, 64 S.Ct. 531, 537, 88 L.Ed. 793 (1944) ('Limited liability is the rule, not the exception'); Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397 (1932) ('A corporation and its stockholders are generally to be treated as separate entities'). Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary. That 'control' includes the election of directors, the making of by-laws...and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal."

United States v. Bestfoods, 524 U.S. 51, 61-62, 118 S.Ct. 1876, 1884, 141 L.Ed.2d 43 (1998).

Plaintiff has not stated any cause of action against Bally Holding as it is not a "seller" and cannot be held liable for the acts of its subsidiary, Holiday.

## C.    Plaintiff Has Not Stated a Claim Based Upon the Payment or Financing Provisions of the Contract.

To the extent that plaintiff's various claims are based on the payment or financing provisions of the Contract, those alleged claims fail to state valid causes of action because: (1) the Contract does not violate the pertinent provision of the Act; and (2) plaintiff sustained no injury and, thus, lacks standing to assert any such claims. Thus, they should be dismissed under Rule 12(b)(6).

### 1.    There is No Violation of Section 80.

Plaintiff incorrectly claims that the Contract violates Section 80 of the Act, which provides, in relevant part:

No contract for health club services shall be for a term measured by the

life of the buyer. No contract for health club services shall be for a term longer than thirty-six months, except that upon expiration of the contract, the seller may offer to the buyer the right to renew his contract for a similar, shorter or longer period not to exceed thirty-six months.

No contract for health club services shall require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract. The installment payments shall be in substantially equal amounts exclusive of the down payment and shall be required to be made at substantially equal intervals, not more frequently than one payment per month.

Mass. Gen. Laws ch. 93, § 80.

Plaintiff incorrectly claims that her Contract requires payments or financing more than one month beyond the expiration of the Contract. The Contract has two financial components: (1) a membership renewable each and every month for as long as Plaintiff chooses; and (2) a thirty-six month financing arrangement. Section 80 specifically allows contracts with a term of 36 months. Further, Plaintiff's Contract could be canceled at anytime under the provisions of paragraphs 5 and 6 of the Contract, which are required by, and fully comport with, section 82 of the Act. Mass. Gen. Laws ch. 93, § 82. Plaintiff's Contract fully complies with the Act.

Plaintiff further complains that the "initial term" of her membership was one month while the financing period was 36 months. In the absence of linguistic ambiguity, the text of a contract dictates its meaning, and words that are plain and free from ambiguity must be construed in their usual and ordinary sense. *Okmyansky v. Herbalife International of America, Inc.*, 415 F.3d 154, 159 (1st Cir. 2005). Here, the Contract is unambiguous, and Plaintiff simply confuses the initial term of the membership under the Contract with the expiration of the Contract. Section 80 provides that financing may not extend a certain length beyond "expiration of the *contract*," not expiration of the *membership*. (Emphasis added.) The length of Plaintiff's membership under the Contract is within the Plaintiff's sole discretion and control. Plaintiff can choose to renew her membership for as long as she desires. If her membership terminates before

the end of her contractual financing period, it would only be because she chose to terminate her membership.  At her discretion, she could continue her membership after the end of the financing period.  Plaintiff's contractual financing provision is 36 months, while her initial membership is one month, renewable at plaintiff's option.  The membership is but one provision of the Contract.  The 36-month financing provision is one other provision of the same Contract.  The 36-month financing provision, one term of the Contract, cannot be "one month beyond the expiration of the contract," because it is part of the Contract.  In other words, unless cancelled pursuant to the statutorily mandated cancellation rights, the minimum term of the Contract is not less than the 36 month financing period.  Plaintiff's Contract cannot expire before the expiration of her financing period.  Moreover, even under Plaintiff's incorrect theory, her Contract's financing term would exceed Plaintiff's membership term only if Plaintiff herself chose to exercise her discretion and terminate her membership privileges before paying off the balance of her Membership Fee, which she chose to finance.  A person who has discretion under a contract ought not to be able to claim that the contract is in violation of a statute when the alleged violation is within that person's discretion and control.

The Contract does not expire with the "initial term" of the membership even if Plaintiff had chosen not to renew the membership after the first month.  Under paragraphs 5 and 6 of the Contract, Plaintiff's cancellation rights and payment obligations continued for 36 months. Thus, the Contract continued for at least 36 months – the term of the financing period.  If she exercised those cancellation rights, her obligation to make any further payments on her Membership Fee would terminate and she would be entitled to a refund of amounts paid prorated over 36 months.

Finally, Plaintiff is incorrect that the Contract "required" payments or financing for 36 months.  Plaintiff was not required to finance her Membership Fee through Holiday. She could have paid her Membership Fee upfront via cash, credit card or other means and had no further payment obligations.  She chose to finance through Holiday.

11

Furthermore, under her Contract, she had the right to prepay any outstanding balance of her Membership Fee at any time. Thus, whether there was any financing and the duration of that financing, were within Plaintiff's sole discretion. The Contract did not require payment or financing over 36 months. Plaintiff cannot complain that the term of her financing, which was in her sole discretion and control, exceeded the term of her membership, which was also within her sole discretion and control, assuming, arguendo, that the length of her membership is a relevant consideration under the Act, which, as discussed above, it is not.

> 2.    Plaintiff Lacks Standing to Bring Her Financing Claim Because She Suffered No Injury.

Section 86 of the Massachusetts Health Club Services Act provides, in relevant part:

> Any buyer who has suffered any injury as a result of a violation of sections seventy-eight to eighty-eight, inclusive, or the attorney general, may bring an action for recovery of damages or other relief, including injunctive relief, multiple damages and attorney's fees, as and to the extent provided for under chapter ninety-three A."

Mass. Gen. Laws ch. 93 § 86. Plaintiff alleges that she suffered "harm" in two ways:

> "First, by financing its substantial "membership fee" for nearly three years after the initial term of the contract, Bally's effectively locks members into long-term contracts. Second, Bally's use of such prohibited long-term financing imposes hundreds of dollars of illegal interest upon each of the putative Class Members." (Amended Complaint, ¶ 16).

Plaintiff further alleges in a conclusory fashion that she and the members of the purported class were damaged in that they: "(a) paid hundreds of dollars in illegal interest charges; (b) paid and continue to pay Bally's for fees pursuant to illegal and unenforceable contracts; and/or (c) were deprived by Bally's of the benefits and protections of the law and suffered a diminution in the value of their contracts thereby." (Amended Complaint, ¶ 27).

Plaintiff is incorrect in claiming that she suffered damages as a result of a

violation of section 80 for the reason that the financing provisions of her Contract "effectively" locked her into a long-term membership.  Section 80 of the Massachusetts Health Club Act expressly allows for contracts for services up to 36 months.  The financing period under Plaintiff's Contract was 36 months.  Thus, she cannot complain that the financing terms of the Contract effectively tied her to a 36-month contract term when the statute itself specifically allows for a contract term of 36 months.

Plaintiff is also incorrect in claiming that the finance charges under her Contract are "illegal."  Nothing in the Act prohibits finance charges.  The finance charges did not result from any alleged violation of the Act, but from the fact that Plaintiff in her sole discretion chose to finance her Membership Fee through Holiday.  She did not have to do so.  She could have avoided all finance charges by simply paying her membership fee in full at the time she signed her Contract by tendering payment via cash, credit card, check or other means.  She could avoid any future finance charge at any time by simply paying off the outstanding balance of her Membership Fee.  If her finance period extended beyond the term of her membership (which, again, would not be actionable), it was only because she made that decision pursuant to her Contract.  Her financing did not and could not extend beyond the length of the Contract itself.

Plaintiff's claims of injury are wholly illusory.  In reality, Plaintiff is simply claiming that she was injured solely because her Contract was allegedly in violation of the Act.  Plaintiff's assertion that she suffered an injury simply because her Contract is allegedly in violation of the Act would render the injury requirement of section 86 a nullity.  For a consumer to maintain an action under section 80 of the Act, there must be both a violation and an injury.  In the recent case of *Albats v. Town Sports International, Inc. d/b/a Boston Sports Club*, Civil No. 2002-04910 (Mass. Super. May 10, 2004) (attached hereto as Exhibit B),[2] the Massachusetts Superior Court (Houston, J., presiding) held

---

[2] Plaintiff's attorneys (Roddy, Klein & Ryan) are also the attorneys for the plaintiff in *Albats.*  The Massachusetts Supreme Judicial Court *sua sponte* took *Albats* for direct

13

that a person who has sustained no injury may not bring a claim for alleged violations of the Act. The Court held that: "[t]he language of § 86 clearly indicates that the legislature contemplated that a plaintiff have both a contract that violates a provision of the act, as well as an injury resulting from that violation." Slip. op. at 6.

In *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 813 N.E.2d 476 (2004), the Massachusetts Supreme Court addressed chapter 93A (referred to in section 86 of the Act) which, identical to section 86, allows a person "who has been injured" to bring an action. Mass. Gen. Laws ch. 93A, § 9(1). The Court in *Aspinall* held that causation is a required element of a claim under Chapter 93A. 442 Mass. at 401, citing, *Massachusetts Farm Bur. Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 403 Mass. 722, 730, 532 N.E.2d 660 (1989)("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery"). Plaintiff has not and cannot allege any "injury" caused by an alleged violation of the Act. She was "caused" to pay interest only because she chose to finance her membership fee through Holiday rather than paying it in full by cash, check or credit card.

Similarly, in a trio of cases under the New York health club services statute (which provides that a person damaged as a result of a violation may bring a cause of action), the New York Courts held that a plaintiff who suffered no actual injury as a result of the alleged violation lacked standing to assert a claim. *Sokoloff v. Town Sports International, Inc.*, 6 A.D. 3d 185, 778 N.Y.S.2d 9, 10 (2004); *Melino v. Equinox Fitness Club*, 6 A.D. 3d 171, 778 N.Y.S.2d 2, 3 (2004); *DeRiso v. Synergy USA*, 6 A.D. 3d 152, 773 N.Y.S.2d 563, 563 (2004). In each of *Melino*, *Sokoloff*, and *DeRiso*, the Court held

---

review on appeal and heard oral arguments on September 7, 2005. The allegations of damages in *Albats* are identical to the damage allegations in subparagraphs (b) and (c) of paragraph 27 of Plaintiff's Amended Complaint, which the Court in *Albats* found insufficient to state an injury under the Massachusetts Health Club Services Act. (See Exhibit B to the affidavit of Kathleen Genova, attached to Defendants' Memorandum in Support of Motion to Stay filed on August 17, 2005).

that a plaintiff could not maintain an action for violation of the New York law on health club contracts where the plaintiff alleged no injury other than the statutory violation itself. Likewise, in the present case, Plaintiff does not allege any injury resulting from any alleged violation of the Act. Plaintiff does not allege that she was required to make payments or financing beyond the expiration of her Contract. Without an "injury" caused by any alleged violation of the Act, Plaintiff cannot maintain an action.

**D.    Plaintiff Has Not Stated a Claim Based Upon Paragraph 8 of the Contract.**

To the extent that plaintiff's various claims are based on the alleged liability waiver contained in the Contract, those alleged claims fail to state valid causes of action because: (1) the Contract does not violate the pertinent provisions of the Act; and (2) plaintiff sustained no injury and, thus, lacks standing to assert any such claims. Thus, they should be dismissed under Fed. R. Civ. P. 12(b)(6).

1.    There is No Violation of Section 80.

Plaintiff incorrectly complains that paragraph 8 of the Contract violated the following portion of section 80:

> "No contract for health club services may contain any provisions whereby the buyer agrees not to assert against the seller or any assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club. No contract for services may require the buyer to execute a promissory note or series of promissory notes which, when negotiated, cuts off as to third parties a defense which the buyer may have against the seller. No contract may be assigned by one health club to another health club without written consent of the buyer."

Mass. Gen. Laws ch. 93, § 80. Plaintiff points to a single sentence of the Contract, which she takes out of context. Paragraph 8 of the Contract states:

> "We urge you not to bring valuables into the Club. You agree that we will not be liable for the loss or theft of, or damage to, the personal property of members or guests." (Amended Complaint, Ex. A, ¶ 8).

Contrary to Plaintiff's claim, paragraph 8 of the Contract does not relate to any

claim or defense arising out of the Contract or Plaintiff's activities at the health club. Nothing in the Contract requires Defendants to be liable for storage or use of personal items at the health club and/or criminal acts of third parties.  Indeed, paragraph 8 of the Contract urges members not to bring valuables to Holiday's facilities.  Nothing in the Contract or the law provides that Holiday is responsible for the loss or theft of personal property and/or criminal acts of third parties at the club. Plaintiff has not and cannot state any violation of the Massachusetts Health Club Services Act.

      2.    Plaintiff Lacks Standing to Bring Her Waiver of Liability Claim Because She Suffered No Injury.

      Section 86 of the Act limits standing to a buyer who has suffered any injury as a result of the alleged violation of the Act.  Plaintiff has not alleged that she suffered any injury as a result of paragraph 8 of the Contract.  Plaintiff does not allege that she suffered any loss, theft or damage to any personal property or that she sought to hold Holiday liable for any loss, theft or damage. In *Albats*, the plaintiff raised a claim (identical to Plaintiff's claim here) that her contract was void and unenforceable because it allegedly contained a clause whereby the buyer agreed not to assert against the seller any claim or defense arising out of the health club services contract or the buyer's activities at the health club. The Court in *Albats* dismissed that identical claim because the plaintiff had not sustained any injury as a result of the contract provision.

      In *Melino* and *Sokoloff*, the plaintiffs alleged, similar to Plaintiffs here, that the contracts, which purported to exempt the defendants from liability for injury or property damage or loss, violated a statutory provision which stated that: "[n]o contract for services may contain any provisions whereby the buyer agrees not to assert against the seller or any assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract." N.Y. Gen. Bus. § 623(3).  In affirming dismissal of the complaint, the *Melino* Court stated:

      "Plaintiff does not allege that she ever attempted to cancel the contract or

> hold defendant liable for negligence, but was prevented from doing so because of the contract, or that she otherwise sustained loss or damage because of the alleged discrepancies between the contract and the Health Club Services Law."

778 N.Y.S.2d at 3. The *Sokoloff* Court reached the same result for the same reasons. Likewise, in the present case, Plaintiff does not allege any injury resulting from any alleged violation of the Act. Plaintiff does not allege that she suffered any theft, loss or damage to any personal property. Therefore, she has no standing to raise this hypothetical issue.

## E.    Plaintiff's Ancillary Claims Fail to State Causes of Action.

Count II (unjust enrichment), Count III (money had and received), Count IV (declaratory judgment) and Count V (under Mass. Gen. Laws ch. 93A) are each based upon the theory that the Contract violates the Act and, therefore, is illegal. Because neither the Contract nor any of its provisions are illegal, Counts II through V fail to state a cause of action. In addition, because Plaintiff has not and cannot allege any injury as a result of any alleged illegal provision, she lacks standing to bring those claims.

Moreover, Plaintiff has not stated a claim for unjust enrichment or money had and received. In *Albats*, the Court dismissed an unjust enrichment claim and a claim for money had and received identical to the claims asserted by Plaintiff. The Court held that:

> "In Counts II and III Albats asserts claims for unjust enrichment and for money had and received, respectively. These are equitable remedies, for quasi-contract. However, the form contract remains in effect, as modified, see *supra*, and '[t]he law will not imply a contract where there is an existing express contract covering the same subject.' *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956). Further, Albats received the benefit of her bargain with TSI." Slip op. at 9.

*See also Sokoloff v. Town Sports International, Inc.*, 778 N.Y.S.2d at 10 ("Plaintiff's claims for unjust enrichment and money had and received were properly dismissed since plaintiff bargained for and received the use of the health club.") Plaintiff agreed to pay a sum certain for services under her Contract. She received those services. She

cannot now assert that Holiday was unjustly enriched or that Holiday received money to which it was not entitled.

Plaintiff also is not entitled to a declaratory judgment. "Declaratory judgment is a vehicle for resolving actual, not hypothetical, controversies, with the declaration issued intending to have an immediate impact on the rights of the parties." *Quincy City Hospital v. Rate Setting Commission*, 406 Mass. 431, 548 N.E.2d 869, 874 (1990). Because there is no violation of the Massachusetts Health Club Services Act and because Plaintiff cannot claim any injury, a declaratory judgment is not appropriate.

Defendants acknowledge that Mass. Gen. Laws ch. 93, §84 provides that a violation of the Act is a violation of chapter 93A. However, as the Court in *Albats* held, that cannot be the case where there has been no injury other than the alleged violation itself, as both statutes have separate injury requirements. Slip. op. at 8-9 (Exhibit B).

### IV. CONCLUSION

WHEREFORE, Defendants Bally Holding and Holiday respectfully request that this Court enter an order dismissing the Amended Complaint with prejudice and granting Defendants such other and further relief as this Court deems just, including an award of their attorneys' fee and costs.

Respectfully submitted,

BALLY TOTAL FITNESS HOLDING CORP.
and HOLIDAY UNIVERSAL, INC.,

/s/ Juliet A. Davison
Howard M. Cooper (BBO #543842)
Juliet A. Davison (BBO #562289)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

December 30, 2005

18

## EXHIBIT A

"5. **CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATION BY CAUSING A WRITTEN NOTICE OF YOUR CANCELLATION TO BE DELIVERED IN PERSON OR POSTMARKED BY CERTIFIED OR REGISTERED UNITED STATES MAIL WITHIN THREE (3) BUSINESS DAYS OF THE DATE OF THIS CONTRACT OR THE DATE OF YOUR RECEIPT TO THE ADDRESS SPECIFIED IN THIS CONTRACT**. To cancel, send a written notice of cancellation by certified or registered United States mail or deliver it in person to us in care of Bally Total Fitness Services, 12440 East Imperial Hwy., Suite 300, Norwalk, CA 90650, ATTN: Cancellation Department. Such notice shall be accompanied by the Contract forms, membership cards and any other documents or evidence of membership previously delivered to Buyer or Member.

6. **ADDITIONAL RIGHTS TO CANCELLATION. You or your estate may cancel this Contract for any of the following reasons: if upon a doctor's order, you cannot physically or medically receive the services because of significant physical or medical disability for a period in excess of three months; in case of your death; if the health club services to be provided under this Contract are not available because the seller fails to open a planned health club or location, permanently discontinues operation of a club or location, or substantially changes the operation of a club or location; if you move either your residence or your place of employment more than twenty-five miles from any club operated by the Seller of a substantially similar club which will accept the Seller's obligation under the Contract.** Following cancellation, we may retain the portion of the total Contract price representing the amount of time that services or facilities were used prior to cancellation. We may demand the reasonable cost of goods and services which you have consumed or wish to retain after cancellation. Refunds of the membership fee are prorated over the number of months indicated in the Membership Price section on Page 1. Monthly dues for periods after cancellation will be refunded. Buyer remains obligated for payments for other Members not entitled to cancel under this paragraph.

To cancel for any of the reasons set forth in this Paragraph 6, send to us at Bally Total Fitness Services, 12440 East Imperial Hwy., P.O. Box 1080, Norwalk, CA 90651-1080 a written notice of cancellation with the Contract forms, membership cards, and any other documents or evidence of membership previously delivered to Buyer or Member.

To cancel for a change of permanent residence, also send to us any of the following items as proof of Member's new permanent residence: a current and valid lease, a utility bill, a bank statement or credit card bill, a yellow change of address label indicating mail was forwarded to your new address by the post office, or Member's new driver's license with issue date.

To cancel for death or disability, also send to us proof of death or a written certification of such disability by a doctor licensed under this State which includes the following information: diagnosis, extent of disability, date of onset and estimated duration of disability. Your cancellation will be effective upon the date of death or onset of disability. Member agrees that we may verify Member's disability directly with Member's physician and Member consents to the release of any medical information to us related to Member's disability.

**A CANCELLATION ACKNOWLEDGMENT** will be sent, or additional documents requested, within 10 business days after we receive your written cancellation notice pursuant to any of the above Paragraphs 5 and 6." (Amended Complaint, Ex. A, p. 2)

**Exhibit A - 2**

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 2002-04910

## YEVGENIA ALBATS[1]

## TOWN SPORTS INTERNATIONAL, INC. d/b/a
## BOSTON SPORTS CLUB, & another[2]

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The plaintiff, Yevgenia Albats ("Albats"), filed a First Amended Class Action Complaint

on May 12, 2003 against the defendants, Town Sports International, Inc., d/b/a Boston Sports

Club and TSI Central Square, Inc. (collectively "TSI"). Albats asserts claims, on behalf of

herself as well as a class and sub-class similarly situated,[3] that the defendants violated G.L. c. 93,

§ 78 et seq., the Health Club Services Act (Count I), that the defendants were unjustly enriched

(Count II), for money had and received (Count III), for declaratory judgment pursuant to G.L. c.

231A (Count IV), and that the defendants committed unfair and deceptive trade practices, in

violation of G.L. c. 93A (Count V). The defendants now move to dismiss the amended

complaint, or in the alternative for summary judgment. For the reasons set forth below, the

defendants' motion for summary judgment is **ALLOWED** on all counts.

---

[1]Individually and on behalf of all others similarly situated.

[2]TSI Central Square, Inc.

[3]No class has been certified.

## BACKGROUND

The record reveals the following undisputed facts.[4] Both of the defendants are New York corporations. TSI is a leading owner and operator of fitness clubs in Massachusetts. With its wholly owned subsidiaries, TSI operates approximately twenty clubs in the Commonwealth. TSI Central Square, Inc. is one of those subsidiaries.

The primary membership sold by TSI is month-to-month, which may be terminated at will with thirty days advance notice. TSI drafts form contracts for use by its subsidiaries, and instructs that they be used. Those contracts provide standard language that applies to all members, and for monthly payment terms and initiation fees which vary. When executed, these contracts are between individual members and both TSI and a subsidiary.

On or about August 30, 2002, Albats executed a form contract to purchase a month-to-month membership at a health club owned and operated by the defendants. According to the terms of the contract, she paid a "non-refundable" initiation fee of $89.00 and the first month's dues, $52.50. The form contract signed by Albats includes the following provisions:

> **3.1 Medical Recommendation & Member Conduct.** Members and members' guests shall hold the club(s) harmless from any cost, claim, injury, dmage, or liability incurred at the club(s) except resulting from the negligence of TSI, its agents or employees ...

> **3.4 Activity Risk.** ... Members and members' guests assume the risk of any and all accidents or injuries of any kind which may be sustained by reason of or in connection with use of the facilities and release, discharge and absolve TSI, its agents and employees from any and all liability or responsibility except if such accident or injury is the result of the negligence of TSI, its agents or employees.

---

[4]Extraneous materials submitted by the defendants with their motion present material facts not included in the amended complaint. The plaintiff's responsive 9A materials do not dispute these facts, and so the plaintiff is deemed to have admitted them. Superior Court Rule 9A(b)(5). The motion will be treated as one for summary judgment pursuant to Mass. R. Civ. P. 12(b).

**3.5 Loss of Property.** TSI shall not be liable for the disappearance, loss or theft of, or damage to, personal property, including money, negotiable securities or jewelry, unless the member or guest shall have deposited the same with TSI and received a receipt in writing for such property. In no event, however, even though such property is so deposited and a receipt is given, shall TSI's liability for disappearance, loss, theft or damage thereof exceed the lesser of the actual value or $100.

The front page of the form contract contained the following provision:

**CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL WITHOUT ANY PENALTY OR FURTHER OBLIGATION BY CAUSING A WRITTEN NOTICE OF YOUR CANCELLATION TO BE DELIVERED IN PERSON OR POSTMARKED BY CERTIFIED OR REGISTERED UNITED STATES MAIL WITHIN THREE (3) BUSINESS DAYS OF THE DATE OF THIS CONTRACT OR THE DATE OF YOUR RECEIPT TO THE ADDRESS SPECIFIED IN THIS CONTRACT.**

The reverse side of the form contract contained the following provision regarding the initiation fee.

**1.2 Initiation Fee.** There will be a one-time initiation fee. This fee may change from time to time at TSI's discretion. This fee is non-refundable. Resignation from the club(s) shall not terminate the obligation to pay the initiation fee in full. There will be no further initiation fee as long as the membership has not expired.

On December 5, 2002, Albats made a demand under G.L. c. 93A § 9, on behalf of herself and all others similarly situated. She made that demand on the grounds that the form contract she signed failed to comply with the provisions of the G.L. c. 93, §§ 78-88, referred to as the Health Club Services Act. In a letter dated January 30, 2003, the defendants responded to the plaintiff's c. 93A demand (the "response letter").[5] The defendants did not respond with any offer of monetary damages, as they took the position that the plaintiff had failed to specify an injury to herself or any member of the proposed class. Although maintaining that the form contracts did not violate any law, TSI offered to make two changes to the contract language. First, TSI offered

---

[5]By agreement of the parties, additional time was allowed for the defendants to respond.

3

to replace the "Medical Recommendation and Member Conduct" and "Activity Risk" provisions

with a new provision which provides:

> **Activity Risk & Medical Recommendations:** Any strenuous athletic or physical activity
> involves certain risks. Members represent that they are aware of the possibility that
> accidents or injuries of any kind may be sustained by reason of or in connection with use
> of the facilities. Further, members that [sic] there are no medical or physical conditions
> that would prevent them from using exercise facilities at the club(s), and that they have
> not been instructed by any physician to refrain from using such facilities. Physical
> examinations are recommended for all members and especially for members who are
> elderly, pregnant, unaccustomed to physical exertion, or who have physical limitations, a
> history of high blood pressure, heart problems, or other chronic illness. Before beginning
> any fitness program, each member is responsible for obtaining authorization, if
> appropriate, from his or her doctor. Members who are over thirty-five years of age, or
> have any Coronary Risk Factors, should have a full cardiovascular stress test
> administered by a doctor. Members shall not use the club(s) facilities in such a way as to
> endanger the health or safety of themselves or others.

Additionally, TSI proposed to modify the "Loss of Property" provision to read:

> **Personal Property:** Health and fitness clubs experience some incidents of theft,
> including theft from lockers. Accordingly, members and their guests are warned not to
> bring valuable personal property to a BSC [TSI] club. Members and their guests agree to
> take all reasonable precautions to protect any personal property that they choose to bring
> to a club.

In the response letter, counsel for the defendants requested of plaintiff's counsel that "If

you believe that the above changes will not bring TSI into compliance with the Massachusetts

Health Club Act, please let me know in writing with particular suggestions for further revision as

soon as possible." Plaintiff's counsel did not respond to the letter. TSI has since implemented

the proposed changes to the language of the form contract.

The records of TSI show that Albats used the health club facility several times a week

between September 23, 2002 and June 17, 2003, the date of the affidavit submitted with

defendants' motion. The original complaint in this matter was filed on November 20, 2002.

4

Albats filed the present amended complaint, adding her claims under G.L. c. 93A, on May 12, 2003.

## DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); *Cassesso v. Comm'r of Correction*, 390 Mass. 419, 422 (1983); *Community National Bank v. Dawes*, 360 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles him to judgment as a matter of law. *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809 (1991); *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991).

### I. Health Club Services Act

Count I of Albats' amended complaint seeks damages pursuant to G.L. c. 93, § 86. However, as she fails to allege any injury, she lacks standing to bring this claim. The statute provides in part, that "[a]ny buyer who has suffered any injury as a result of a violation of sections seventy-eight to eighty-eight, inclusive, or the attorney general, may bring an action for recovery of damages or other relief..." G.L. c. 93, § 86. The Health Club Services Act, G.L. c. 93, §§ 78-88, provides specific rules about the form and content of contracts for health club services. Albats asserts she was injured because her contract with TSI failed to conform with

5

sections of that statute, and thus she lost her protections under the law. However, this argument fails. A statute is to be read for its plain meaning. *Iodice v. City of Newton*, 397 Mass. 329, 332-333 (1986); *Gurley v. Commonwealth*, 363 Mass. 595, 598 (1973). The language of § 86 clearly indicates that the legislature contemplated that a plaintiff have <u>both</u> a contract that violates a provision of the act, as well as an injury resulting from that violation. Albats cannot make that showing. The defendants' motion for summary judgment on Count I is allowed.

## II. **Declaratory Judgment**

Count IV of the amended complaint seeks a declaratory judgment of the rights of the parties under the form contract, and a declaration that the contract is "void and unenforceable" pursuant to G.L. c. 93, § 85. That statute provides, in part, that "[a]ny contract for health club services which does not comply with the applicable provisions of this chapter shall be void and unenforceable as contrary to public policy." G.L. c. 93, § 85. The defendants contend that they are entitled to summary judgment on Count IV because the plaintiff lacks standing and fails to allege an "actual controversy." Further, they assert that any controversy that is alleged is moot, in light of the changes made to the form contract provisions.

The Superior Court may "make binding declarations of right, duty, status and other legal relations," provided there is an actual controversy, specifically pled by a plaintiff with standing to assert the claim. G.L. 231A, § 1; *Massachusetts Assn. of Independent Insurance Agents & Brokers, Inc. v. Comm'r of Insurance*, 373 Mass. 290, 292-293 (1977). An actual controversy is "a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that

6

201

unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *Bunker Hill Distributing, Inc. v. District Attorney for the Suffolk District*, 376 Mass. 142, 144 (1978), quoting *School Comm. of Cambridge v. Superintendent of Schools of Cambridge*, 320 Mass. 516, 518 (1946).

Declaratory judgment is not appropriate in the present case. The plaintiff claims that her disagreement with TSI over the validity of the original form contract presents an actual controversy. However, the undisputed facts do not support the conclusion that without a declaration of the parties' rights litigation will immediately follow. There is no further conflict pending. Albats does not seek this declaration in any way to resolve an immediate question as to her rights. She does not assert a desire to be released from her contractual obligation to TSI. She continues to honor the contract, and to participate in activities at TSI clubs. The contract has been modified.[6]

Although determination of the rights of parties to a contract is an appropriate subject for declaratory judgment, *Sahli v. Bull HN Systems, Inc.*, 437 Mass. 696, 705 (2002), and a party to a contract need not place himself in jeopardy in order to obtain a declaratory judgment, *School Comm. of Cambridge*, 320 Mass. at 518, he must present more than a theoretical or abstract disagreement. See *Brown v. Neelon*, 335 Mass. 357, 360-361 (1957). As the undisputed facts do not present an imminent conflict that, if resolved, would avoid litigation, the plaintiff's claim

---

[6] As to the issues addressed by TSI's changes to the form contract, the plaintiff's claim is likely moot. "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome." *Acting Superintendent of Bournewood Hosp. v. Baker*, 431 Mass. 101, 103 (2000), quoting *Attorney Gen. v. Comm'r of Insurance*, 403 Mass. 370, 380 (1988).

7

fails as a matter of law and the motion for summary judgment is allowed on Count IV.

### III. G.L. c. 93A

In Count V of the amended complaint, the plaintiff alleges that the defendants committed unfair and deceptive trade practices in violation of G.L. c. 93A. The defendants contend that, because a reasonable response to the plaintiff's demand letter bars recovery beyond what was offered, G.L. c. 93A, § 9(3), this count should be dismissed. Further, they assert that Albats fails to state a claim because she does not allege an injury due to the defendants' conduct.

The defendants' first contention is not persuasive. They assert that they made a reasonable response to the plaintiff's demand letter, that the plaintiff's recovery would be limited to what was offered, and that they have implemented the changes proposed in their response. Thus, defendants conclude that the Court should dismiss or grant summary judgment because, essentially, the issue is moot. However, although a reasonable response to a 93A demand letter can limit a plaintiff's recovery, it is well settled law that the reasonableness of a response is a question of fact. *Shanley v. Rockland Trust Co.*, 49 Mass. App. Ct. 1119 (2000). It is the defendant's burden to demonstrate that a response was reasonable. *Id.*, quoting *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976). The defendant asks that the Court make a finding of fact that the response was reasonable. This is improper on a motion for summary judgment.

The defendants argue, in the alternative, that Albats has failed to satisfy the injury requirement of G.L. c. 93A. A consumer may bring suit if he is injured by unfair or deceptive acts or practices in the conduct of trade or commerce. G.L. c. 93A, §§ 2, 9. He is entitled to damages "in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the

8

act or practice was a willful or knowing violation..." G.L. c. 93A, § 9(3).

Section 84 of G.L. c. 93 provides that a violation of the provisions of the statute by a seller or his agents is a per se "unfair and deceptive trade practice," violating G.L. c. 93A. Albats must also, however, show an injury resulting from the violation. *Lord v. Commercial Union Insurance Co.*, 60 Mass. App. Ct. 309, 321-322 (2004) (holding that the trial court's award of the statutory minimum $25 damages, and attorney's fees, was improper where there was a finding of fact that the c. 93A violation did not cause the plaintiff's loss), review denied, 441 Mass. 1104 (2004). The plaintiff asserts that her injury exists in the denial of her protections under G.L. c. 93. Although the "invasion of a legally protected interest" may satisfy the injury requirement of G.L. c. 93A, § 9, see *Leardi v. Brown*, 394 Mass. 151, 160 (1985), that is a limited holding. *Lord*, 60 Mass. App. Ct. at 323. "The legislature ... did not intend to confer on plaintiffs who have suffered no harm the right to receive a nominal damage award which will in turn entitle them to a sometimes significant attorney's fee recovery." *Id.*, at 321-322. The defendants' motion is allowed as to Count V.

## IV. Quasi-Contractual Remedies

In Counts II and III Albats asserts claims for unjust enrichment and for money had and received, respectively. These are equitable remedies, for quasi-contract. However, the form contract remains in effect, as modified, see *supra*, and "(t)he law will not imply a contract where there is an existing express contract covering the same subject." *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956). Further, Albats received the benefit of her bargain with TSI. The defendants are entitled to judgment as a matter of law, and the motion for summary judgment on Counts II and III are allowed.

9

## ORDER

For the foregoing reasons, defendants' motion to dismiss or for summary judgment is

**ALLOWED.**  Summary judgment shall enter for the defendants on all counts.

Julian T. Houston
Justice of the Superior Court

DATE: May _10_, 2004

10

205