## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GISSELLE RUIZ,<br>individually and on behalf of all others<br>similarly situated,<br><br>　　　　　　　　　　Plaintiff<br><br>　　　　v.<br><br>BALLY TOTAL FITNESS HOLDING CORP.,<br>a Delaware Corporation, and<br>HOLIDAY UNIVERSAL, INC.<br>a Delaware Corporation,<br><br>　　　　　　　　　Defendants | )<br>)<br>)<br>)<br>)　　Civil Action No.<br>)　　05-11052-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### Plaintiff's Opposition to Defendants' Motion to Dismiss

### I.    Introduction

In the early 1980s, most states enacted laws to protect consumers from the abusive practices of certain elements of the health club industry.[1] Massachusetts enacted the Health Club Services Contracts Act, M.G.L. c. 93 § 78 *et seq*. ("HCSCA" or the "Act"), which, among other things, prohibits health clubs from trapping unwitting consumers into long-term health club contracts. Of import here, section 80 of the HCSCA prohibits clubs from financing memberships for more than one month longer than the term of the membership contract.

The defendants' (called "Bally" here for simplicity) membership contracts are for one month renewable terms, but Bally finances these memberships with 36 month loan agreements, in violation of the HCSCA. Nevertheless, Bally argues in its motion to

---

1. National Consumer Law Center, *Unfair and Deceptive Acts & Practices*, at 535 (6th Ed. 2004).

dismiss that the loan agreement is part and parcel of the contract, giving the overall contract a 36 month term. This argument simply ignores the plain language of the contract, which is for an "initial term [of] one month", "renewable" on a month to month basis at Ms. Ruiz's option upon payment of the monthly "dues" of $8.

In fact, in an Illinois case, Bally denied that its form contract is for a 36 month term, arguing, as Ms. Ruiz does here,  that its contract *is* month to month. *See Pulcini v. Bally Total Fitness*, 353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523 2004).  Having persuaded the *Pulcini* court that its contract is month to month, Bally is judicially estopped from arguing to this Court that it is actually three years.

In addition, Bally's contracts expressly waive consumers' rights to recover "for the loss or theft of, or damage to, [their] personal property". This provision violates section 80 of the Act, as well as the separately codified prohibition on waiver of consumer rights contained in M.G.L. c. 93, §101. Bally does not address the waiver in its motion. Rather, it seeks alternative grounds for dismissal by arguing that this Court has no jurisdiction over its holding company, Bally Total Fitness Holding Corp., and that its violations of the HCSCA, although serious enough to invoke the Act's mandatory voiding provision, are not serious enough to be considered "injuries" cognizable under Chapter 93A.

Bally's motion must fail for several reasons. First, its argument that the contract does not violate the Act is based on an interpretation of the statute that is inconsistent with its plain language and would eliminate any protection against the long-term financing of short term memberships. Moreover, its position is directly contrary to its position in *Pulcini*.  Bally's claim that Ms. Ruiz was not injured by its illegal financing

provisions ignores the obvious costs incurred by club members such as Ms. Ruiz when they are locked into long term financing contracts of the substantial membership fees charged at Bally's clubs. Finally, this Court's jurisdiction over the holding company is established by allegations of its integral part in drafting the form contract, setting and enforcing policies, and operating Bally's Massachusetts clubs.

## II.    Statement Of The Case

Defendants, Bally total Fitness Holding Corp. and its wholly owned subsidiary Holiday Universal, Inc. own and operate at least twelve Bally health clubs in Massachusetts. On March 11, 2004, Giselle Ruiz signed a contract for health club services with Holiday, and began using its Worcester, Massachusetts location.  Under the express terms of the contract, Ms. Ruiz's membership was for an "initial term [of] one month", "renewable" on a month to month basis at her option upon payment of the monthly "dues" of $8.  The contract requires payment of  Bally's "membership fee" of $1,565.00, less a $150 down payment, to be financed over a period of 36 months. The disclosed finance charge of $344.68 is based upon an annual percentage rate of 14.75% per annum. A copy of the complete contract is attached to the complaint and appended here as Exhibit A.

In 2004, Ms. Ruiz requested that Bally cancel her membership and cancel her obligation to pay the balance of her "membership fee" for the remaining term of her financing agreement with Bally. Bally refused. On April 14, 2005, Ms. Ruiz filed a class action in Superior Court, challenging Bally's contract provisions and seeking restitution for all persons injured by its conduct in Massachusetts.

Ms. Ruiz alleges that Bally's form health club membership agreements ("contracts"), violate the express provisions of the HCSCA in that:

> the contract requires payments for a period of 36 months, in violation of section 80 of the Act, which expressly prohibits financing that requires payments which would extend more than one month beyond the end of the contract term;

> the contract also requires members to agree not to assert any claim against Ballys "for the loss or theft of, or damage to, [their] personal property, " in violation of section 80, which expressly prohibits "any provisions whereby the buyer agrees not to assert against the seller .... any claim or defense arising out of the health club services contract or buyer's activities at the health club";

> the contract's waiver provision also violates the prohibition on waiver of consumer rights separately codified in M.G.L. c. 93, §101; and

> the contract's non-compliance with the Act and c. 93, §101 constitute violations of Chapter 93A.

As Bally's form contracts do not comply with the Act, they are, pursuant to section 85, void and unenforceable as contrary to public policy. Ms. Ruiz sought declaratory judgment on this score, as well as actual and statutory damages for money paid in illegal interest charges and for fees paid pursuant to illegal and unenforceable contracts. Ms. Ruiz also sought relief based on a diminution in the value of Bally's contracts based on Bally's deprivation of the benefits and protections of the law.

Bally removed the state court action to this court on May 19, 2005 based on 28 U.S.C. § 1332.

### III.     ARGUMENT

### A.  Bally's Contract Violates The Express Terms of c. 93 § 80: It Requires Payments More Than One Month After The Expiration Of The Membership Contract

Chapter 93 § 80 of the Health Club Services Act provides in relevant part:

> No contract for health club services shall be for a term longer than thirty-six months, except that upon expiration of the contract, the seller may offer to the buyer the right to renew his contract for a similar, shorter or longer period not to exceed thirty-six months.
>
> **No contract for health club services shall require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract** … (emphasis added).

Ms. Ruiz's contract expressly provides that the initial term of the membership contract is one month, and is renewable thereafter on a month to month basis.  Under the terms of the contract, Ms. Ruiz is to pay a one time membership fee of $1565, which is financed over 36 months at an APR of 14.75%.  By its express terms, therefore, the contract requires payments for more than one month beyond the one month membership term.

Section 78 of the Act defines "contract for health club services" as follows:

> "Contract for health club services", a contract which has the primary purpose of providing a person with the right to use the facilities of a health club or with instruction, training, or assistance by a health club in the preservation, maintenance, encouragement or development of physical fitness, conditioning or well-being… .

As made clear by the plain language of the statutory definition, the primary purpose of a "contract for health club services" is to give the consumer the right to use the health club facilities. Under Bally's contract, the consumer's right to use the health club facilities is conditioned upon payment of the $8 dues. : "To maintain your membership

privileges, you must pay the monthly dues … ." If the consumer chooses to cancel (or not

renew) the contract, she is relieved of the obligation to pay the $8 membership dues:

> 20.     MONTHLY DUES.  Monthly dues charges will continue
> to be due each month regardless of your use of the club until you
> notify us in writing that you wish to cancel this contract ….

Such a cancellation or non-renewal nullifies the primary purpose of the contract, the

right to use the health club facilities. But despite termination of the contract, Bally still

insists on collecting the $1760 in loan payments owed:

> 20.     …. Regardless of such cancellation, any *outstanding
> balance of the membership fee will remain due and payable* in
> accordance with this Contract ….

> 3.     OBLIGATIONS ABSOLUTE.  Other than in the event of
> permitted cancellations described below, Buyer shall not be
> excused from the obligation to make any payment in accordance
> with this Contract, *and buyer may not reduce the amount of any
> payment of any reason including Member's failure to use any
> club*.

(emphases added).

In fact, even if membership is suspended, consumers must pay the membership fee,

as provided in paragraph 12: "… If your membership is suspended, your obligations to

make payments under this Contract continue as scheduled."[2] Bally holds all the cards,

and has drafted extremely onerous terms. It is precisely this type of abusive, adhesion

contract that section 80 prohibits. Section 80's purpose is to prevent consumers from

---

2. Quite apart from its violations of section 80's specific protections, Bally's insistence on
collecting high interest, long term loans despite the consumer's inability to use the health club or
otherwise benefit from their ongoing payments is a textbook illustration of the "fee for no
services" scam that the seminal Chapter 93A decision deemed unfair and deceptive more than
thirty years ago. *Commonwealth v. DeCotis*, 366 Mass. 234, 316 N.E. 2d 748 (1974) (charging fee
without providing correspondent benefit is unfair and deceptive).

being held captive to such predatory long-term financing irrespective of the short term of the membership itself.

Bally tries to circumvent the law's application by arguing that the duration of the club *membership* (one month) is not the same as the duration of the *contract* (36 months). It claims that the "contract" includes the 36 month financing arrangement. Thus, the financing does not extend beyond the "contract," in Ballys' view, because the contract *is* the payment schedule. But this interpretation would make section 80 meaningless –the duration of the payments would always be the same as the duration of the (financing) contract.

The plain language of the statute also makes clear that Bally's positon is wrong. It is the club membership term by which the length of the financing arrangement is measured and limited. Section 80 provides that "No *contract for health club services* shall require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract." (emphasis added). As noted, the "contract for health club services" is the agreement that provides the right to use the club's facilities. By its plain meaning, section 80 requires that the payment schedule not extend more than a month beyond the term of the membership. Bally's contract blatantly violates this limitation.

Bally next argues that there can be no violation because the length of the contract and the financing arrangement "are within the Plaintiff's sole discretion and control," and that "a person who has discretion under a contract ought not to be able to claim that the contract is in violation of a statute when the alleged violation is within that person's discretion and control." Bally's Brief, at 11. Bally notes that the contract allows Ms.

Ruiz to pay off her membership fee in full and avoid financing costs. Bally's Brief, at

11-12. It is highly doubtful that Ms. Ruiz, or any club member has any say in the term of

the financing agreement. Even if she did, Bally is not relieved of the obligation to

comply with the limits imposed by the statute. Under Bally's faulty reasoning, for

example, a lender could never be liable for charging usurious interest as long the

agreement allowed prepayment – the imposition of interest charges being within the

borrower's theoretical "control"– when he or she can simply avoid all interest by paying

off the debt in full.

**B. Bally Has Already Convinced One Court That Its Form Contract Has A One Month Renewable Term – It Is Judicially Estopped From Arguing The Opposite To This Court**

Although Bally argues here that the contract is 36 months, it took the opposite

position in the *Pulcini* case, where it argued that the *identical form contract* was month to

month renewable:

> Bally argued successfully in the trial court that its contracts do not provide for an
> impermissible initial service term of three years; instead, they provide for an
> initial term of one month renewable each month …. The trial court accepted
> Bally's argument that the contract provides for an initial service term of *one
> month, renewed by payment of monthly dues*."
> *Id.,* at 715-716 (emphasis added).

Bally took this position because under Illinois law (815 ILCS 645/8(b):

> [t]he initial term of services to be rendered under the [health club] contract may
> not extend over a period of more than 2 years from the date the parties enter into
> the contract;  provided that the customer may be given an option to renew the
> contract for consecutive periods of not more than one year each for a reasonable
> consideration not less than 10% of the cash price of the original membership.

Thus a three year term would violate the Illinois Physical Fitness Services Act

(Fitness Act), 815 ILCS 645/1, et seq. Although the *Pulcini* court held that Bally's

contract was month to month, it found that Bally violated another provision of the Illinois

statute because the renewal payment was less than 10% of the price of the initial membership. *Pulcini,* at 717 – 718.  Given its position in *Pulcini*, Bally is judicially estopped from arguing here that precisely the same form contract has a 36 month term.  A copy of *Pulcini* is attached as Exhibit B.

Judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken in a prior legal proceeding. *Alternative System Concepts, Inc. v. Synopsys, Inc,* 374 F.3d 23, 33 (1st Cir. 2004), *citing InterGen N.V. v. Grina,* 344 f.3d 134, 144 (1st Cir. 2003); *Pegram v. Hendrich,* 530 U.S. 211, n.8 (2000).  The doctrine's primary purpose "is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system" or according to the First Circuit, "playing fast and loose with the courts." *Alternative System Concepts, at 33, citing Patriot Cinemas, Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 212 (1st Cir. 1987) (quoting  *Scarano v. Cent. R. Co.* 203 F.2d 510, 513 (3rd Cir. 1953).

In *Alternative System Concepts*, the Court of Appeals noted that while there is no mechanical test for judicial estoppel, it is generally recognized that in order for the doctrine to apply, at least two conditions must be satisfied: first, the positions taken must be directly inconsistent, and second, the litigant must have "succeeded in persuading a court to accept its prior position." *Altentative System Concepts* at 33. In this case, both elements are present.

Bally's position in *Pulcini* is directly contrary to its position here – the two arguments are mutually exclusive.  Bally cannot change its interpretation of its own contract based on which view is more expedient. To allow otherwise would "create[] the appearance that either the first court has been misled or the second court will be misled,

thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process." *Alternative System Concepts*, at 33.

**C.  Ms. Ruiz And The Class She Seeks To Represent Were Harmed By Bally's Form Contract**

In arguing that Ms. Ruiz was not harmed by the challenged provisions of Bally's form contract, Bally blithely contends that any costs associated with the financing arrangements are solely within Ms. Ruiz's control: "She could have avoided all finance charges by simply paying her membership fee in full at the time she signed her contract … ." Bally's Brief, at 13.

Again, the Act expressly protects consumers by imposing certain limitations on financing.  These limitations apply even though a consumer theoretically could choose not to finance.  The limitations protect consumers who "choose" to finance their memberships.

Ms. Ruiz was harmed in a very concrete way by Bally's financing arrangement. By financing the substantial "membership fee" of $1,565, for nearly three years after the initial one month term of the contract, Bally effectively uses deception to lock its members into long-term contracts, which may extend long after a membership is terminated.  While under the contract Ms. Ruiz could choose not to renew (or to cancel) her membership after one month, and thereby be relieved of  the monthly dues payment of $8.  But she would still owe the balance of the membership fee, the remaining 35 payments under the payment plan.  This illegal lock-in is the precise harm from which the statute seeks to protect consumers.  In addition, Ms. Ruiz and proposed class members are charged hundreds of dollars in finance charges over and above the $1,565 "membership fee".  This is direct monetary harm.

The trial court's decision in *Albats v. Town Sport Int'l.*, Civil No. 2002-04910 (Mass. Super. May 10, 2004), is not dispositive on this issue.   The claims in the two cases are based on different provisions of the Act and the resulting injuries alleged are distinct. The core issue before the court in *Albats* was whether a health club injures consumers when it requires, as a condition of club membership, that they sign contracts which misrepresent statutory cancellation rights and waive rights expressly granted by the Act.

In *Albats* the plaintiff asserted that a health club's contractual imposition of a non-refundable "initiation" fee violated section 81 of the Act, which requires that every member be given a three day period to rescind and be refunded "[a]ll monies paid pursuant to such contract." Ms. Albats contended that the offending contract misrepresents members' statutory cancellation rights by deceptively representing that in order to exercise those rights, members must forfeit any initiation fees they paid.  She also challenged the contractual waiver of broad categories of claims against the health club for injuries and property damage, despite the Act's express prohibition on waiver of members' claims.

By contrast, this case is based on Bally's use of a prohibited financing mechanism to lock consumers into long-term contracts at high interest rates. There is also a distinction between the injury that Ms. Ruiz suffered as a result of Bally's violations of section 80 of the Act and the injury alleged in *Albats* under section 81 of the Act. In *Albats*, the issue was whether Ms. Albats suffered an injury without showing some loss of money or property, based on the inclusion of a contract provision which deprived class members of statutorily protected rights to cancel their contracts. In this case, Ms. Ruiz

challenges a provision under which she and the class she seeks to represent suffered monetary damages caused by the financing of membership fees over a period of three years, a provision which directly violates section 80 of the Act.

In *Albats* the illegal provision was not necessarily enforced against all class members, while in this case all putative class members were subject to the same financing term and charges. The trial court's holding that Ms. Albats suffered no injury and therefore could not recover under the Act or c. 93A was primarily based upon its interpretation of *Lord v. Commercial Union Ins. Co.*, 801 N.E. 2d 303, 60 Mass. App. Ct. 309 (2004), which it read to require proof of a loss caused by the defendant in order to recover under c. 93A. In this case, the plaintiff can establish a monetary loss – the cost of financing beyond the period allowed by statute. Thus even under the reasoning of *Albats,* Ms. Ruiz has stated a claim.

Since Bally filed its motion to dismiss, on January 20, 2006, *Albats* was affirmed by an equally divided Supreme Judicial Court. No written decision was issued, and a petition for rehearing is pending. The SJC's disposition thus provides no guidance on the claim at issue here.

In addition, Bally ignores the fact that the statute renders its contracts void, c. 93 § 85, relieving Ms. Ruiz, and other club members, of any further obligation to make payments under the contracts. In fact, Bally has already had one aspect of its form contract declared void pursuant to the Act:

> The statute clearly indicates that where the offending clause appears, the entire contract is expressly rendered void. . . . The cases indicate that absent a requirement in a statute that the contract be declared void, a contract should be upheld. [citations] The statute in this case, however, specifically requires that the entire contract be rendered null and void as a matter of

> public policy. . . . To ignore the express language of the statute
> would provide no penalty for violating the terms of the same,
> although it is obvious from § 86 of the statute that it was the
> Legislature's intent to make a violation of the statute a per se
> violation of the Consumer Protection Act as set forth in G.L.c.
> 93A.

*Holiday Universal, Inc. v. Haber*, 1990 Mass.App.Div. 69, at *2-3 (Mass.App.Div. 1990).

Established Massachusetts caselaw supports this approach. Where a statute mandates

that a contract is void for the protection of one of the parties, no party can profit from the

contract. *Beach Associates, Inc. v. Fauser*, 9 Mass.App.Div. 386, 401 N.E.2d 858

(Mass.App.Div. 1980) is instructive on this score.  There the court considered two provisions

of the small loan act; one stating that usurious loans provided by licensed persons "*may* be

declared void", the other stating that loans provided by unlicensed persons "*shall* be void."

The court explained the significance of the latter:

> Where the loan is by an unlicensed lender, the loan itself, and not
> merely the excessive interest offends the statute in respect to its
> goal "to prohibit the unlicensed business of making small loans."
> The loan is invalid because the lender was precluded by law from
> making it. *Such a lender cannot profit by his criminal conduct,*
> *and he is entitled to no return on his asset.*

*Id.*, at 391. (emphasis added).[3]

The plain meaning of the statutory language here compels one result.  Bally is not

entitled to payments under a void contract, and Ms. Ruiz has suffered injury by paying

money that she "was not obliged to pay and for which [she] could not pay properly." *City of*

*Lowell v. Mass. Bonding & Ins. Co.*, 313 Mass. 257, 270, 47 N.E.2d 265 (1943).

In *Albats,* the trial court did not directly address the voiding provision, because it

found that the contract had been modified to comply with the statute, and that Ms. Albats did

---

3. There is no difference between precluding a wrongdoer from recovering on a void contract and
precluding him from using the fact that he rendered services under a void contract as a defense
to a suit brought by an innocent party.  *See e.g. Morse v. Ely*, 154 Mass. 458, 458, 28 N.E. 577, 578
(1891).

not seek to be released from the contract. *Albats* Decision, at 7. In this case, however, Ms. Ruiz's contract has never been modified, nor is it the case that Ms. Ruiz did not seek relief from the contract – she attempted to cancel her contract, but was told that she still must make payments on her membership fee.

For all of these reasons, Ms. Ruiz has been injured by Bally's practices, and has stated a claim.

### D.  Bally Total Fitness Holding Corporation is Subject to This Court's Jurisdiction

### 1.    The Court Has Jurisdiction Over Bally Holding

#### A.    Standard

The standard for ruling on a motion to dismiss for lack of personal jurisdiction is well-defined: "While the plaintiff must go beyond the pleadings and make affirmative proof of the essential jurisdictional facts . . . the court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *In re Lupron Marketing and Sales Practices Litig.*, 245 F.Supp.2d 280, 289 (D.Mass. 2003) (citations and internal quotation marks omitted). In short, the plaintiff's burden "is not, as a rule, a heavy one." *Id*.

#### B.    The Court Has General Jurisdiction Over Bally Holding

Bally's brief quickly glosses over the first prong of jurisdictional analysis, claiming – without any factual support – that Bally Holding has "no employees or business operations of its own" and thus cannot be held to conduct business in Massachusetts systematically enough to support general jurisdiction. But its most recent annual report, filed with the SEC just a month before its motion to dismiss, proves the very opposite.

14

According to its securities filings, "Bally Total Fitness Holding Corporation is the largest publicly-traded commercial operator of fitness centers in North America in terms of members, revenues and square footage of its facilities."  *See* Bally Total Fitness Holding Corp, 10-K, at 8 (filed Nov. 30, 2005) (referred to as Bally Holding 10-K)[4].  It goes on to state that it operates fitness centers "primarily under the Bally Total Fitness branded servicemark . . . in major metropolitan areas in 29 states, the District of Columbia and Canada, with more than 350 fitness centers located in the top 25 metropolitan areas in the United States and Toronto, Canada."  *Id.*  As of February 29, 2004, Bally Holding reported that, together with its subsidiaries, it "operated fitness centers in over 45 major metropolitan areas representing 63% of the United States population and over 16% of the Canadian population[,]had approximately 3.6 million members" and had "approximately 23,200 employees, including approximately 10,700 full-time employees and over 6,000 personal trainers."  *Id.*  Bally Holding's net revenue for 2004 was over one billion dollars.  *Id.*, at 34.

Moreover, it is clear that Bally Holding's operations extend fully into Massachusetts.  *See* *http://www.ballyfitness.com/join/club_dir.pdf* (website, indicating that Bally operates 10 clubs in Massachusetts); *see also* Bally Holding 10-K (noting Massachusetts lawsuit filed by Fit Tech, Inc. arising out of the acquisition of health clubs).

---

4.  Bally's 10-K is available at:
http://phx.corporate-ir.net/phoenix.zhtml?c=97646&p=irol-SECText&TEXT=aHR0cD ovL2NjYm4uMTBrd2l6YXJkLmNvbS94bWwvZmlsaW5nLnhtbD9yZXBvPXRlbmsmaXBhZ2U9U9M zgxNDI5NSZkb2M9MCMCZhdHRhY2g2g9b24=

By participating in the operation of ten Massachusetts health clubs, there is no question that Bally Holding has "engaged in continuous and systematic activity. .. in the forum state." *In re Lupron*, at 288.

### C. The Court Also Has Specific Jurisdiction Over Bally Holding Under the State Long-Arm Statute

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:"

(a) transacting any business in this commonwealth;

. . .

(c) causing tortious injury by an act or omission in this commonwealth;

(d ) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; [or]

(e) having an interest in, using or possessing real property in this commonwealth. M.G.L. 223A § 3.

Each of the four sub-parts is satisfied.  First, as explained above, Bally Holding admits that it transacts business in Massachusetts, operating 10 health and fitness clubs here.  Second, Bally Holding is alleged to have sold illegal contracts in Massachusetts, thereby causing injury to Ms. Ruiz and her putative class.  *See Liu v. DeFelice*, 6 F.Supp.2d 106, at 108 (D. Mass. 1998) (out of state defendant who invaded resident's privacy in violation of the Fair Credit Reporting Act, could be brought to Commonwealth because it was" reasonable to conclude that Defelice knew his actions would have specific impact in Massachusetts").  Third, even if Bally could somehow show that its misconduct occurred wholly outside of Massachusetts (and it would have to contradict its own securities filings to do so), it still, as explained above, regularly does business here,

and derives substantial revenues from the services rendered here.  Fourth, Bally has an interest in using and possessing real property in Massachusetts – specifically the property upon which its health clubs sit.

    **D.    Due Process Concerns Are Easily Satisfied**

    Finally, rehashing its rhetoric that it is simply a passive holding company, Bally Holding argues that the exercise of jurisdiction does not comport with the minimal constitutional due process requirements.  *Commonwealth v. Phillip Morris Inc.*, 1998 WL 1181992 (Mass. Super. Ct. March 20, 1998), puts this argument to rest.  *See also, In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 399 F.Supp.2d 325, 338 (S.D.N.Y. Aug 16, 2005) (citing *Phillip Morris* with approval).

    In *Phillip Morris*, just as here, defendant B.A.T. Industries p.l.c argued it was a "passive holding company" that was not involved in any of its subsidiaries affairs, let alone participating in its subsidiaries' alleged defrauding of the public as to the safety of certain tobacco products.  As such, it claimed it could not be sued in Massachusetts under the restrictions of the state long-arm statute or the United States Constitution.  The court rejected both arguments, explaining that – again, just as in the instant case – B.A.T. was not being sued simply for being a related entity to some of the wrongdoers, but rather for its own independent tortious conduct.  *See Phillip Morris*, at *2-*3 (finding specific jurisdiction where it could be reasonably inferred that B.A.T. directed some of the alleged tortious activity of its subsidiaries) and *id.* at *7-*9 (finding that where B.A.T. was accused of acting intentionally to the detriment of in-state residents and where, through its subsidiaries, it had a substantial in-state presence, minimum contacts were easily

17

satisfied and traditional notions of fair play and substantial justices were not offended) [5];

*accord Burger King Corp. v. Rudzewicz*, 105 S.Ct. 2174, 2182-87 (1985).

The Court has general and specific jurisdiction over Bally Holding and the minimum due process concerns are easily satisfied.

**2.    Ms. Ruiz Has Stated A Claim Against Bally Holding**

In a half-hearted argument of two paragraphs, Bally argues that because it is supposedly not a "seller" under the Act, it cannot be liable under Ms. Ruiz's various statutory and common-law claims.  Both Bally's factual predicate and legal conclusion are wrong.

Under the Act, a  "Seller" is defined as "any person, firm, corporation, partnership, unincorporated association, franchise, franchisor, or other business enterprise which operates a health club or which offers or enters into contracts for health club services." M.G.L. c. 93 § 78.  As explained above, Bally Holding's securities filings make clear that it does take part in operating the Holiday Universal/Bally health club to which Ms. Ruiz belongs. Further, as made clear in Ms. Ruiz's complaint – and left undisputed here – Bally Holding is accused of participating in the offering of the underlying illegal contracts.  It is clearly a "seller."

Second, and perhaps more importantly, neither the Act, c. 93A, nor Ms. Ruiz's common law claims for unjust enrichment, declaratory relief, and monies had and received depend upon Bally Holding being a "seller" as defined in the statute.  Indeed, although the Act does place certain additional restrictions on "sellers" of health club contracts, it makes clear that no one is allowed to participate in the sale of illegal

---

5. Indeed, given that it included a Massachusetts choice-of-law clause in its form contracts (see Membership Agreement, par.16), it is hard to fathom Bally Holding's surprise at being haled into a Massachusetts court.  *See Burger King Corp. v. Rudzewicz*, 105 S.Ct. 2174, 2187 (1985).

contracts. *See* M.G.L.. 93 § 84 ("It is hereby declared to be an unfair and deceptive trade practice in violation of chapter ninety-three A for a seller, or his agents, employees or other representatives to . . . violate or fail to comply with any other provision of sections seventy-eight to eighty-eight, inclusive.").

Bally's real argument seems to be that Ms. Ruiz is improperly attempting to "pierce the corporate veil" and hold the parent responsible for the act of its subsidiaries. That simply is not the case. Bally Holding is accused of actively participating in – if not directing – the illegal conduct at issue here. It should not be dismissed from the lawsuit.

## III. Conclusion

For the reasons outlined, Bally's motion to dismiss should be denied in all respects.

Respectfully submitted,

GISELLE RUIZ,
By her counsel,

/s/ John Roddy
John Roddy (BBO # 424240)
Elizabeth Ryan (BBO # 549632)
Roddy Klein & Ryan
727 Atlantic Avenue, 2d Flr.
Boston, MA 02111
Phone: (617) 357-5500
Fax: (617) 357-5030
roddy@roddykleinryan.com

```
              ••• CUSTOMER COPY •••

                    WORCESTER
              WWW.BALLYSTORE.COM


    DATE: 3/11/2004 @ 08:01 PM REG: P014
           TRANSNO: 37797745
ENTRD BY:E GOMEZ CREDIT ID:E GOMEZ

              New Contract
MEMBERID: 2601540478008
MEMBERNAME: GISSELLE RUIZ
QTY DESCRIPTION          PRICE  SUBTOTAL
--- ------------------------------------

Down Payment
001   SKU: DWNPMT      150.00    150.00
2601540478008: GISSELLE RUIZ

$50 OFF CASH PRICE ON PLA
001   SKU: Discount     0.00        00
DISCOUNT: $0.00    PERCENT: 0.00%
U/A OFFER. $5 OFF INIT'
001   SKU: Discount     0.00      0.00

15% OFF CASH PRICE ON PLA
001   SKU: Discount     0.00      0.00
DISCOUNT: $0.00    PERCENT: 0.00%
                                 --------
                     SUBTOTAL:    150.00
                          TAX:      0.00
                        TOTAL:    150.00


PAYMENT REFERENCE             AMOUNT
-------  ----------          --------

VISA   008644;ONLINE           150.00
       2234;2004-03-11
```

**RETAIL INSTALLMENT SALE AGREEMENT - SUBJECT TO STATE REGULATION**
**BALLY TOTAL FITNESS® CLUBS**
Contract ID 2601540478008

HOLIDAY UNIVERSAL, INC. ("Company") 203 PLAIN STREET, LOWELL, MA 01852

Buyer: (Please Print) GISSELLE RUIZ     Buyer/Member: M  Gender: F  DOB: 10/03/1980

Address: 396 MAY ST # 1, WORCESTER, MA 01602
Street Address     Apt. #     City/Borough     State/Province     Zip/Postal Code

Phone: (508) 753-3595   (508) 929-8041     E-Mail Address:
Area Code Home   Area Code Work   Ext

Membership(s) for the following member(s):     TOTAL NO. OF MEMBERS: 1

| Member | Gender | DOB | Member | Gender | DOB |
|---|---|---|---|---|---|
| GISSELLE RUIZ | F | 10/03/1980 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Address:     Phone:
(If different than Buyer's) Street Address     Apt. #     City/Borough     State/Province     Zip/Postal Code     Area Code   Phone

This Contract is a multi-page document and includes both sides of each page. Additional plans, goods or services may be purchased by Buyer from time to time by addendum to this Contract. The words "you" and "your" refer to Buyer or Member as applicable and "we", "us" and "our" refer to Company. **YOU MUST STILL MAKE PAYMENTS OWED TO COMPANY UNDER ANY OTHER CONTRACT.**

**MEMBERSHIP PLAN** selected is: ULTRA PERSONAL TRAINING . Plan features are described in Para. 22 on Page 4. Your membership is X renewable (initial term is one month) _____ non-renewable (term is _____ months). Your membership starts TODAY.

**MEMBERSHIP PRICE** consists of a membership fee and monthly dues plus applicable taxes. Amounts paid are not refundable except as described in this Contract. Where refunds are due, they will be calculated over 36 months. Unless otherwise notified, you will make payments to our service center, Bally Total Fitness Services, 12440 East Imperial Hwy., P.O. Box 1070, Norwalk, CA 90651-1070. You agree to pay any new, additional or increased taxes imposed on this Contract.

| Itemization of | $ 1900.00 | Membership Fee paid to us |
|---|---|---|
| Your Membership | - $ 335.00 | Less: Credit (if applicable) |
| Fee: (for all | = $ 1565.00 | Your Cash Price |
| memberships | - $ 150.00 | Less: Downpayment (or Full Payment) |
| purchased) | = $ 1415.00 | Amount Financed and owed to us |

**PAYMENT INFORMATION.** You agree to pay the Amount Financed plus Finance Charge as set forth below.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total price of your purchase on credit, including your downpayment of $ 150.00 |
|---|---|---|---|---|
| 14.75 % | $ 344.68 | $ 1415.00 | $ 1759.68 | $ 1909.68 |

**MONTHLY PAYMENT OF FINANCED MEMBERSHIP FEE.**

| Number of Payments | Amount of Payment | When Payments are Due |
|---|---|---|
| 36 | $ 48.88 | Your first payment will be due on 04/15/2004 and on the same day of each month thereafter. |

Late Charge: You will be charged $5.00 or 5% of the amount in default, whichever is less, if payment is not made within 15 days after due.
Prepayment: If you prepay, you may be entitled to a refund of part of the Finance Charge.
You can refer to Pages 2 and 4 of this Contract for any additional information about prepayment refunds, non-payment and default.

**MONTHLY DUES.** To maintain your membership privileges, you must pay monthly dues beginning 04/15/2004, as set out below (plus applicable taxes, if any). If club of enrollment is not yet open, then monthly dues begin on the opening date. All monthly dues are subject to the terms and increases described in Paragraph 20 on Page 4.

**SUMMARY OF TOTAL MONTHLY PAYMENTS**

Your monthly dues along with membership fee payment and taxes are as follows:

| MONTHS | MONTHLY MEMBERSHIP FEE PAYMENT (INCLUDES FINANCE CHARGE) | MONTHLY DUES | TAXES ON MO. DUES | TOTAL MONTHLY PAYMENT |
|---|---|---|---|---|
| 1 - 36 | $ 48.88 | $ 8.00 | $ 0.00 | $ 56.88 |
| N/A - N/A | $ N/A | $ N/A | $ N/A | $ N/A |
| N/A - N/A | $ N/A | $ N/A | $ N/A | $ N/A |

Thereafter, your dues will be $ 12.00 plus tax, where applicable, per month, subject to increases described in Paragraph 20 on Page 4; however, if you have made any of your membership fee payments without utilizing the Automatic Payment Plan, these dues will be $ 17.00 plus tax, where applicable, per month subject to increases described in Paragraph 20.

CTMAB1E4     The terms of this Contract are contained on more than one page. This is Page 1 of 4 of your Contract.     (BUYER COPY

**1.   NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**2.   DEFAULT.** You will be in Default if you breach any of this Contract's terms and conditions or if you fail to pay any installment within 20 days after the date when such installment is due. If you are in Default, your membership privileges may be denied. Acceptance of any payment after Default or denial of any membership privileges will not release Buyer from any obligations under this Contract. After the scheduled end of your payments under this Contract, you agree to pay interest at the Annual Percentage Rate stated on the front of this Contract on that part of the Amount Financed that you still owe. We may get a court judgment against you for the amount you still owe and you agree to pay any court costs and reasonable attorney's fees, where permitted, incurred in collecting amounts owed under this Contract, as determined by a court. Any judgment will bear interest at the highest rate allowed by law.

**3.   OBLIGATIONS ABSOLUTE.** Other than in the event of permitted cancellations described below, Buyer shall not be excused from the obligation to make any payment in accordance with this Contract, and Buyer may not reduce the amount of any payment for any reason including Member's failure to use any club. Buyer agrees to pay a late charge in the amount disclosed on the front of this Contract for any payment not made within the indicated time period. Payments are applied first to any past due obligations on prior contracts, then to fees or charges assessed, if any, and then to dues and lastly membership fees in the order in which they are scheduled to be made; provided, however, that late charges will not be assessed if the only delinquency is attributable to a late charge assessed on a prior payment.

**4.   ASSIGNMENT.** This Contract may be assigned by us and, if assigned, the term "Company" will also mean the company to which this Contract is assigned. If this Contract is assigned, the assignee shall have all our rights and powers under this Contract. In the event of assignment, we reserve our rights to assert any defenses we have or may have under this Contract. Memberships are not transferable unless otherwise provided in Paragraph 22 on Page 4. If this membership is not transferable, neither Buyer nor Member may sell, assign, or transfer this Contract, his membership card or membership and any such attempted sale, assignment or transfer shall be null and void.

**5.   CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATION BY CAUSING A WRITTEN NOTICE OF YOUR CANCELLATION TO BE DELIVERED IN PERSON OR POSTMARKED BY CERTIFIED OR REGISTERED UNITED STATES MAIL WITHIN THREE (3) BUSINESS DAYS OF THE DATE OF THIS CONTRACT OR THE DATE OF YOUR RECEIPT TO THE ADDRESS SPECIFIED IN THIS CONTRACT.** To cancel, send a written notice of cancellation by certified or registered United States mail or deliver it in person to us in care of Bally Total Fitness Services, 12440 East Imperial Hwy., Suite 300, Norwalk, CA 90650, ATTN: Cancellation Department. Such notice shall be accompanied by the Contract forms, membership cards and any other documents or evidence of membership previously delivered to Buyer or Member.

**6.   ADDITIONAL RIGHTS TO CANCELLATION. You or your estate may cancel this Contract for any of the following reasons: if upon a doctor's order, you cannot physically or medically receive the services because of significant physical or medical disability for a period in excess of three months; in case of your death; if the health club services to be provided under this Contract are not available because the seller fails to open a planned health club or location, permanently discontinues operation of a club or location, or substantially changes the operation of a club or location; if you move either your residence or your place of employment more than twenty-five miles from any club operated by the Seller or a substantially similar club which will accept the Seller's obligation under the Contract.** Following cancellation, we may retain the portion of the total Contract price representing the amount of time that services or facilities were used prior to cancellation. We may demand the reasonable cost of goods and services which you have consumed or wish to retain after cancellation. Refunds of the membership fee are prorated over the number of months indicated in the Membership Price section on Page 1. Monthly dues for periods after cancellation will be refunded. Buyer remains obligated for payments for other Members not entitled to cancel under this paragraph.

To cancel for any of the reasons set forth in this Paragraph 6, send to us at Bally Total Fitness Services, 12440 East Imperial Hwy., P.O. Box 1080, Norwalk, CA 90651-1080 a written notice of cancellation with the Contract forms, membership cards, and any other documents or evidence of membership previously delivered to Buyer or Member.

To cancel for a change of permanent residence, also send to us any of the following items as proof of Member's new permanent residence: a current and valid lease, a utility bill, a bank statement or credit card bill, a yellow change of address label indicating mail was forwarded to your new address by the post office, or Member's new driver's license with issue date.

To cancel for death or disability, also send to us proof of death or a written certification of such disability by a doctor licensed under this State which includes the following information: diagnosis, extent of disability, date of onset and estimated duration of disability. Your cancellation will be effective upon the date of death or onset of disability. Member agrees that we may verify Member's disability directly with Member's physician and Member consents to the release of any medical information to us related to Member's disability.

**A CANCELLATION ACKNOWLEDGEMENT** will be sent, or additional documents requested, within 10 business days after we receive your written cancellation notice pursuant to any of the above Paragraphs 5 and 6.

**7.   (reserved)**

**8.   VALUABLES AND PERSONAL PROPERTY.** We urge you not to bring valuables into the Club. You agree that we will not be liable for the loss or theft of, or damage to, the personal property of members or guests.

**9.   RESERVATION OF RIGHTS.** We reserve the right at any time to alter the hours of operation, and the right to amend the cost of, add, modify and/or eliminate any program, facility, activity, class or service of any club, in our sole discretion. **Classes and equipment are available subject to demand and may be crowded at peak hours or may be discontinued or times changed if demand fluctuates.**

**10.   USE OF FACILITIES AND PREMISES.** You (Buyer, each Member and all guests) agree that you are engaging in physical exercise and activity and using the club facilities and premises, which could cause injury to you. This includes, without limitation, your use of the locker room, pool, whirlpool, sauna, steamroom, parking area, sidewalk or any equipment in the club and your participation in any activity, class, program or instruction. **You agree that you are voluntarily participating in these activities and using these club facilities and premises. You acknowledge that you have carefully read this paragraph and fully understand it.**

**11.   MEMBER'S RESPONSIBILITY AS TO USE OF CLUB.** You (Buyer, each Member and all guests) should consult with your physician before using our services and clubs. You understand and acknowledge that we have no expertise in diagnosing, examining or treating any medical condition. You agree you will not use the clubs with any medical condition, including open cuts, abrasions, sores, infections, maladies or inability to maintain personal hygiene, if such condition poses a direct threat to the health or safety of yourself or others, and agree you will use the clubs in accordance with all applicable public health requirements. It is your responsibility to consult with your physician to determine if any of these medical conditions exists and, if so, whether such condition poses a direct threat to the health or safety of yourself or others. The club reserves the right, however, to make the final determination in this regard.

**12.   MEMBERSHIP RULES AND REGULATIONS.** You agree to follow all rules and regulations now in force or in the future adopted by us, or our affiliated clubs, including, but not limited to, rules and regulations with regard to hours of operation, use of equipment, use of club premises, personal hygiene and attire. We reserve the right to revoke or suspend your membership, without refund, if you or your guest fail to follow any rules and regulations, for reasons of nuisance, disturbance of other members, moral turpitude or fraud, or if we determine that your actions may endanger yourself or other persons. If your membership is suspended, your obligations to make payments under this Contract continue as scheduled. It is prohibited for any Member or guest to conduct, purchase or subscribe to any commercial business or activity or solicit any business competitive with that of the club (including personal trainer services) at any club without our prior, express, written consent. Member agrees to pay to us any revenues received by Member or Member's guest in violation of this policy and reasonable attorney's fees, where permitted, and court costs incurred in that regard.

The terms of this Contract are contained on more than one page.
This is Page **2** of **4** of your Contract. Additional paragraphs continue on Page 4 of 4.

CTMAB1E4

Contract ID  2601540478008  |||||||||||||||||

**Automatic Payment Plan.** You agree to make payments of your membership fee, monthly dues, all other charges permitted under this Contract and all applicable taxes through the Automatic Payment Plan. The processing of your first payment made on the Automatic Payment Plan may be delayed up to seven days. If all your membership fee payments are made through our Automatic Payment Plan, the reduced monthly dues rates stated on Page 1 in the paragraph included in the section titled SUMMARY OF TOTAL MONTHLY PAYMENTS will apply.  If you cannot or do not continue to make your membership fee payments through the Automatic Payment Plan, monthly dues will increase to the rates stated in that paragraph. You affirm that you are an authorized signatory of the account specified below. See Paragraph 21 on Page 4 for cancellation and other important information regarding the Automatic Payment Plan.

Buyer's Signature X

PLEASE ATTACH VOIDED CREDIT CARD IMPRINT, PREPRINTED CHECK OR PREPRINTED DEPOSIT SLIP AS APPLICABLE.

| CLUB USE ONLY | Charge credit card: _Visa_ | Credit Card No. XXXXXXXXXXXX2234 | Exp. Date _01/2008_ |
|---|---|---|---|
| | Withdraw from Bank Account No.: | | (_____checking/_____savings) |
| | Bank Name: | Routing & Transit No.: | |

| PREVIOUS MEMBERSHIP INFORMATION | U/R/M | PREVIOUS MEMBERSHIP NO. | RECEIPT NO. | MONEY IN OFFICE |
|---|---|---|---|---|

| CURRENT MEMBER INFORMATION FOR ADD-ON | FAMILY MEMBER ACCOUNT NO. | RELATIONSHIP TO CURRENT MEMBER |
|---|---|---|
| FAMILY MEMBER NAME | FAMILY MEMBER'S MEMBERSHIP TYPE | |

**BUYER'S CREDIT INFORMATION**

| SOCIAL SECURITY NUMBER XXX-XX-7877 | VERIFIED: ___DOB ___SIGNATURE ___ADDRESS |
|---|---|
| ALTERNATIVE ID TYPE | ALTERNATIVE ID # | ID VERIFIED BY (EMPLOYEE NAME) |

| DRIVER'S LICENSE # | STATE/PROV. | E/S | E=EMPLOYED BY/S=STUDENT AT None |
|---|---|---|---|

| EMERGENCY INFORMATION | FIRST NAME RICCI SCOT | LAST NAME | AREA CODE PHONE (917) 597-4796 |
|---|---|---|---|

| SPONSOR INFORMATION REFERRAL CREDIT GIVEN ONLY AT TIME OF ENROLLMENT | HOW DID YOU HEAR ABOUT US? X TI ___BR ___LB ___WWW ___WI ___GST ___OTH |
|---|---|
| SPONSOR'S NAME None | SPONSOR'S ACCOUNT NO. | DATE SPONSOR ENROLLED |

| CORP, SALES - COMPANY NAME | ID # | PROGRAM TYPE ___CP ___CS ___OE ___FP ___HP ___BK ___SP ___EC ___CF ___CT ___OS ___CE |
|---|---|---|

If the club you have contracted to use is not presently open, the anticipated opening date is ____N/A____

**NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT IF ANY OF THE SPACES INTENDED FOR THE AGREED TERMS TO THE EXTENT OF THEN AVAILABLE INFORMATION ARE LEFT BLANK.**
**2. YOU ARE ENTITLED TO AN EXACT COPY OF THIS CONTRACT AT THE TIME YOU SIGN IT.**
**3. YOU MAY AT ANY TIME PAY OFF THE FULL UNPAID BALANCE DUE UNDER THIS CONTRACT AND IN SO DOING YOU MAY RECEIVE A PARTIAL REBATE OF THE FINANCE AND INSURANCE CHARGES.**

HOLIDAY UNIVERSAL, INC.

BY:_____
        Employee Signature

_chris haskell_                                   800999
Employee Name                                    Employee No.

**YOU ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS CONTRACT EXECUTED BY BOTH YOU AND US AND OF A COPY OF THE RULES AND REGULATIONS.**

_____ (Seal)
Buyer, individually and as agent for Member(s)

535 LINCOLN ST SHOPPING C

WORCESTER, MA   01605
Location of club that Member has joined (club of enrollment)

Date of Contract: ____03/11/2004____
Time of Signing: ____8:01 P.M.____ A.M./P.M.
Orientation:_____

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CONTRACT, PLEASE CONTACT MEMBER SERVICES AT (562) 484-2980.**
Buyer cannot cancel Contract at club of enrollment. Club personnel have no authority to cancel Contracts.

CTMAB1E4                    The terms of this Contract are contained on more than one page. This is Page 3 of 4 of your Contract.          (BUYER COPY)

**13. DISHONORED CHECK/AUTOMATIC PAYMENT CHARGES.** Where permitted by law, Buyer agrees to pay a $10.00 fee or other permitted maximum amount for (a) any dishonored or returned check or other item, and (b) any Automatic Payment authorized by Buyer which is rejected or not honored by Buyer's bank or credit card issuer for any reason, along with any costs and expenses incurred in connection with collection of such dishonored, returned or rejected check, other item or Automatic Payment.

**14. LOST MEMBERSHIP CARD.** We may require Member to sign an affidavit and pay a $10.00 service fee before we issue a replacement card.

**15. EXCLUSIVE AGREEMENT.** This Contract and all rules and regulations of the Company, as revised from time to time, constitute the entire and exclusive agreement between the parties, and supercede all prior promises, representations, understandings and/or agreements relating to this membership purchase. This Contract may be modified only by an instrument in writing; however, we or any assignee of this Contract are authorized to correct patent errors in this Contract (and in other related documents) and Buyer may verbally authorize payment of the outstanding balance of the membership fee by the Automatic Payment Plan. At our option, this Contract shall be null and void if it is not completed by our employee in accordance with our then current pricing and payment programs. No change to any printed term in this Contract shall be valid.

**16. GOVERNING LAW.** This Contract is governed by the laws of the state in which it is signed and, to the extent preempted, by federal law.

**17. MISCELLANEOUS.** The provisions of this Contract are severable and if any provision is determined to be illegal or unenforceable the remaining provisions and any partially enforceable provision shall nevertheless be enforceable unless otherwise prohibited by state law. Our failure to enforce any remedy or provision of this Contract shall not be construed as a waiver of such remedy or provision including, but not limited to, yearly increases in monthly dues permitted pursuant to Paragraph 20 below, which can be imposed cumulatively at any time.

**18. INDEPENDENT CONTRACTORS.** From time to time we may make available to Members and their guests the services of independent contractors. We do not warrant or guarantee the quality of these services and do not guarantee that these services will remain available to Members or their guests for any period of time.

**19. PREPAYMENT.** You can prepay the full amount of the membership fee at any time without incurring any additional charge for prepayment. If you pay in full within 30 days after you sign this Contract, we'll give you a full credit for your finance charge. After 30 days, we'll credit the unearned part of your finance charge, figured by the actuarial method or another method which is at least as favorable to you as the actuarial method (based on the original schedule of payments). However, we won't make any refunds of less than $1.00.

**20. MONTHLY DUES.** Monthly dues charges will continue to be due each month regardless of your use of the club until you notify us in writing that you wish to cancel this Contract. Such notice must be accompanied by return of Member's membership card and any other evidence of membership provided Member and must be sent to us in care of BALLY TOTAL FITNESS SERVICES, 12440 EAST IMPERIAL HWY., P.O. BOX 1080, NORWALK, CA 90651-1080. Regardless of such cancellation, any outstanding balance of the membership fee will remain due and payable in accordance with this Contract. We may apply dues payments to pay any other sums which are past due. If you fail to pay any monthly dues payment within 20 days after the date such payment is due, your membership privileges may be cancelled and you may have to reapply for membership at the prices we are then charging new members or, if available, pay a reinstatement fee which may include unpaid dues to date. To cover our increasing costs in providing services, monthly dues may be increased beginning one (1) year after the same number of months as indicated in the Membership Price section on Page 1 and in each succeeding year. The amount of the monthly increase for each such renewal year will be $2.00, 10% or the increase from year to year in the Consumer Price Index in effect on each renewal year, whichever is greatest, plus any applicable taxes. If the Company does not impose an increase in monthly dues as described above, the Company does not waive any rights, and specifically reserves the right to impose the increase at any future date. Therefore, an increase in monthly dues may be cumulative, that is based on a number of years. For purposes of calculating monthly dues increases, "Consumer Price Index" means the Consumer Price Index - All Urban Consumers All Items, U.S. City Average (1982-84 = 100) published by the Bureau of Labor Statistics of the U.S. Department of Labor or, if not published, a substitute index selected by us and prepared by an appropriate entity.

**21. AUTOMATIC PAYMENT PLAN.** If you have elected the Automatic Payment Plan, you are authorizing us, or our agents, to make charges or withdrawals to the accounts you have specified for membership fee (until paid in full), monthly dues and tax payments and all other charges permitted under this Contract. Additionally, you are authorizing us to increase our charges/withdrawals for monthly dues and taxes in accordance with this Contract. You understand that you are entitled to notice of all varying charges/withdrawals and you waive your right to receive prior notice for increased charges/withdrawals made in accordance with this Contract. If you notify us that you choose to pre-pay the outstanding balance of your membership fee, we may charge or withdraw from your account for the amount of such balance. If for any reason you do not continue to pay your membership fee through an Automatic Payment Plan, you agree to make payments through our regular payment plan and if you received reduced rate monthly dues, it will be revoked and regularly scheduled monthly dues will again apply. **Your Automatic Payment Plan election will remain in effect unless and until all amounts due under this Contract are paid in full or until you give written notice that you revoke this authorization to us at the address noted in Paragraph 6 on Page 2 or to your bank. You agree that we must have a reasonable opportunity to act on that notice.**

**22. MEMBERSHIP PLANS. The following membership plans may be available:**

**a. Premier Plus** - Provides Member with the use of all local and North American Bally Total Fitness® clubs (excluding all Bally Sports Clubs™, Pinnacle Fitness®, Gorilla Sports™, Crunch Fitness™, Holmes Place™, Sports Clubs of Canada® and BFIT® locations and the Executive Club in Bloomfield Hills, MI, memberships for which can be purchased at those clubs). Other clubs may be built, acquired, reopened, or converted after your Date of Contract which may be excluded from this membership at our sole discretion. When and where available, also provides unlimited free racquetball, child care services for a fee and a 5-day priority reservation privilege. Also provides for the privilege, of original Member only, to transfer the membership once. Transfer of the membership is allowed only after the membership fee has been paid in full, provided Member is in good standing and pays a transfer fee of $100 and the transferee complies with any other transfer requirements.

**b. Premier** - Provides Member with the same benefits as the Premier Plus membership plan, **except** the membership is **not** transferable.

**c. Platinum** - Provides Member with the use of all local Bally Total Fitness® clubs (excluding all Bally Sports Clubs™, Pinnacle Fitness®, Gorilla Sports™, Crunch Fitness™, Holmes Place™, Sports Clubs of Canada® and BFIT® locations and the Executive Club in Bloomfield Hills, MI, memberships for which can be purchased at those clubs). Other clubs may be built, acquired, reopened, or converted after your Date of Contract which may be excluded from this membership at our sole discretion. Nationwide use of clubs is not included. When and where available, racquetball and child care services may be purchased for an additional fee. If you move, we will transfer your membership to a comparable local club available for your membership type and you will remain responsible for your membership fee under your Contract unless you qualify for a relocation cancellation. **See Additional Rights to Cancellation** on Page 2 for additional information.

**d. Fitness** - Provides Member only with the use of the club of enrollment. This membership is renewable and does **not** allow Member to purchase racquetball or child care. If you move, we will transfer your membership to a comparable local club available for your membership type and you will remain responsible for your membership fee under your Contract unless you qualify for a relocation cancellation. **See Additional Rights to Cancellation** on Page 2 for additional information.

**e. Limited** - Same as Fitness membership plan, **except** the membership is **not** renewable.

**f. Special** - From time to time, we may offer special memberships for promotional and other purposes. The terms of these memberships may vary. Please check with us for a description of special memberships currently offered, if any.

© 2004 Bally Total Fitness Corporation

**THIS SPACE INTENTIONALLY LEFT BLANK**

**Buyer Name:** GISSELLE RUIZ

**Date of Contract:** 03/11/2004

**Contract ID** 2601540478008

## BALLY TOTAL FITNESS® GUARANTEE

## WE ARE SO SURE YOU WILL LOOK BETTER AND FEEL BETTER IN 30 DAYS WE'LL GIVE YOUR MONEY BACK IF YOU DON'T!

Member and Buyer understand and acknowledge that qualification for this Guarantee Program requires that Member uses the Bally Total Fitness® or Bally Sports Clubs™ (depending on Member's membership) a minimum of twelve (12) days during the first 30-day period after the "Date of Contract" listed above or the Grand Opening date of the club of enrollment, whichever is later. On a given day, only one (1) visit is counted even if Member uses the Club(s) more than once in a single day. Each visit must be recorded at the front desk of the applicable club by swiping Member's membership card. If, after the end of this 30-day period, Member believes he/she does not look and feel better, Member can request, in writing, that Bally Total Fitness® provide Buyer with a full refund of all membership fee and dues (if any) paid to Bally Total Fitness® to date for Member's membership and cancel Member's membership, in accordance with the Official Rules set out on the back of this Guarantee.

_____     Date: _____

Buyer Signature (individually and as agent for Member)

_____     Date: _____

Club Representative/Employee No.

Member Number        Member Name

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

We thank you for choosing Bally Total Fitness® as your fitness solution!

## BALLY TOTAL FITNESS® GUARANTEE PROGRAM OFFICIAL RULES

1. This Bally Total Fitness® Guarantee Program ("Program") is available one time only to a Bally Total Fitness® ("BTF") and Bally Sports Clubs™ ("BSC") Member purchasing a qualifying membership at a participating Club on or after November 1, 2003.

2. In order to qualify for the Program, the Member must demonstrate that he or she has used a Bally Sports Clubs™ or Bally Total Fitness® location ("Club") (depending upon type of membership purchased) a minimum of twelve (12) separate and different days during the period beginning on the date the membership contract for Member's membership with BTF or BSC is signed or the Grand Opening date of the club of enrollment, whichever is later, and ending thirty (30) days thereafter, and must be dissatisfied with the result of such Club visits. On a given day, only one (1) Club visit will be counted, no matter how many Clubs are actually visited and/or used on that day. Members are responsible for swiping their membership card in the card reader at the Club. In addition, the dissatisfied Member must, WITHIN FORTY (40) DAYS AFTER the "Date of Contract" listed on the front or the Grand Opening date of the club of enrollment, whichever is later, give BTF written notice stating that (a) the Member is dissatisfied with the results of his or her Club usage and (b) the Member desires that Buyer receive a full refund of all monies paid to BTF for Member's membership. This written notice must be delivered to Bally Total Fitness Services, 12440 East Imperial Highway, Suite 300, Norwalk, CA 90650, Attn: Cancellation Department. Such refunds will be made to the "Buyer" listed on the membership contract.

3. Member's membership contract must be current and the membership in good standing when the written cancellation notice is properly delivered to BTF, in order to receive the refund. Termination of membership under the Member's membership agreement prior to the delivery of such written notice voids this offer.

4. Member is solely responsible for BTF's timely receipt of the written notice. BTF and its affiliates, subsidiaries, advertising and production agencies are not responsible for lost, misdirected, undeliverable, or delayed mail. Illegible written notices will be deemed void.

5. Family add-on Memberships must be purchased at the same time as the original membership for both Buyer and family add-on Member to participate in this Program. A family add-on Member who requests the refund must have the minimum number of Club visits to qualify and must comply with all other terms and conditions of this Program.

6. BTF shall make the final determination as to all aspects of the Program and the satisfaction of its Official Rules by Member and Buyer. By participating in this Program, participants agree to and accept these Official Rules and BTF's decisions. This Program cannot be combined with any other promotion. BTF has the right to terminate the Program with respect to prospective members, at any time.

7. Any dispute or inquiry regarding the issuance of refunds must be made in writing, postmarked no later than one hundred eighty (180) days after Member's Date of Contract or the Grand Opening date of the club of enrollment, whichever is later, and mailed to the following address:

> "Bally Total Fitness Guarantee Program"
> c/o Bally Total Fitness Services
> 12440 East Imperial Highway
> Suite 300
> Norwalk, California 90650

Any notices of dispute or inquiry postmarked after such date will be considered null and void.

Case 1:05-cv-11052-NMG     Document 28-2     Filed 02/03/2006 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Buyer Name: GISSELLE RUIZ_____     ·

Contract ID 2601540478008

# ADDENDUM TO MEMBERSHIP CONTRACT

This is an Addendum to Paragraph 22 of your Retail Installment Contract dated as shown below ("Contract").  When this Addendum is signed by you and by us, it will be incorporated into, and become part of, your Contract.  Except as modified by this Addendum, all terms and conditions of your Contract shall remain in full force and effect.  To the extent that any specific provision of this Addendum conflicts with any provision of your Contract, the provisions contained in this Addendum shall control.

**Ultra Personal Training Membership -** Provides Member with use of all local and North American Bally Total Fitness® clubs (excludes all Bally Sports Clubs™, Pinnacle Fitness®, Gorilla Sports™, Crunch Fitness™, Holmes Place™, Sports Clubs of Canada® and BFIT® locations, and the Executive Club in Bloomfield Hills, Michigan, memberships for which can be purchased at those clubs).  Other clubs may be built, reopened, converted or acquired after your Date of Contract which may be excluded from this membership at Seller's sole discretion.  When and where available, also provides unlimited free racquetball, child care services for a fee and a five (5)-day priority reservation privilege.  Also provides for the privilege, of original Member only, to transfer the membership once. Transfer of the membership is allowed only after the membership fee has been paid in full, provided Member is in good standing and pays a transfer fee of $100 and transferee complies with any other transfer requirements.

Also allows Member to receive one Bally Nutrition Starter Pack consisting of: High Potency Multi-Vitamin PLUS, a Variety Pack of Nutrition and 6 cans of the Meal Replacement Shake.

Also provides Member with twelve (12) one-on-one 60-minute personal training sessions (including a new member first workout) and the Bally Weight Loss and Weight Management Program described below.

The Bally Weight Loss and Weight Management Program includes one (1) metabolic assessment, meal planning and tracking (using either a DietMaster Client CD or the Food Tracker Guide), Client Nutrition Guide and a Pocket Food Guide.

**Member may add additional members at point of sale ("Add-On Members") to this Contract,** which provides the Add-On Member(s) with the same privileges as the Ultra Personal Training Membership **BUT DOES NOT INCLUDE** any individual personal training sessions, the Bally Nutrition Starter Pack or the Bally Weight Loss and Weight Management Program.  Member may invite one Add-On Member to participate with Member in any or all personal training sessions included in the Member's Ultra Personal Training Membership.

By: _____           _____
     Employee Signature                         Buyer's Signature, individually and as agent for Member(s)

                                            Date: ____ 03/11/2004 _____



Appellate Court of Illinois,
First District, Sixth Division.
Krista PULCINI and Nora Bucher, Individually and on Behalf of a Class of
Similarly Situated Individuals, Plaintiffs-Appellants,
v.
BALLY TOTAL FITNESS CORPORATION, a Delaware Corporation, Defendant-Appellee.
No. 1-03-3501.

Nov. 5, 2004.
As Modified Upon Denial of Rehearing Dec. 17, 2004.

**Background:**  Consumers brought action against fitness center, alleging that their contracts with center violated Physical Fitness Services Act and Automatic Contract Renewal Act. The Circuit Court, Cook County, Richard A. Siebel, J., dismissed. Consumers appealed.

 **Holdings:**  On denial of rehearing, the Appellate Court, McNulty, J., held that:
 (1) consumers stated cause of action for violation of Physical Fitness Services Act, and
 (2) one consumer stated cause of action for violation of Automatic Contract Renewal Act.
 Affirmed in part and reversed in part;  cause remanded.

West Headnotes

**[1] Appeal and Error** 893(1)
30k893(1) Most Cited Cases
Appellate court would review de novo trial court's dismissal of complaint for failure to state a claim.  S.H.A. 735 ILCS 5/2-615.

**[2] Appeal and Error** 863
30k863 Most Cited Cases
Appellate court will not affirm trial court's dismissal of complaint for failure to state claim unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover.  S.H.A. 735 ILCS 5/2-615.

**[3] Appeal and Error** 893(1)
30k893(1) Most Cited Cases
The de novo standard of review for reviewing trial court's dismissal of complaint for failure to state claim does not permit appellate court to disregard any theory of recovery supported by the factual allegations of the complaint.  S.H.A. 735 ILCS 5/2-615.

**[4] Consumer Protection** 6
92Hk6 Most Cited Cases
Consumers who entered into contracts with fitness facility stated cause of action against facility for violation of Physical Fitness Services Act which required price for each renewal period to be reasonable consideration not less than 10% of cash price of original membership; first consumer's contract set initial service period of one month with membership price of $957, and renewal, one month later, cost $8, which was less than 1% of cost of original membership, and second consumer's contract showed original membership cost of $2,130, and monthly renewal fee of $5, which was barely 0.2% of membership fee.  S.H.A. 815 ILCS 645/8(b).

**[5] Consumer Protection** 6
92Hk6 Most Cited Cases
Consumer stated cause of action against fitness facility for violation of Automatic Contract Renewal Act providing that, if contract is subject to automatic renewal, the clause providing for automatic renewal must appear in contract in clear and conspicuous manner; consumer's contract epitomized automatic renewal because it provided for automatic payment, directly from her
checking account, of monthly payment even if consumer did not use facility, consumer had to actively cancel her membership to prevent facility from continuing to drain cash from her bank account, and contract provided for financial penalties against consumer if consumer took any steps to prevent bank from making the complete monthly payment.  S.H.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

820 N.E.2d 31                                                                                                                    Page 2
353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523
**(Cite as: 353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523)**

815 ILCS 601/10.
**\*\*32 \*713 \*\*\*524** Tabet DiVito & Rothstein LLC, Chicago (Gino L. DiVito); Blim & Edelson, LLC, Chicago (John Blim, Jay Edelson), for Appellants.

Young, Rosen, Finkel & Silbert, Ltd., Chicago (Alan Rosen, Norman T. Finkel and William R. Klein), for Appellee.

Justice McNULTY delivered the opinion of the court, as modified on denial of rehearing:

 Nora Bucher and Krista Pulcini (some documents in the record, including the complaint, misspell the name as Palcini) sued Bally Total Fitness Corporation, charging that their contracts with Bally violated the Physical Fitness Services Act (Fitness Act) (815 ILCS 645/1 et seq. (West 1998)) and the Automatic Contract Renewal Act (Renewal Act) (815 ILCS 601/1 et seq. (West 2002)). The trial court dismissed the complaint for failure to state a cause of action. On appeal, we find that plaintiffs have stated viable causes of action for violation of both acts.

 **\*714** Pulcini signed her contract with Bally on October 18, 1999. The contract sets a membership fee of $957 and monthly dues of $8. Pulcini paid $50 toward her membership fee and she agreed to pay off the balance by paying $29. 99 each month for the following 3 years. She accepted Bally's automatic payment plan for her "Monthly Payment" of $37.99, which covered the monthly dues and the payment for the membership fee.

 The contract further provided:
**\*\*33 \*\*\*525** "You will be in Default \* \* \* if you fail to pay any installment within 30 days after the date when such installment is due. If you are in Default, your membership privileges may be denied and any partial downpayment forfeited. \* \* \* We may get a court judgment against you for the amount you still owe \* \* \*.
\* \* \* Other than in the event of permitted cancellations described below, Buyer shall not be excused from the obligation to make any payment in accordance with this Contract, and Buyer may not reduce the amount of any payment for any reason including Member's failure to use any club.
\* \* \*
\* \* \* You have the right to cancel this Contract by sending written notice of intent to cancel within three business days after the first business day after this Contract is signed \* \* \*.
\* \* \*
\* \* \* If Buyer or Member dies or Member becomes disabled \* \* \* Buyer may cancel Member's membership by sending written notice of cancellation \* \* \*.
\* \* \* Buyer may cancel Member's membership if Member permanently relocates his or her residence more than 25 miles from either the club of enrollment or any other club which Member is entitled to use under the membership plan chosen \* \* *.
\* \* \*
\* \* \* You may cancel this Contract if your club of enrollment permanently closes and Member lives more than 25 miles from any other club which you are entitled to use under the membership plan you have chosen \* \* \*.

                                                *  *  *

\*\*\* Buyer agrees to pay a $25.00 fee \*\*\* [for] any Automatic Payment authorized by Buyer which is rejected or not honored by Buyer's bank \*\*\* for any reason, along with any costs or expenses incurred in connection with collection \*\*\*.

                                                *  *  *

\* \* \* Monthly dues charges will continue to be due each month regardless of your use of the club until you notify us in writing that you wish to cancel this Contract. \* \* \* If you fail to pay any **\*715** monthly dues payment within 30 days after the date such payment is due, your membership privileges may be cancelled and you may have to reapply for membership at the prices we are then charging new members or, if available, pay a reinstatement fee which may include unpaid dues to date. \* \* \*
\* \* \* If you have elected the Automatic Payment Plan, you are authorizing us, or our agents, to make charges or withdrawals to the accounts you have specified for membership fee (until paid in full), monthly dues and tax payments and all other charges permitted under this Contract."

 Bucher signed a very similar contract with Bally on September 16, 2002. The contract set the membership fee for the plan Bucher selected at $2,130. For the first 36 months of the contract, Bucher agreed to pay $63.99 per month, itemized as $58.99 for the membership fee plus $5 for monthly dues. The contract included clauses with the same effect as the clauses found in Pulcini's contract regarding default, grounds for cancellation without default, monthly dues, and automatic payment.

 Like Pulcini, Bucher accepted the automatic payment option. Bucher gave Bally **\*\*34 \*\*\*526** her checking account information, permitting Bally to obtain the monthly payment directly from her account, whenever the funds in her account exceeded the amount of her monthly payment. The contract provided for assessment of penalties against Bucher if her bank ever failed to pay Bally the automatic monthly payment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

  Bucher and Pulcini filed this lawsuit on March 24, 2003.  They sought to represent the class of all persons in Illinois who, after March 24, 1998, entered into renewable membership plans with Bally, with an automatic payment plan and a period of more than two years for payment of the membership fee. They claimed that the contracts violated the Fitness Act because they established an initial service term of three years, and the automatic renewal violated the Renewal Act.

  Bally moved to dismiss the complaint for failure to state a cause of action.  735 ILCS 5/2-615 (West 2002).  The trial court accepted Bally's argument that the contract provides for an initial service term of one month, renewed by payment of monthly dues.  The court found that the contracts violated neither the Fitness Act nor the Renewal Act, and therefore the court dismissed the complaint.

ANALYSIS

  [1][2] Because the trial court dismissed the complaint pursuant to section 2-615 of the Code of Civil Procedure, we review the dismissal *de novo*.  Beahringer v. Page, 204 Ill.2d 363, 369, 273 Ill.Dec. 784, 789 N.E.2d 1216 (2003).  We will not affirm **716 the dismissal "unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover."  Beahringer, 204 Ill.2d at 369, 273 Ill.Dec. 784, 789 N.E.2d 1216.

  Section 8 of the Fitness Act provides:
    "No contract for physical fitness services shall require payments or financing over a period in excess of 3 years from the date the contract is entered into, nor shall the term of any such contract be measured by the life of the customer.  The initial term of services to be rendered under the contract may not extend over a period of more than 2 years from the date the parties enter into the contract;  provided that the customer may be given an option to renew the contract for consecutive periods of not more than one year each for a reasonable consideration not less than 10% of the cash price of the original membership."  815 ILCS 645/8(b) (West 1998).
  Section 9 establishes the penalty:
    "Any contract for physical fitness services which does not comply with the applicable provisions of this Act shall be void and unenforceable."  815 ILCS 645/9(c) (West 1998).

  Bally argued successfully in the trial court that its contracts do not provide for an impermissible initial service term of three years;  instead, they provide for an initial term of one month renewable each month.  On appeal plaintiffs point out that under Bally's construction of the contract, the consideration for monthly renewal falls far short of 10% of the initial membership fee, in violation of section 8(b) of the Fitness Act.

  Bally responds that plaintiffs waived the issue by failing to identify this particular violation of the Fitness Act in the trial court.  In support, Bally cites Eagan v. Chicago Transit Authority, 158 Ill.2d 527, 199 Ill.Dec. 739, 634 N.E.2d 1093 (1994), in which our supreme court affirmed a dismissal under section 2-619 of the Code of Civil Procedure (Ill.Rev.Stat.1987, ch. 110, par. 2-619).  The court found that the plaintiff waived an argument raised on appeal because the complaint did not state sufficient facts to support the argument **35 ***527 and the plaintiff had not moved to amend his complaint to state the facts on which his argument relied.  Eagan, 158 Ill.2d at 534- 35, 199 Ill.Dec. 739, 634 N.E.2d 1093.

  [3] Plaintiffs here rely on no facts outside of those shown by their complaint and the contracts appended to the complaint.  Bally cites no case in which the court reviewing a dismissal under section 2-615 refused to consider, as waived, an argument showing that the facts stated in the complaint sufficed to state a cause of action.  The *de novo* standard of review does not permit us to disregard any theory of recovery supported by the factual allegations of the complaint.  We will affirm a dismissal under section 2-615 only if the record clearly *717 shows that the plaintiffs can prove no set of facts under the pleadings that will entitle them to recover.  American National Bank & Trust Co. v. City of Chicago, 192 Ill.2d 274, 279, 248 Ill.Dec. 900, 735 N.E.2d 551 (2000).

  Bally next claims that under both of plaintiffs' contracts, a membership renewal for a full year after the initial three-year period of their contracts cost more than 10% of the initial membership prices. But if the contract establishes an initial term of services of three years, it violates section 8(b) of the Fitness Act, just as plaintiffs claimed in the trial court.  Bally also argues for an initial term of one year with one year renewals, but Bally cites no language in the contract to support the claim that the initial membership fee pays for one year's membership.  The payment schedule shows that Bally begins charging a monthly renewal fee within a month after initiating the membership.  Thus, Bally must still rely on its contention that the initial service period for each contract is one month, subject to monthly renewal.

  The Fitness Act provides that a contract's renewal period must not exceed one year, but the statute permits renewal periods of any lesser length.  The contracts here established renewal periods of one month, equal to the duration of the initial service period.  The Fitness Act requires the price for each renewal period to be "reasonable consideration not less than 10% of the cash price of the original membership."  815 ILCS 645/8(b) (West 1998).

  Although the legislative history of the Fitness Act does not address this particular provision, the "Bill was introduced in response to * * * abuses" (82d Ill. Gen. Assem., House Proceedings, April 2, 1981, at 48 (statements of Representative Jaffe)) reported with regard to contracts of physical fitness centers.  In response legislators worked with the Attorney

820 N.E.2d 31                                                                                                    Page 4
353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523
**(Cite as: 353 Ill.App.3d 712,  820 N.E.2d 31,  289 Ill.Dec. 523)**

General's office to establish "contract limitations and * * * prohibited provisions." 82d Ill. Gen. Assem., House Proceedings, April 2, 1981, at 48 (statements of Representative Jaffe).  Section 8(b) of the Fitness Act restricts the power of fitness centers to tie members to long-term contracts.  If the original membership price pays for many subsequent renewal periods, the contract effectively ties the member to a prohibited long-term contract.  The requirement that a renewal must cost more than one-tenth of the cost of the initial period assures that the member has a significant cancellation option at the end of each renewal period.

[4] Pulcini's contract set an initial service period of one month with an membership price of $957.  The renewal for the first renewal period, one month later, cost $8, which was considerably less than 1% of the cost of the original membership.  For payments to reach the same total as provided in Pulcini's contract, without interest, for 36 *718 months with monthly renewal, the initial membership fee cannot exceed $276.67, with monthly dues of at least $27.67.  Bucher's contract shows an original membership cost of $2,130, and a **36 ***528 monthly renewal fee of $5, which is barely 0.2% of the membership fee.  Plaintiffs have stated a viable cause of action for violation of the Fitness Act.

[5] Bucher also argues that her contract violates the Renewal Act, which provides:
   "If a contract is subject to automatic renewal, the clause providing for automatic renewal must appear in the contract in a clear and conspicuous manner." 815 ILCS 601/10 (West 2002).
Section 15 of the Renewal Act sets the penalty for a violation of section 10:
   "If a contract does not comply with this Act, the automatic renewal provisions are not enforceable by a party who prepared the contract or directed its preparation." 815 ILCS 601/15 (West 2002).
Pulcini concedes that her contract does not violate the Renewal Act, because she signed her contract before the Renewal Act took effect.  See 815 ILCS 601/20 (West 2002).

Bally argues that Bucher's contract does not provide for automatic renewal because Bucher had to pay dues each month to renew her membership.  The contract provides that the monthly charge consists of a payment for the original membership fee plus monthly dues.  If one fails to pay any part of the monthly charge, without cancellation on one of the limited grounds permitted by the contract, the member has defaulted under the contract.  According to the contract, Bally then has many rights to exercise at its discretion, including the right to deny the member access to its clubs.  The contract does not provide for nonpayment of the monthly dues without default for the entire 36 months set for payment of the original membership fee.

Moreover, Bucher's contract provides for automatic payment, directly from her checking account, of the monthly payment, including both a portion of the membership fee and the monthly dues.  Thus, if Bucher does nothing whatsoever, Bally takes her money each month, including the monthly dues, and renews her membership indefinitely.  Bucher must actively cancel her membership to prevent Bally from continuing to drain cash from her bank account.  Bucher's contract epitomizes automatic renewal.

Bally argues that Bucher has failed to state a cause of action for violation of the Renewal Act because Bucher has not alleged that Bally has attempted to enforce the automatic renewal provisions.  The Renewal Act limits its remedy to disallowing enforcement of renewal provisions. 815 ILCS 601/15 (West 2002).  But Bally effectively enforces *719 the automatic renewal provision every time it obtains the monthly payment from Bucher's checking account.  According to the contract the monthly payment Bally can take from the bank includes the monthly dues, even if Bucher does not use any of Bally's facilities.  And if Bucher takes any steps to prevent the bank from making the complete monthly payment, including the monthly dues, the contract provides for further financial penalties against Bucher.

In a petition for rehearing Bally argues that the contract complies with the Renewal Act because it clearly and conspicuously provides for automatic renewal.  Although Bally's lawyers read the contract and did not see that it provided for automatic renewal at all, let alone clearly and conspicuously, we do not intend to foreclose Bally from raising any viable defenses to the complaint.  Bally also claims that the contract does not limit the available grounds for cancellation of membership, and it does not provide for automatic payment of monthly dues, and it does not tie members to impermissible long-term contracts with **37 ***529 a large membership fee and renewals at less than 10% of the initial membership.  We do not foreclose Bally from showing that the contract renders inoperative the provisions quoted above concerning grounds for cancellation, automatic payment, and renewal.  We find here only that Bucher has stated facts which could support a cause of action for violation of the Renewal Act, and both plaintiffs have stated a viable cause of action for violation of the Fitness Act.

Because the contracts apparently set renewal prices far less than 10% of the initial membership fee, effectively tying plaintiffs to prohibited long-term contracts, plaintiffs have stated a viable cause of action against Bally for violation of the Fitness Act. The automatic payment provision permits Bally to take Bucher's money every month until she cancels the contract.  Because she adequately pled that he contract does not clearly and conspicuously provide for automatic renewal, Bucher has stated a viable cause of action against Bally for violation of the Renewal Act. Pulcini does not contest dismissal of her claim for violation of the Renewal Act. We affirm that aspect of the trial court's decision. We reverse the decision in all other respects and we remand for proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part;  cause remanded.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

820 N.E.2d 31                                                              Page 5
353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523
**(Cite as: 353 Ill.App.3d 712,  820 N.E.2d 31,  289 Ill.Dec. 523)**


FITZGERALD SMITH, P.J., and FROSSARD, J., concur.

 353 Ill.App.3d 712, 820 N.E.2d 31, 289 Ill.Dec. 523

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.