IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GISSELLE RUIZ, <br> individually and on behalf of all <br> others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BALLY TOTAL FITNESS HOLDING <br> CORPORATION, a Delaware <br> corporation, and <br> HOLIDAY UNIVERSAL, INC., <br> a Delaware corporation, <br><br> Defendants. | Civil Action No. 05-11052 NMG |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION
COMPLAINT PURSUANT TO RULE 12(b)(2) and 12(b)(6)**

Defendants Bally Total Fitness Holding Corporation ("Bally Holding") and Holiday Universal, Inc. ("Holiday"), as their reply memorandum in support of Defendants' Motion to Dismiss First Amended Class Action Complaint Pursuant to Rule 12(b)(2) and 12(b)(6) ("Motion to Dismiss"), state as follows:

**I.   THIS COURT LACKS JURISDICTION OVER BALLY HOLDING**

Plaintiff does not dispute that "[i]n order to defeat a motion to dismiss for want of *in personam* jurisdiction, a plaintiff ... must verify the facts alleged through materials of evidentiary quality." *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001). Plaintiff has not and cannot present such facts. In her Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition"), Plaintiff points to Bally Holding's Form 10-K filing with the SEC as evidentiary proof. Plaintiff incorrectly claims that in the Form 10-K, Bally

Holding admits that it operates health clubs in Massachusetts. Plaintiff simply takes statements from the Form 10-K out of context. That Form 10-K filing expressly states on its first page that "In this Annual Report on Form 10-K, references to "the Company," "Bally," "we," "us," and "our" mean Bally Total Fitness Holding Corporation and *its consolidated subsidiaries.*" (Emphasis added.). Thus, each of the statements from the Form 10-K which Plaintiff quotes in part on page 15 of Plaintiff's Opposition and which use the terms "we" or "our," refers to Bally Holding and its subsidiaries collectively, not Bally Holding individually. Form 10-K, Item 1, p. 8. A copy of the Form 10-K is attached as Exhibit A to the Affidavit of Juliet A. Davison ("Davison Aff."), submitted herewith.

Plaintiff also ignores the purpose of a Form 10-K. A Form 10-K is an annual report required by the SEC to inform investors and potential investors of the financial condition of a publicly traded company. Bally Holding is publicly traded; its wholly-owned subsidiaries are not. Thus, the Form 10-K must address both Bally Holding and all of its subsidiaries. The information provided, including financial statements, is consolidated. The use of consolidated financial statements and tax returns is a common business practice and is not a sufficient basis to impose liability under the alter ego doctrine. *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 839 (11th Cir. 1991).

Plaintiff really argues nothing more than that Bally Holding is subject to jurisdiction in Massachusetts because it owns a subsidiary which does business there. A foreign corporation simply employing a subsidiary corporation as a means of doing business within a state is not doing business there so as to be subject to personal jurisdiction. *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S.Ct. 250,

69 L.Ed. 634 (1925); see also, *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003). The transaction of business by a controlled subsidiary corporation is unimportant in determining jurisdiction over a parent corporation. *Consolidated Textile Corp. v. Gregory*, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1933).

Plaintiff also refers to a website "http://www.ballyfitness.com/join/clubdir.pdf" (Plaintiff's Opposition, p. 15) that does not refer to Bally Holding. That website refers to clubs operating under the trade name "Bally Total Fitness," but the 10 Massachusetts clubs listed are operated by Holiday, not Bally Holding.

Finally, Plaintiff notes the Form 10-K refers to another lawsuit pending in Massachusetts. (Form 10-K, Item 3, p.30). That lawsuit alleges "breach of contract and violation of certain earn-out provisions of an agreement [executed prior to 2003] whereby the Company acquired certain fitness centers from plaintiffs in return for shares of Bally stock." Again, as used in the Form 10-K, "the Company" refers to Bally Holding and its consolidated subsidiaries. Even assuming, *arguendo*, that Bally Holding purchased some health club centers in Massachusetts prior to 2003, that would not establish that Bally Holding regularly conducts business in Massachusetts. Furthermore, Plaintiff has not and cannot offer facts sufficient to show that her cause of action arises out of Bally's Holding's purchase of health club centers in Massachusetts prior to 2003 so as to establish jurisdiction under the Massachusetts long-arm statute, when a separate subsidiary, Holiday, now owns and operates all of the "Bally Total Fitness" centers in Massachusetts.

Bally Holding does not own or operate 10 health clubs in Massachusetts; Holiday does. Bally Holding does not sell contracts in Massachusetts; Holiday does. Bally

Holding does not regularly conduct business in Massachusetts or derive substantial revenues from services that Bally Holding renders in Massachusetts; Holiday does. Bally Holding does not have an interest in or possess real property in Massachusetts; Holiday does. Plaintiff simply ignores the law that where a non-resident parent owns the controlling shares of a subsidiary doing business in Massachusetts, personal jurisdiction does not exist under the Massachusetts long-arm statute unless the stringent Massachusetts veil-piercing test is satisfied. *In re Lupron Marketing and Sales Practices Litigation*,, 245 F.Supp.2d 280, 289 (D. Mass. 2003). Plaintiff has not and cannot establish any basis for piercing the corporate veil of Holiday.

Plaintiff cites *Commonwealth v. Philip Morris, Inc.*, 1998 WL 1181992 (Mass Super. Mar. 20, 1998), which was discussed and distinguished in *Lupron*. 245 F. Supp.2d at 300, n. 42. As in *Lupron*, Plaintiff has failed to come forward with facts showing that Bally Holding, as opposed to Holiday, actively inserted itself into the Massachusetts market. 245 F. Supp.2d at 300. Plaintiff's argument is "simply a recycling of the theory that [the parent] can be held vicariously liable for the conduct of [ the subsidiary]." 245 F. Supp.2d at 300.[1]

## II.   PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(6)

### A.   Plaintiff Has Failed to State a Claim Against Bally Holding.

---

[1] Curiously, Plaintiff also cites *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), which did not involve an attempt to establish jurisdiction over a parent based upon a subsidiary's contract. Instead, the Court held in *Burger King* that a Michigan franchisee, which had contracted with a Florida franchisor, was subject to jurisdiction in Florida. Plaintiff, again failing to distinguish between Bally Holding and Holiday, asserts that Bally Holding should not be surprised at being haled into a Massachusetts court because "it included a Massachusetts choice-of-law clause in its form contracts." (Plaintiff's Opposition, p. 18, n 5). Plaintiff's Contract is not a contract with Bally Holding, but with Holiday.

4

Plaintiff implicitly concedes that Bally Holding is not a "seller" subject to the Massachusetts Health Club Services Act (the "Act"). Plaintiff argues that each count of her Amended Complaint does not depend upon Bally Holding being subject to the Act. The basis for each count, however, is that her contract with Holiday (the "Contract") violated the Act. The Complaint specifically alleges that Bally Holding and Holiday, by "selling such illegal contracts," harmed Plaintiff and the purported class. (Complaint, ¶ 16). Count I alleges that the "form contracts violate the Act". Bally Holding did not sell or offer or enter into the Contract. Plaintiff's Contract is with Holiday. Count II attempts to allege an action for unjust enrichment because of the allegedly illegal Contract, while Count III attempts to allege an action for money had and received, again based upon the money was received under the allegedly illegal contract. Bally Holding does not receive the money under the Contract; Holiday does. Count IV seeks a declaration that the Contract is illegal. Again, Bally Holding is not a party to the Contract. Count V purports to state an action under M.G.L. c. 93A for misrepresentation, again based upon the conclusion that the Holiday Contract is illegal. Plaintiff is simply seeking to hold Bally Holding liable on a Contract of Holiday. Plaintiff cannot do this without sufficient allegations to pierce the corporate veil of Holiday. Plaintiff notes that the Act provides that it "is hereby declared to be an unfair and deceptive trade practice in violation of chapter ninety-three A for a seller, or his agents, employees or other representatives to ... violate or fail to comply with any other provision of" the Act. M.G.L. c. 93 § 84. Bally Holding is not Holiday's agent, employee or representative in Massachusetts.

Plaintiff further argues that she has alleged that Bally Holding "actively participated" in the illegal conduct by "directing" Holiday. Plaintiff, however, alleges no

facts to support any active participation by Bally Holding. On a motion to dismiss, a Court is to give no weight to :bald assertions, unsupportable conclusions, and opprobrious epithets." <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002), quoting, <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987). Plaintiff alleges nothing more than Holiday, being a wholly-owned subsidiary, is subject to the direction and control of Bally Holding.

B. Plaintiff's Financing Claim Fails to State a Cause of Action.

1. There is No Violation of §80.

Plaintiff's Opposition consists almost entirely of misstatements of both law and fact in an attempt to manufacture some cause of action.[2] Plaintiff misstates both the Act and the Contract. Plaintiff repeatedly argues that the Act prohibits health clubs from entering into "long-term" contracts with members. (Plaintiff's Opposition, pp. 1, 2, 10, 11). Nowhere in Plaintiff's Opposition does Plaintiff acknowledge, much less discuss, the fact that section 80 expressly allows "long-term" contracts of 36 months:

> "No contract for health club services shall be for a term measured by the life of the buyer. No contract for health club services shall be for a term longer than thirty-six months, except that upon expiration of the contract, the seller may offer to the buyer the right to renew his contract for a similar, shorter or longer period not to exceed thirty-six months." M. G. L. c. 93, § 80 (Emphasis added).

Plaintiff's Contract does not exceed thirty-six months. Thus, her claim that she has been trapped into an illegal, long-term contract is simply erroneous.

---

[2]The Amended Complaint purports to allege two violations of the Act: (1) a violation of that portion of section 80 which prohibits any requirement of payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract (the "Financing Claim"); and (2) a violation of that portion of section 80 which prohibits any contract provision whereby the health club member agrees not to assert against the seller or any assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club (the "Waiver of Liability Claim"). Plaintiff's Opposition incorrectly states that the Motion to Dismiss and Defendants' Memorandum do not address the Waiver of Liability Claim (Plaintiff's

6

Without citation to authority, Plaintiff argues that the term "expiration of the contract" under section 80 must be construed to mean the membership term under the Contract. Plaintiff then argues that her membership term under her Contract was the initial one month term. In fact, the membership term under Plaintiff's Contract was entirely up to her to determine. While noting that the initial term of the membership was one month, Plaintiff completely ignores the fact that she alone decided how long her membership under her Contract would actually last. She does not dispute that under the Contract she had the ability to make the membership term extend for years beyond the financing term of the Contract. If her membership terminated before the end of her contractual financing period, it would only be because she chose to terminate her membership. Plaintiff cannot claim that the Contract is in violation of a statute when the alleged violation is within Plaintiff's sole discretion and control.[3] Under Massachusetts law, every contract implies good faith and fair dealing between the parties. *Rand-Whitney Packaging Corp. v. Robertson Group, Inc.*, 651 F. Supp. 520, 535 (D. Mass. 1986). Plaintiff could not exercise her contractual discretion and then claim that the Contract was illegal.

Plaintiff falsely implies that she had no right under the Contract to use the health club facilities after the first month of her membership. (Plaintiff's Opposition, pp. 6-7). In fact, Plaintiff had the right under the Contract to continue to use the health club facilities for as long as she desired by continuing to pay monthly dues. A basic rule of

---

Opposition, p. 2). In fact, both the Motion to Dismiss and Defendants' Memorandum demonstrate that the Waiver of Liability Claim fails to state a cause of action

[3] In reality, Plaintiff is arguing that Holiday must redraft its contracts so that there is no discretion for the member to terminate the membership during the financing period. In other words, Plaintiff's position is that the member cannot be allowed to terminate the membership and avoid paying additional monthly dues, thus requiring the "class" that Plaintiff purports to represent to actually pay more under a contract than under the current Contract

7

contract law is that contracts generally will not be interpreted so as to render them illegal. *Conservation Land Foundation of New England, Inc. v. Andrus*, 623 F.2d 712, 715 (1st Cir. 1979). As stated by the Massachusetts Supreme Judicial Court:

> "Where it is possible to execute their terms in different ways, one of which is permissible and the other prohibited, it will be presumed as a general rule in the absence of evidence to the contrary that both parties intended that it should be executed according to law. A contract will be treated as binding when it can reasonably be performed in such way as to violate no law, and will not be regarded as void, because among others not objectionable one way is open for so executing it as to contravene some criminal statute." *Gaston v. Gordon*, 208 Mass. 265, 94 N.E. 307, 308 (1911).

Since it was possible to carry out the Contract in a lawful manner, Plaintiff cannot now claim the Contract is illegal. *Adamsky v. Mendes*, 326 Mass. 603, 96 N.E.2d 236, 238 (1950).

Moreover, the Act does not refer to the expiration of the "*initial membership term,*" as Plaintiff suggests. Rather, it provides that no contract "shall require payments or financing by the buyer over a period that extends more than one month beyond the *expiration of the contract.*" M. G. L. c. 93, § 80 (Italics added). Under her Contract, Plaintiff had the right to continue her membership indefinitely. The membership would terminate before the end of the financing period only if Plaintiff so chose. The Contract itself would continue. Plaintiff would continue to have her statutorily mandated contractual cancellation rights under the Contract for the full 36 months regardless of whether she chose to terminate her membership.

Further, the Contract did not "require" payments or financing beyond whatever term Plaintiff chose for her membership. The Legislature purposely chose the term "shall require" in the Act, indicating that the prohibited conduct was mandatory payments after

the expiration of the contract.[4] The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *In re Hart*, 328 F.3d 45, 49 (1st Cir. 2003). Under the Contract, Plaintiff could pay the balance of her membership fee at any time she chose. Thus, if she chose to discontinue her membership, she could also chose to pay off her membership fee, in which case the period of time for payments or financing by the buyer would not extend beyond the expiration of her membership. The Contract does not require payment or financing over 36 months. Plaintiff cannot complain that the term of her financing, which was in her sole discretion and control, exceeded the term of her membership, which was also within her sole discretion and control.

2. <u>The Doctrine of Judicial Estoppel Does Not Apply.</u>

Plaintiff speciously claims that Bally Holding and Holiday are judicially estopped from claiming that the Contract does not expire with the expiration of the initial one-month membership based upon *Pulcini v. Bally Total Fitness Corp.*, 353 Ill. App.3d 712, 820 N.E.2d 31 (2004). At issue in *Pulcini* was an Illinois statute which provided:

> "No contract for physical fitness services shall require payments or financing over a period in excess of 3 years from the date the contract is entered into, nor shall the term of any such contract be measured by the life of the customer. The initial term of services to be rendered under the contract may not extend over a period of more than 2 years from the date the parties enter into the contract…." 815 ILCS 645/8(c)(Emphasis added.).

---

[4] Plaintiff makes a false analogy in referring to usury. (Plaintiff's Opposition, p. 8). The Massachusetts statute on usury provides that a party violates the statute when he or she "knowingly contracts for, charges, takes or receives, directly or indirectly, interest" above the legal rate. M.G.L. c 271 §49. If the Legislature had intended under the Act to prohibit knowingly contracting for, charging, taking or receiving financing payments that extended beyond the initial term of the membership under a health club contract, as Plaintiff now suggests, the Legislature certainly knew how to so provide. Instead, the Legislature purposefully chose the term "shall require." Additionally, contrary to Plaintiff's argument, the ability to prepay a balance due without penalty does generally avoid usury laws. *Moyer v. Citicorp Homeowners, Inc.* 799 F.2d 1445, 1448 (11th Cir. 1986).

9

In *Pulcini*, a separate corporate entity, Bally Total Fitness Corporation ("Bally Fitness"), asserted that the initial term of services under its health club contract was one month.

Not one of the requirements for judicial estoppel is present in this case. First, neither Bally Holding nor Holiday was a party in *Pulcini*.[5] Second, Bally Fitness' position in *Pulcini* was not "clearly inconsistent" with Bally Holding's and Holiday's position here. *VLT, Inc. v. Power-One, Inc.*, 2003 WL 43364* at 4 (D. Mass. Jan. 3, 2003). In *Pulcini*, Bally Fitness asserted that the initial term of services under the contract was one month. Bally Fitness never asserted that the contract itself expired with the expiration of the one month initial term of services. Bally Fitness's position in *Pulcini* is exactly the same as Bally Holding's and Holiday's position here. The initial membership term is one month, but the Contract does not expire because the member can renew indefinitely in his or her discretion and enjoys the contractual cancellation rights for 36 months. Finally, Bally Fitness was not the prevailing party in *Pulcini*. *Brackett v. United States*, 206 F. Supp.2d 183, 186 (D. Mass. 2002). In fact, the Appellate Court in *Pulcini* reversed an order granting Bally Fitness' motion to dismiss a class action complaint.

    3.    Plaintiff Lacks Standing to Bring Her Financing Claim Because She Suffered No Injury.

Plaintiff incorrectly claims that she suffered damages as a result of a violation of section 80 for the reason that the financing provisions of her Contract "locked" her into a long-term contract. (Plaintiff's Opposition, pp. 10-11). Plaintiff never even acknowledges that section 80 of the Act expressly allows for contracts with terms up to

10

36 months. She cannot complain that the financing terms of the Contract effectively tied her to a 36-month contract term when the statute itself specifically allows for a contract term of 36 months.

Plaintiff's claim that she was injured due to finance charges is also illusory. As noted above, Plaintiff had the ability to avoid any finance charges at any time by simply paying off her balance. Nothing in the Act prohibits finance charges. If her finance period extended beyond the term of her membership (which, again, would not be actionable), it was only because she made that decision pursuant to her Contract.

Plaintiff's damage claim boils down to nothing more than her assertion that she was damaged because the Contract allegedly violated the Act. This same claim was rejected in *Albats v. Town Sports International, Inc. d/b/a Boston Sports Club*, Civil No. 2002-04910 (Mass. Super. May 10, 2004), *aff'd* (Mass. Jan. 20, 2006). Although acknowledging that the Massachusetts Supreme Judicial Court (the "SJC") affirmed *Albats* by an equally divided SJC, Plaintiff claims that the affirmance provides no guidance. Plaintiff neglects to inform this Court that on January 17, 2006, the SJC issued an opinion in *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790, 840 N.E.2d 526 (2006). The SJC heard oral argument on *Hershenow* on the same day that it heard argument on *Albats*, and counsel for Plaintiff here was counsel for the plaintiffs in both *Albats* and *Hershenow*.

In *Hershenow*, the plaintiffs brought a class action contending that the defendant's automobile rental contract violated chapter 93A because its terms failed to comply with the requirements of M.G.L. c. 90, § 32E 1/2, which regulates collision damage waivers in

---

[5] In citing *Pulcini*, Plaintiff omits the full defendant's name, thereby obscuring the fact that it was a different entity than either Bally Holding or Holiday. Plaintiff again incorrectly assumes that separate

11

automobile rental agreements. Plaintiffs admitted that their rental cars were not involved in a collision nor otherwise damaged during the rental period. The SJC determined that the plaintiffs could not bring an action under M.G.L. c. 93A, § 9(1), which permits an action by any person who has been "injured" by another's unfair or deceptive act or practice because the plaintiffs had not suffered any actual loss due to the allegedly illegal damage waiver:

> "Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss--whether that loss be economic or non-economic--the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L. c. 93A, § 9, and our earlier case law." 840 N.E.2d at 535.

Thus, in *Hershenow*, the Court made plain that for a consumer to maintain an action under chapter 93A, there must be both a violation and an injury. Merely because the plaintiff made payment under an allegedly illegal contract is not sufficient. Likewise, consistent with the ruling in *Hershenow*, the SJC affirmed the decision in *Albats* that the language of § 86 of the Act clearly requires that a plaintiff have both a contract that violates a provision of the Act and an injury resulting from that violation in order to maintain an action. Plaintiff has not and cannot allege any "injury" caused by an alleged violation of the Act. She paid interest only because she chose to finance her membership fee through Holiday rather than paying it in full by cash, check or credit card. She could have avoided any finance charge at any time. Similarly, Plaintiff's claim that her purported "class" suffered an injury of "hundreds of dollars in finance charges" (Plaintiff's Opposition, p. 10) ignores the fact that any member of the purported class could avoid any finance charges at any time by paying off the balance due.

---

corporations can be treated as the same.

Plaintiff disingenuously attempts to distinguish *Albats* and *Hershenow* by asserting that she has been required to pay money under a void contract. (Plaintiff's Opposition, p.13). That identical claim was made (by counsel for Plaintiff) and rejected in *Albats*. As in this case, Paragraph 35 of the First Amended Class Action Complaint in *Albats* alleged that the plaintiff and the class were damaged because they "paid and continue to pay [the defendant] for fees pursuant to void and unenforceable contracts ...." Similar to paragraph 27 of the Amended Complaint of Plaintiff, the plaintiffs in *Hershenow* alleged in paragraph 51 of their Fist Amended Class Action Complaint that they paid fees which were not owed and that they "were deprived of the benefits and protections of their contracts and the law and suffered a diminution in the value of their contracts." Plaintiff cannot distinguish either *Albats* or *Hershenow*. Copies of the Amended Complaint in *Albats* and *Hershenow* are attached as Exhibits B and C to the Davison Affidavit.

    C.    <u>Plaintiff's Waiver of Liability Claim Fails to State a Cause of Action.</u>

        1.    <u>There is No Violation of §80.</u>

Citing *Holiday Universal, Inc. v. Haber*, 1990 Mass.App.Div. 69, 1990 WL 101391 (Mass.App.Div. May 16, 1990), Plaintiff falsely claims that one aspect of Holiday's Contract has already been "declared void pursuant to the Act." (Plaintiff's Opposition, p. 12-13). The provision at issue in *Haber* does not appear in Plaintiff's Contract.[6] No provision of the Contract requires the buyer to agree not to assert against

---

[6] The provision in *Haber* was as follows: "Member fully understands and agrees that in participating in one or more of the fitness programs, or using the facilities maintained by Holiday, there is the possibility of accidental or other physical injury. Member agrees to assume the risk of such injury and further agrees to indemnify Holiday from any and all liability on the part of Holiday by either the member or third party as a result of the use by the member of the facilities and instructions offered by Holiday." 1990 WL 101391* at 1.

13

the seller or any assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club. Paragraph 8 of the Contract urges the member not to bring personal items to the club and advises the member that Holiday will not be liable for the loss or theft of, or damage to, the personal property of members or guests. Plaintiff cannot cite any provision of the Contract or the law which would require Holiday to be liable for the loss or theft of, or damage to, personal property.

    2. Plaintiff Lacks Standing to Bring Her Waiver of Liability Claim Because She Suffered No Injury.

Plaintiff does not allege that she suffered any loss, theft or damage to any personal property or that she sought to hold Holiday liable for any loss, theft or damage. Plaintiff's Waiver of Liability Claim is on all fours with both *Hershenow* and *Albats*. As made clear in *Hershenow*, a plaintiff cannot bring a cause of action without alleging both a violation and an injury. Plaintiff again alleges her injury was paying under a "void" contract, but this claim was rejected in *Albats* and *Hershenow*. If Plaintiff were correct, then for any violation of the Act, a member would have suffered an injury by paying under a "void" contract rendering the injury requirement a nullity.

### III. CONCLUSION

For each of the above and foregoing reasons, Defendants Bally Holding and Holiday Universal, Inc. respectfully request that this Court enter an order dismissing the Amended Complaint with prejudice and granting Defendants such other and further relief as this Court deems just, including an award of their attorneys' fee and costs.

        Respectfully submitted,

        BALLY TOTAL FITNESS HOLDING
        CORP. and HOLIDAY UNIVERSAL, INC.,

        By their attorneys,


        /s/ Juliet A. Davison
        Howard M. Cooper, Esq., BBO #543842
        Juliet A. Davison, Esq., BBO #562289
        Todd & Weld LLP
        28 State Street, 31st Floor
        Boston, Massachusetts 02109
        (617) 720-2626

Date:   March 2, 2006