## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GISSELLE RUIZ,<br>individually and on behalf of all others<br>similarly situated,<br><br>           Plaintiff<br><br>           v.<br><br>BALLY TOTAL FITNESS HOLDING CORP.,<br>a Delaware Corporation, and<br>HOLIDAY UNIVERSAL, INC.<br>a Delaware Corporation,<br><br>           Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>05-11052-NMG |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY AND/OR FOR PROTECTIVE ORDER PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS

### Introduction

Plaintiff, Gisselle Ruiz ("Ms. Ruiz"), files this opposition to Defendants', Bally Total Fitness Holding Corporation and Holiday Universal, Inc. (collectively referred to as "Bally's"), Motion To Stay Discovery ("Discovery Motion") pending the court's decision on its Motion To Dismiss. The timing of Bally's Discovery Motion is remarkable; it seeks a stay of discovery within days of receiving and reviewing Ms. Ruiz's responses to its discovery requests, but before responding to the discovery requests Ms. Ruiz served upon it. This litigation tactic begets unfairness and prejudice. By reaping the benefit of having Ms. Ruiz's discovery responses while trying to avoid its own discovery obligations, Bally's has created an uneven playing field in this case. Bally's seeks to maintain its upper hand by virtue of its motion. The inherent

unfairness of this situation cannot be justified by any of the arguments Bally's makes in support of its motion. Its motion should be denied.

**Procedural History**

Ms. Ruiz filed an amended complaint in this action on July 20, 2005. On August 17, 2005 Bally's filed a motion to stay litigation, arguing, among other things, that Ms. Ruiz did not have standing to bring her claims under the Massachusetts' Health Club Services Act (the "Act") because she suffered no injury. [Motion To Stay Litigation, pp. 2-3]. Bally's made an unsuccessful attempt to support its argument by analogizing Ms. Ruiz's claims and injuries with those present in *Albats v. Town Sport Int'l., Inc. d/b/a Boston Sports Club,* No. 2002-04910 (Mass. Super. May 10, 2004), *aff'd,* (Mass. Jan. 20, 2006)(No. SJC-09432). The court denied Bally's Motion To Stay Litigation on November 29, 2005. [Docket No. 23].

In conjunction with the order denying Bally's Motion To Stay Litigation, the court issued an amended scheduling order setting forth discovery and motion deadlines. On December 30, 2005, Bally's filed its Motion To Dismiss. Approximately two months later, on March 3, 2006, Bally's served Ms. Ruiz its First Request For Production Of Documents and First Set Of Interrogatories. At this time, Bally's had not yet served its initial disclosures under Fed. R. Civ. P. 26(a). On or about March 22, 2006, counsel conferred about the scheduling order to confirm dates and deadlines. Ms. Ruiz began preparing her responses to Bally's discovery requests, and on two occasions, requested minimal extensions of time to serve her responses. Bally's consented to both extension requests.

Despite knowing that Ms. Ruiz was spending time and resources preparing her responses, Bally's never broached the subject of a discovery stay while Ms. Ruiz was working to complete her responses to its discovery requests. In fact, Bally's never requested a stay during the 4-

month period between filing its Motion To Dismiss and seeking a stay from the court. Rather,

Bally's asked Ms. Ruiz's counsel to assent to a stay *two days after receiving and reviewing Ms.*

*Ruiz's responses to its discovery requests*, on May 4, 2006.

Ms. Ruiz, through counsel, informed Bally's that she would agree to a stay of discovery

pending the court's ruling on its Motion To Dismiss if Bally's could represent that it had not

reviewed her discovery responses. Bally's could not make that representation and admitted that

it had already reviewed her responses. Regardless, on May 9, 2006, Bally's filed its Discovery

Motion.

### Argument

## I.    Discovery Stay Inappropriate

### 1.    Bally's Motion To Dismiss Does Not Have Substantial Grounds

Bally's argues that a stay of discovery is warranted in this case because its Motion To

Dismiss has "substantial grounds". [Discovery Motion, p. 5]. Bally's offers no reasons to support

its position. Bald assertions about the merits of a motion to dismiss, without more, are not

sufficient to justify a stay of discovery. *People With Aids,* at *1.

For the reasons set forth in Ms. Ruiz's Opposition To Bally's Motion To Dismiss

[Docket No. 28], Bally's does not have substantial grounds upon which its Motion To Dismiss

should be granted. Without reproducing the argument in her Opposition To Bally's Motion To

Dismiss here, Ms. Ruiz will briefly address these substantive issues as they pertain to Bally's

Discovery Motion.

First, Bally's argues that its contracts are not in violation of Section 80 of the Act because

Ms. Ruiz's financing period does not extend more than one month beyond the expiration of the

contract. [Discovery Motion, p. 2]  However, not only did Bally's take the opposite position in

*Pulcini v. Bally Total Fitness,* 353 Ill. App. 3d 712, 820 N.E. 2d 31, 289 Ill. Dec. 523, (Ill. App. Ct. 2004), where it argued that the identical form contract at issue in this case was month to month renewable, [See, Opposition To Motion To Dismiss, pp. 8-9], it also made a contradicting argument in a recent motion to dismiss it filed in a case pending in the U.S. District Court for the Eastern District of Pennsylvania, *Estelle Robinson and Gene M. Swindell, et al. v. Holiday Universal Inc., Scandinavian Health Spa, Inc., Bally Total Fitness Holding Corp., and Bally Total Fitness Corp*., Case No. 05-05726. A true and correct copy of Bally's Memorandum In Support Of Its Motion To Dismiss in the *Robinson* case is submitted herewith as Exhibit A.

In *Robinson*, Bally's argued that its contracts are not "health club contracts" as defined by Pennsylvania's Health Club Act, 73 P.S. §2162, because Pennsylvania law defines a health club contract as one which has a term of at least three months, and Bally's argued that its contracts are month to month. [Robinson Motion To Dismiss, p. 5]. Therefore, as Ms. Ruiz argued in her Opposition To Bally's Motion To Dismiss, Bally's is judicially estopped from arguing that the same form of contract at issue in this case has a 36-month term. In re-characterizing the same form contracts to suit the case at hand, Bally's has adopted a litigation strategy that is guided by expediency rather than consistency.

Next, Bally's argues that Ms. Ruiz has not and cannot allege a violation of the Act because she did not suffer any injury. In her First Amended Complaint, Ms. Ruiz alleged that she was damaged by Bally's illegal conduct by paying interest and fees under its illegal and unenforceable contracts. [Amended Complaint, ¶27]. Bally's again relies on the outcomes of the *Hershenow v. Enterprise Rent-a-Car Company of Boston, Inc.,* 445 Mass. 790, 840 N.E. 2d 526 (2006) and *Albats* cases, claiming that Ms. Ruiz's claims are "virtually identical" to those dismissed in these cases. [Discovery Motion, p. 5]. In making this argument, Bally's ignores this

4

Court's ruling on its previously filed Motion To Stay Litigation, where it raised the same arguments and the court denied the motion.

In *Albats,* the Plaintiff raised an entirely distinct claim from the one at issue here, based on a violation of section 81 of the Act, relating to the contractual imposition of a non-refundable "initiation" fee. The issue in *Albats* was whether the Plaintiff suffered an injury *without showing some loss of money or property*, based on the inclusion of a contract provision which deprived class members of statutorily protected rights to cancel their contracts.

Ms. Ruiz, however, challenges the financing provision of Bally's contract, which violates section 80 of the Act. Ms. Ruiz and members of the class she seeks to represent have suffered monetary damages caused by the financing of membership fees over a period of three years. This court already distinguished this case from *Hershenow* and *Albats* when it denied Bally's Motion To Stay Litigation.

Bally's argues that its form contracts do not contain a provision requiring the buyer to agree not to assert against the seller or any assignee or transferee of the health club services contract any claim or defense arising out of the health club services contract or the buyer's activities at the health club. [Discovery Motion, p. 2]. However, Bally's contracts expressly waive consumers' rights to recover "for the loss or theft of, or damage to, [their] personal property". This provision violates section 80 of the Act, as well as the separately codified prohibition on waiver of consumer rights contained in M.G.L. C. 93, §101.

Ms. Ruiz and the class she seeks to represent are injured because they continue to make payments on void and unenforceable contracts. Bally's waiver provision violates the Act, and therefore renders Bally's contracts void. See*, M.G.L. c. 93 §85. In *Albats*, the trial court did not directly address the voiding provision, because it found that the contract had been modified to

5

comply with the statute, and that the Plaintiff did not seek to be released from the contract. Albats Decision, at 7. [Exhibit A to Docket No. 16]. In this case, however, Ms. Ruiz's contract has never been modified, and Ms. Ruiz specifically requested cancellation of her contract, which Bally's refused.

### 2.     A Pending Motion To Dismiss Is Not Sufficient Grounds To Stay Discovery

In its motion, Bally's cites a series of cases that generally hold that a stay of discovery is appropriate when a motion to dismiss is pending. [Discovery Motion, p. 4]. However, courts are split on this issue. *See, Coca-Cola Bottling Company v. Grol,* 1993 WL 13139559, at *2 (E.D. Pa. 1993)("A court should not automatically stay discovery pending a motion to dismiss…"); *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990)(pending motion to dismiss is not sufficient to justify a stay of discovery); *People With Aids v. Burroughs*, 1991 WL 221179, at *1 (D.D.C. 1991)(*quoting, Twin City Fire Ins. v. Employers Ins. of Wausau*, 124 F.R.D. 652 (D.Nev. 1989), "[A] pending motion to dismiss is not ordinarily a situation that in and [of] itself would warrant a stay of discovery.").

Moreover, the procedural posture Bally's created in this case is exceptional. None of the cases upon which Bally's relies contemplates the prejudicial circumstances present here, where one party has benefited from receiving and reviewing discovery responses but the other has not. Ironically, Bally's relies on a case that held that a stay of discovery pending a decision on a dispositive motion "is an eminently logical means to prevent wasting the time and effort of *all concerned*, and to make the most efficient use of judicial resources." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth*, 201 F.R.D 1, 2 (D.D.C. 2001) (emphasis added) [Discovery Motion, p. 4]. Apparently, Bally's was not concerned that Ms. Ruiz spent time and

6

effort to respond to its discovery requests, but asks to be relieved from its obligation to do the same.

### 3.    The Alleged Expansiveness And Burden Of Ms. Ruiz's Discovery Requests Does Not Warrant Imposition Of Stay

Bally's contention that, "[d]espite the pendency of the Motion to Dismiss, Plaintiff's Request [for production of documents] seeks broad, class-wide discovery as well as discovery on matters wholly irrelevant to the allegations of the First Amended Complaint" [Discovery Motion, p. 3], is a mischaracterization of the discovery Ms. Ruiz seeks and in any event, does not justify a stay of discovery. First, Bally's initiated the discovery process by serving its Request for Production of Documents and First Set of Interrogatories on Ms. Ruiz, "despite the pendency of the Motion to Dismiss." Next, the court's scheduling order bifurcates discovery, and imposes a written discovery deadline specifically for issues relating to class certification. Finally, Ms. Ruiz's discovery seeks only the particulars relevant to class certification. The core of Ms. Ruiz's discovery requests pertains to the number of people affected by Bally's form contracts, the different types of form contracts Bally's uses and Bally's standard policies and practices relating to the contract terms that are at issue in this case.

Moreover, if Bally's has any objections as to the scope and substance of Ms. Ruiz's discovery requests, the Federal Rules of Civil Procedure provide for a discovery process whereby Bally's can set forth its objections to Ms. Ruiz's requests. *See, Gray,* at 40 ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a motion is directly at odds with the need for expeditious resolution of litigation.").

Bally's further argues that discovery should be stayed because Ms. Ruiz's requests are unlikely to produce facts necessary to defeat its Motion To Dismiss. [Motion, p. 4]. This contention is plainly untrue. Ms. Ruiz specifically requested in her Request for Production of Documents, "[a]ll documents which support the arguments [Bally's] raised in [its] motion to dismiss." Courts should not stay discovery that is necessary to gather facts to defend against a motion. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).

## II.    Bally's Request For Protective Order As Alternative Grounds Should Also Be Denied

### 1.    Bally's Fails To Show Good Cause

Bally's has failed to show good cause for the entry of a protective order. Under Fed. R. Civ. P. 26(c), a court may order a protective order disallowing or limiting discovery "for good cause shown." The purpose of Rule 26(c) is to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Bally's bears the burden of showing good cause. *Multi-Core, Inc. v. Southern Water Treatment Company*, 139 F.R.D. 262, 263 (D. Mass. 1991), *citing, Anderson v. Cryovac, Inc.,* 805 F. 2d. 1, 7 (1st Cir. 1986)(moving party must show a factual basis of potential harm); *Church of Scientology v. Internal Revenue Service*, 138 F.R.D. 9, 10 (D. Mass. 1990).

Bally's does not set forth any facts to support the entry of a protective order. To establish good cause, "[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements…". *Gulf Oil Company v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 2201 (1981), *quoting, In re Halkin*, 194 U.S. App. D.C. 257, 274, 598 F. 2d 176, 193 (1979); *Anderson*, at 7-8. Ms. Ruiz's discovery requests will not result in

annoyance, embarrassment, oppression or undue burden or expense to Bally's. As such, Bally's request for a protective order should be denied.

## Conclusion

Bally's has had Ms. Ruiz's discovery responses since May 2, 2006. It has admitted that it has reviewed her responses. It has yet, however, to respond to Ms. Ruiz's requests. This circumstance prejudices Ms. Ruiz. For this reason and all of the reasons set forth above, Bally's motion to stay discovery and request for a protective order should be denied.

Dated: May 22, 2006

Respectfully submitted,
Gisselle Ruiz,
By her attorneys,


/s/ John Roddy
John Roddy, BBO #424240
Gary Klein, BBO #560769
Elizabeth Ryan, BBO #549632
Shennan Kavanagh, BBO #655174
Roddy Klein & Ryan
727 Atlantic Avenue, 2d Floor
Boston, MA 02108
Telephone: (617) 357-5500 ext. 16
Fax: (617) 357-5030
roddy@roddykleinryan.com

<u>CERTIFICATE OF SERVICE</u>

I, John Roddy, hereby certify that on this 22nd day of May, 2006, I served the foregoing document by causing a true and correct copy to be sent via first class mail, postage prepaid, to the following person(s):

Howard M. Cooper, Esq.
Juliet A. Davidson, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, Massachusetts 02109

Norman T. Finkel, Esq.
Young, Finkel & Silbert, Ltd.
33 North La Salle Street, Suite 900
Chicago, Illinois 60602

/s/ John Roddy
John Roddy

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTELLE ROBINSON,<br>GENE M. SWINDELL<br>on behalf of themselves<br>and all other similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>HOLIDAY UNIVERSAL, INC.,<br>SCANDINAVIAN HEALTH SPA, INC.,<br>BALLY TOTAL FITNESS HOLDING<br>CORP.; and BALLY TOTAL FITNESS<br>CORP.,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION – CLASS ACTION<br><br><br><br><br><br><br>No. 2:05-cv-05726-GP |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RULE 12(b)(6)  MOTION TO DISMISS
PLAINTIFFS' JOINDER COMPLAINT– CLASS ACTION

Defendants Holiday Universal, Inc. ("Holiday"), Scandinavian Health Spa, Inc.

("Scandinavian"), Bally Total Fitness Holding Corporation ("Bally Holding") and Bally Total

Fitness Corporation ("Bally Fitness"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, move to dismiss the Joinder Complaint – Class Action ("Complaint") for failure to

state a cause of action and, in support thereof, state as follows:

### I. INTRODUCTION

Plaintiff Estelle Robinson ("Robinson) entered into a contract (the "Robinson Contract")

in 2001 for an initial one-month membership with Holiday Universal, Inc. ("Holiday").   Plaintiff

Gene M. Swindell ("Swindell") entered into a membership contract (the "Swindell Contract") in

2002 with Scandinavian Health Spa, Inc. ("Scandinavian").   Scandinavian and Holiday are

wholly owned subsidiaries of Bally Total Fitness Holding Corporation ("Bally Holding").

Plaintiffs bring this action claiming that their contracts violate a provision of the Pennsylvania

Health Club Act ("HCA"), 73 P.S. §2161, et. seq., which provides that "...the amount of any

initiation fees imposed by a health club shall be reasonably related to the club's costs for

establishing the initial health club membership." 73 P.S. § 2165. Plaintiffs complain that "on

information and belief," the initiation fees under the contracts are not reasonably related to the

costs for establishing the initial health club membership. Plaintiffs bring claims for this alleged

violation of the HCA under the Pennsylvania Unfair Trade Practices and Consumer Protection

Law ("UTPCPL"), 73 P.S. § 201-1 et seq. (Count I) and for unjust enrichment (Count II), and

seek a declaratory judgment (Count III).

Plaintiffs have failed to plead facts demonstrating any violation of the HCA. In the

alternative, the HCA is unconstitutionally vague and, therefore, void. Plaintiffs also cannot seek

equitable relief under the UTPCPL. Plaintiffs cannot state a claim for unjust enrichment or

restitution where, as here, there is a written contract between the parties. Plaintiffs also have not

alleged a legally sufficient claim for declaratory judgment since neither Plaintiff has disaffirmed

his or her respective contract.

Plaintiffs filed their original complaint against Holiday, Scandinavian and Bally Holding

on December 4, 2004. On February 28, 2005, Holiday, Scandinavian and Bally Holding filed

preliminary objections to the original complaint, which the Court of Common Pleas of

Philadelphia County overruled without comment or hearing on April 4, 2005.[1] On September

30, 2005, Plaintiffs filed their Joinder Complaint, amending their claims to add Bally Fitness as a

defendant. On October 25, 2005, Bally Fitness filed a Notice of Removal pursuant to the Class

---

[1] While the Court of Common Pleas did not sustain the preliminary objections, that ruling is not binding after removal, particularly where Plaintiffs chose to amend their complaint. See, e.g., *Savell v. Southern Ry. Co.*, 93 F.2d 377, 379 (5th Cir. 1937)(Federal court was not bound by state court order overruling demurrer after removal.). In the proceedings in the Court of Common Pleas, Defendants were given no opportunity to reply to Plaintiffs' response to the preliminary objections. As set forth herein, that response raised a number of misleading and incorrect arguments and cited inapplicable authority.

2

Action Fairness Act.

## II. STATEMENT OF FACTS

The Joinder Complaint alleges that Robinson entered into the Robinson Contract with Holiday on February 11, 2002 [sic] for a "Premier" membership for herself and her son. (Complaint, ¶¶ 8-9, Ex. A).[2]  The Robinson Contract provides that the "membership is renewable (initial term is one month)." (Complaint, Ex. A, p. 1).  Robinson agreed to pay a membership fee (the "Membership Fee") of $632.00 by paying $100 down and the remainder over 36 months. Robinson does not allege that she made any payments other than the $100 initial payment.  The Robinson Contract also provides that Robinson could pay monthly dues ("Monthly Dues") to maintain her membership if she  chose to do so.  (Complaint, Ex. A, p. 1 ).  Robinson does not allege that she ever paid any monthly dues.   The Complaint also fails to allege that Robinson made any payment beyond her initial $100 down payment.

Swindell alleges that he entered into the Swindell Contract with Scandinavian "[i]n or around the year 2002." (Complaint, ¶¶ 10-11). The Swindell Contract is not attached to the Complaint and no terms of the Swindell Contract are alleged in the Complaint.  Swindell does not allege that he made any payments under his contract.

Plaintiffs allege that Holiday and Scandinavian are existing corporations (Complaint ¶¶ 4-5) and that Bally Holding owns Holiday and Scandinavian.  (Complaint, ¶ 6).  Plaintiffs allege that Bally Fitness is a wholly owned subsidiary of Bally Holding and that Bally Fitness "provides standard forms of contracts" and "provides pricing for membership and initiation fees" to Holiday and Scandinavian. (Complaint, ¶¶ 7, 19).

---

[2] A copy of the Joinder Complaint is attached hereto as Exhibit "A."

## III. STANDARDS ON A MOTION TO DISMISS

"A plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory.'" *Campagna v. Massachusetts Department of Environmental Protection*, 334 F.3d 150, 155 (1st Cir. 2003), *quoting*, *Dartmouth Review v. Dartmouth College*, 889 F.3d 13, 16 (1st Cir. 1989). In ruling on a motion to dismiss, a Court need not credit either bald assertions or legal conclusions contained in a complaint. *Evancho v. Fischer*, 423 F.3d 347, 351 (3rd Cir. 2005); *Morse v. Lower Merion School District*, 132 F.3d 902, 907 (3rd Cir. 1997). "'[S]ubjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts' will not defeat a motion to dismiss." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995), *quoting*, *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d at 906, n. 8, *quoting*, *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993). "When a complaint annexes and incorporates by reference a written instrument, any inconsistencies between the complaint and the instrument must be resolved in favor of the latter." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18 (1st Cir. 2002).

## IV. THE HEALTH CLUB ACT DOES NOT APPLY

The entire Complaint is premised upon the claim that Defendants violated the HCA. (Complaint, ¶¶ 13, 17, 20, Count I, ¶ 31, Count II, ¶ 38, Count III, ¶ 43). The HCA, however, applies only to "health club contracts", as defined by the HCA:

> "Health club contract." An agreement in which the buyer of health club services purchases, or becomes obligated to purchase, health club services to be rendered over a period of more than three months, whether or not the health club is completed or operational.

73 P.S. § 2162.

4

The HCA does not apply to the Robinson Contract, as it is not a "health club contract" as defined by the HCA. The Robinson Contract provides that its membership is renewable with an initial membership term of "one month." Under her contract, Robinson was obligated to purchase services only for the initial one month membership. Robinson could renew her membership beyond the initial one month, only if she desired and only in her sole discretion, by paying monthly dues ("Monthly Dues"). Thus, although Robinson had the option to renew her membership after the first month, she was under no obligation to do so. Robinson had the right to cancel her membership at any time, and she was not "obligated to purchase health club services to be rendered over a period of more than three months," as alleged in the Complaint. Since the HCA does not apply to her Contract, Robinson cannot maintain an action based upon the HCA. Similarly, Swindell does not allege facts to establish that his contract is a "health club contract" as defined by the HCA. Swindell has not alleged facts to demonstrate that the HCA applies. Accordingly, this Court should dismiss the Complaint.

Plaintiffs previously incorrectly argued that Section 2165 of the HCA (upon which Plaintiffs rely) applies to any initiation fee charged by a health club, regardless of whether the member enters into a "health club contract." In other words, Plaintiffs argue that while the HCA applies generally only to "health club contracts" as defined in the HCA, Section 2165 itself is not limited only to such "health club contracts." See 73 P.S. §2165. Plaintiffs themselves are not consistent with their theory. In paragraph 1 of their Complaint, Plaintiffs allege that "Defendants sell health club contracts." (Complaint, ¶ 1). They allege that they have brought their action on behalf of those persons who "entered into health club contracts." (Complaint ¶ 24). In Count III of the Complaint, Plaintiffs allege that "Section 2167 of the HCA states that 'A health club

5

contract which does not comply with this act shall be voidable at the option of the buyer.'"
(Complaint, Count III, ¶ 44). Thus, in the Complaint, Plaintiffs themselves assert that their
contracts are "health club contracts" within the meaning of the HCA. Since the contracts do not
obligate Plaintiffs to purchase services of more than three months, however, the contracts are not
"health club contracts."

Moreover, although the short title of the HCA is the "Health Club Act," the full title is:
"AN ACT Providing for the regulation of health club contracts; and providing for further duties
of the Bureau of Consumer Protection, the Attorney General and district attorneys." 1989, Dec.
21, P.L. 672, No. 87, § 1 (emphasis added). The purpose of the HCA was set forth by the
legislature as follows:

> The purpose of this act is to safeguard the public interest against fraud, deceit and
> financial hardship and to foster and encourage competition, fair dealing and
> prosperity in the field of health club services by prohibiting false and misleading
> advertising and dishonest, deceptive and unscrupulous practices by which the public
> has been injured in connection with contracts for health club services.

73 P.S. § 2161, Historical and Statutory Notes (emphasis added). In interpreting statutory
language, the Court's ultimate objective is to ascertain and effectuate the intention of the
Pennsylvania General Assembly, and the Court must be guided by the primary purpose of the
statute. *Vitac Corp. v. Workers' Compensation Appeal Board (Rozanc)*, 578 Pa. 574, 854 A.2d
481, 485 (2004). The entire HCA is designed to apply only to "health club contracts", as defined
in the HCA.

Finally, Section 2165 (upon which Plaintiffs rely) provides that: "Initiation fees shall be
included in the computation of any refunds due under this act." 73 P.S. §2165. The only
provision for refunds under the HCA is Section 2163, which is entitled "Contents of Health Club

6

Contract." The refund in Section 2163 is to be made to the "buyer." 73 P.S. § 2163. The term "buyer" in the HCA is defined as a "natural person who enters into a health club contract." 73 P.S. § 2162. The entire framework of the statute makes sense only if it is applied to "health club contracts" as defined in the statute—an "agreement in which the buyer of health club services purchases, or becomes obligated to purchase, health club services to be rendered over a period of more than three months." Since Plaintiffs do not allege that they are obligated under any agreement to purchase or obligated to purchase services over a period of more than three months, they have failed to state any claim under the HCA and their Joinder Complaint should be dismissed.

## V. PLAINTIFFS HAVE FAILED TO PLEAD A VIOLATION OF THE HCA

Even assuming, *arguendo*, that the HCA applied to Plaintiffs' contracts, Plaintiffs have not and cannot plead a violation of the HCA. All three counts of the Complaint are premised upon the claim that Defendants violated Section 2165 of the HCA, which provides:

> Except as provided in section 13, the amount of any initiation fees imposed by a health club shall be reasonably related to the club's costs for establishing the initial health club membership. An initiation fee shall not be imposed for the purpose of circumventing the requirements of this act. Initiation fees shall be included in the computation of any refunds due under this act.

73 P.S. § 2165. Bally Fitness did not enter into any health club contract with either Plaintiff and did not impose any initiation fee on either Plaintiff.

Plaintiffs allege that "[o]n information and belief, Defendants' costs for establishing the initial health club membership for the Plaintiffs and the members of the Class do not exceed $100 per person." (Complaint, ¶ 20). Plaintiffs do not allege what costs are actually incurred for establishing a membership or what the basis is for their conclusory allegations as to Defendants' costs.

7

Plaintiffs' theory that the costs for establishing the initial health club membership cannot exceed $100 is contradicted by the HCA itself. Section 2163 of the HCA provides, in part:

> Upon receipt of notice of cancellation under this paragraph, the health club shall refund to the buyer all moneys paid in excess of an amount computed by dividing the full contract price, including any initiation fee, by the number of weeks in the contract term and multiplying the result by the number of weeks elapsed in the contract term, less a predetermined fee not exceeding $100, or, if more than half the life of the contract has expired, a predetermined fee not exceeding $50.

73 P.S. § 2163 (6) and (7).

If Plaintiffs' theory that the costs of establishing the initial membership cannot exceed $100 were correct, then the legislature would not have had to include the initiation fee in the calculation for the amount of refund upon cancellation because the health club can keep $100 under the statute anyway. If the legislature had determined that the costs of establishing an initial membership would not exceed $100, then the legislature would have limited the initiation fee to less than $100 and allowed the health club to keep that amount upon cancellation. The legislature clearly contemplated that the initiation fee could exceed $100 when it adopted the HCA in 1989.

The only way that Section 2163 of the HCA has meaning is if the legislature contemplated that an initiation fee would be more than $100. "[A] court analyzing a statute must presume the General Assembly did not intend to perform a useless act." Rossi v. Commonwealth, 580 Pa. 238, 860 A.2d 64, 66 (Pa. 2004). "Therefore, individual statutory provisions must be construed with reference to the entire statute of which they are a part, and the entire statute is presumed to be certain and effective, not superfluous and without import." Id.

Furthermore, Plaintiffs' theory that the cost of establishing the initial membership cannot exceed $100 ignores the economic realities of establishing a health club membership. In order to

8

"establish" Robinson's membership, Holiday had to provide a health club and all of the necessary facilities. Thus, the cost of establishing Robinson's membership includes the cost of the land (whether rented or purchased); the construction cost of the building including all light, heating and air conditioning, electrical, plumbing and build-out necessary for a health club; the cost of facilities (lockers, showers, saunas, steam rooms, rest rooms, etc.); and the cost of equipment (weights, weight machines, treadmills, exercise bicycles, etc.). These costs are the same whether Robinson uses the club once or a thousand times. They are all costs reasonably related to the cost of establishing Robinson's initial membership since they cannot be avoided regardless of how many times Robinson uses the club.

Additionally, Robinson and her son (who also received a membership under the Robinson Contract) obtained a "Premier" membership for more than just a single club. (Complaint, Ex. A, p.1). A "Premier" membership gives the member the "use of all local and nationwide Bally Total Fitness® clubs." (Complaint, Ex. B, ¶ 20). Thus, in order to "establish" Robinson's and her son's initial membership, Holiday had to provide a local and nationwide network of clubs. The land cost, construction cost and the costs of facilities and equipment for all such clubs are reasonably related to the costs of establishing Robinson's and her son's initial membership. It is preposterous to assert that such a nationwide network of clubs can be established for $100 per member.

Plaintiffs also misread the statute. The statute does not limit a health club's initiation fee to the "cost of establishing the initial membership", as Plaintiffs suggest. Instead, Section 2165 states that the initiation fee must be "reasonably related" to the club's costs for establishing the initial health club membership. 73 P.S. §2165. Plaintiffs have not alleged any basis to establish that Robinson's initiation fee was not "reasonably related" to the costs of establishing a membership for her and her son. Swindell does not even allege the amount of his initiation fee,

9

much less what the costs were for establishing his membership. Swindell does not allege any basis to conclude that the initiation fee imposed by Scandinavian was not reasonably related to the club's costs for establishing the initial health club membership. The entire Complaint fails to state any basis for concluding that the HCA was violated.

## VI.    THE HCA IS VOID FOR VAGUENESS

Section 2165 of the HCA is void for vagueness. A statute is constitutionally void if it is so vague that "persons' of common intelligence must necessarily guess at its meaning and differ as to its application.'" Fabio v. Civil Service Commission of the City of Philadelphia, 489 Pa. 309, 314, 414 A.2d 82, 84 (1980), quoting, Connally v. General Construction Co., 269 U.S. 385, 391, 46 S. Ct. 126, 127 (1926). "The void for vagueness doctrine incorporates the due process notions of fair notice or warning." 489 Pa. at 314, 414 A.2d at 85. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Commonwealth v. Cotto, 562 Pa. 32, 37, 753 A.2d 217, 220 (2000), quoting, Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S. Ct. 2294 (1972).

"A statute or regulation that is vague is unconstitutional because it either traps the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly or result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for its application." Watkins v. State Board of Dentistry, 740 A.2d 760, 763-64 (Pa. Cmwlth. 1999). "To not be unconstitutionally vague, terms of the statute or regulation must be sufficiently specific to inform those who are subject to it what conduct on their part will render then liable to its penalties." 740 A.2d at 764. "Where a statute is 'so vague, indefinite, and uncertain that the courts are unable to determine, with any reasonable degree of

certainty what the Legislature intended, or is so incomplete or conflicting and inconsistent in its

provisions that it cannot be executed, it will be declared inoperative." <u>Willcox v. Penn Mutual</u>

<u>Life Ins. Co.</u>, 357 Pa. 581, 595, 55 A.2d 521, 528 (1947), *quoting*, <u>Miller v. Belmont Packing &</u>

<u>Rubber Co.</u>, 268 Pa. 51, 63, 110 A. 802, 806 (1920).

 In holding that a statute which made it unlawful for any person to "make any unjust or

unreasonable rate or charge in handling or dealing in or with any necessaries" was

unconstitutionally vague, the United States Supreme Court stated:

> Observe that the section forbids no specific or definite act. It confines the
> subject-matter of the investigation which it authorizes to no element essentially
> inhering in the transaction as to which it provides. It leaves open, therefore, the
> widest conceivable inquiry, the scope of which no one can foresee and the result of
> which no one can foreshadow or adequately guard against. In fact, we see no reason
> to doubt the soundness of the observation of the court below in its opinion to the
> effect that, to attempt to enforce the section would be the exact equivalent of an
> effort to carry out a statute which in terms merely penalized and punished all acts
> detrimental to the public interest when unjust and unreasonable in the estimation of
> the court and jury.

<u>United States v. L. Cohen Grocery Co.</u>, 255 U.S. 81, 89, 41 S.Ct. 298, 300 (1921).

 Likewise, in <u>A.B. Small Co. v. American Sugar Refining Co.</u>, 267 U.S. 233, 45 S.Ct.

295 (1925), the Supreme Court stated that "copious references to judicial pronouncements and

proceedings the court illustrated that the terms 'unjust,' 'unreasonable,' and 'excessive' as applied

to prices *** had no commonly recognized or accepted meaning." 267 U.S. at 239, 45 S.Ct. at

297. In <u>Cline v. Frink Dairy Co.</u>, 274 U.S. 445, 47 S.Ct. 681 (1927), the Supreme Court held

that the term "reasonable profit" in a Colorado statute was unconstitutionally vague, stating:

> But it will not do to hold an average man to the peril of an indictment for the unwise
> exercise of his economic or business knowledge, involving so many factors of
> varying effect that neither the person to decide in advance nor the jury to try him
> after the fact can safely and certainly judge the result. When to a decision whether a
> certain amount of profit in a complicated business is reasonable is added that of
> determining whether detailed restriction of particular anti-trust legislation will

11

prevent a reasonable profit in the case of a given commodity, we have an utterly impracticable standard for a jury's decision. A Legislature must fix the standard more simply and more definitely before a person must conform or a jury can act.

Id., 274 U.S. at 465, 47 S.Ct. at 687. See also Commonwealth v. Zasloff, 338 Pa. 457, 13 A.2d

67, 68 (1940) (Pennsylvania Fair Sales Act of July 1, 1937 was unconstitutional because the

phrases "same cost per unit as the last quantity purchased by the retailer prior to the sale of said

merchandise would have cost per unit if bought at the most favorable market price available to

the retailer at any time within thirty (30) days prior to said sale" and "justified by existing market

conditions within this State" and "legal price of a competitor" were vague and did not give

sufficient guidance as to what price would be legal.)

     Section 2165 of the HCA is unconstitutionally vague because it gives no guidance as to

what amount of initiation fee is legal. Bally Fitness, the other Defendants and this Court are left

to guess as to what amount is "reasonably related to the club's costs for establishing the initial

health club membership." Indeed, until the trier of fact determines what amount is "reasonably

related," it is impossible to determine what amount is legal. Accordingly, this Court should

dismiss the Complaint.

     Plaintiffs previously argued that because judges and juries are often called upon to

determine what is "reasonable", the word cannot be vague. The issue is not whether a judge or

jury can make a determination as to what is reasonable. Rather, the issue is whether the HCA

gives Defendants prior notice of the standards to determine what is legal under the HCA before a

judge or jury ever addresses the issue. "A vague law impermissibly delegates basic policy

matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the

attendant dangers of arbitrary and discriminatory application." Commonwealth v. Cotto, 562 Pa.

32, 37, 753 A.2d 217, 220 (2000), *quoting*, Grayned v. City of Rockford, 408 U.S. 104, 108-09,

92 S. Ct. 2294(1972). "In reviewing a business regulation for facial vagueness, however, the

12

principal inquiry is whether the law affords fair warning of what is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503, 102 S.Ct. 1186, 1196 (1982). Thus, it is no answer to state that a jury can determine what costs are "reasonably related to the club's costs for establishing the initial health club membership" because such a standard does not give Defendants fair warning prior to a lawsuit of what is proscribed.

Plaintiffs' same argument that juries often determine what is "reasonable" under the law of torts so that a statute that uses the term "reasonable" cannot be vague was addressed by the United States Supreme Court in Cline v. Frink Dairy Co., 274 U.S. 445,  47 S.Ct. 681 (1927). The Court held:

> It is true that on an issue like negligence-i, e., a rule of conduct for the average man in the avoiding injury to his neighbors-every one may be held to observe it either on the civil or criminal side of the court. It is a standard of human conduct which all are reasonably charged with knowing and which must be enforced against every one in order that society can safely exist.
>
> \*\*\*
>
> But it will not do to hold an average man to the peril of an indictment for the unwise exercise of his economic or business knowledge, involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result.  When to a decision whether a certain amount of profit in a complicated business is reasonable is added that of determining whether detailed restriction of particular anti-trust legislation will prevent a reasonable profit in the case of a given commodity, we have an utterly impracticable standard for a jury's decision.  A Legislature must fix the standard more simply and more definitely before a person must conform or a jury can act.

Id., 47 S.Ct. at 687.

Plaintiffs also cited a series of cases holding that government fees for licenses or regulatory rates set by the government have been found to be "reasonable."  *Bloomsburg Landlords Association, Inc. v. Town of Bloomsburg*, 912 F. Supp. 790, 808 (M.D. Pa. 1995); *Ack v.  Carroll Township Authority*, 661 A.2d 514, 518 (Pa. Cmwlth. 1995); *Martin Media v.*

13

*Hempfield Township Zoning Hearing Board*, 651 A.2d 1171 (Pa. Cmwlth. 1994).[3]  In those

cases, the issue was not whether the person subject to the license or rate was acting at his or her

peril in interpreting the statute.  Rather, the person was challenging whether the specific amount

set in the statute itself was reasonable.  There was no guesswork as to the amount to be paid.

None of those cases even involved a void for vagueness argument because the person subject to

the statute was not charged with determining what was reasonable before paying.  As stated by

the United States Supreme Court in *Cline*:

> On questions of confiscatory rates for public utilities, for instance, courts
> must examine in great detail the circumstances and reach a conclusion as
> to a reasonable profit.  But this does not justify in such a case holding the
> average member of society in advance to a rule of conduct measured by
> his judgment and action in respect to what is a reasonable price or a
> reasonable profit.

Id, 47 S.Ct. at 687.[4]

Plaintiffs have previously cited *Buckland v. County of Montgomery*, 1986 WL 353 (E.D.

Pa. June 5, 1986).  In *Buckland*, a statute provided for the refunding of bail "less a reasonable

charge relating to the administering the percentage cash bail program."  The plaintiffs argued

that the statute was unconstitutionally vague and subject to arbitrariness because different

counties retained different percentages of the bail.  The *Buckland* Court noted that a

Pennsylvania Court had upheld the statute as constitutional and the Court held that it was bound

by that decision.  The *Buckland* case is inapposite.  In that case, the legislature delegated the

power to set the amount of the fee to the local government. The local government set the amount

---

[3] Plaintiffs also cited *Baldassari v. Suburban Cable TV Co., Inc.* 808 A.2d 184 (Pa. Super. 2002), in which no statute was at issue and, therefore, no void for vagueness argument was addressed. *Baldassari* simply involved an issue of whether a late fee was reasonable or amounted to a penalty.

[4] Plaintiffs also cited *Rose v. Locke*, 423 U.S. 48 (1975), in which the Court held a statute prohibiting crimes against nature was not void.  The Court reasoned that the term "crimes against nature" was well-defined by common law. As noted in *Cline*, a statutory term will not be found vague where it has "a well-settled common-law meaning." Id., 47 S.Ct. at 685.

14

to be paid. The person subject to the statute did not have to guess as to how much would be retained. *Buckland* is not similar to this case, in which Plaintiff would have a judge or jury determine after the fact whether the alleged initiation fee was "reasonably related to the club's costs for establishing the initial health club membership."

It is not simply the term "reasonable" which makes Section 2165 vague. Rather, the entire phrase "reasonably related to the club's costs for establishing the initial health club membership" is vague. There are simply no standards to determine what is included in the "costs of establishing the initial health club membership." Plaintiffs have argued that the phrase cannot refer to the costs associated with cost of the land (whether rented or purchased): the construction cost of the building including all light, heating and air conditioning, electrical, plumbing and build-out necessary for a health club; the cost of facilities (lockers, showers, saunas, steam rooms, rest rooms, etc.); and the cost of equipment (weights, weight machines, treadmills, exercise bicycles, etc.). Plaintiffs imply that the term means the cost associated solely with the paperwork for the new membership. Defendants cannot "establish" a health club membership without an actual health club and all of the costs involved therewith. Plaintiffs cite no authority for their construction of the phrase. Plaintiffs simply seek to place Defendants at their own peril for interpreting the statute differently than Plaintiffs' interpretation when the statute itself gives no standards for interpretation. That is precisely why the statute is void for vagueness.

## VII.    COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM FOR EQUITABLE RELIEF

Under Count I of the Complaint, brought under the UTPCPL, Plaintiffs seek an injunction and other equitable relief. Plaintiffs bringing private claims under the UTPCPL, however, cannot seek equitable relief. The UTPCPL authorizes only the Attorney General or

District Attorney to seek injunctive relief. 73 P.S. § 201-4. In a private action under the

UTPCPL, a plaintiff may recover only actual damages or $100, whichever is greater. 73 P.S. §

201-9.2. While Section 201-9.2(a) provides that in addition to monetary damages, the Court may

provide such additional relief as it deems necessary or proper, if the legislature had intended to

give the Court the power to grant injunctive relief in a private action, it would have so expressly

provided as it did for actions brought by the Attorney General or District Attorney. Therefore,

this Court should dismiss Count I of the Complaint.

## VIII.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT AND/OR RESTITUTION

Count II of the Complaint purports to state an action for unjust enrichment and/or

restitution. Plaintiffs, however, plead that Robinson had a written contract with Holiday and

Swindell had a written contract with Scandinavian. "Pennsylvania law holds that a court 'may

not make a finding of unjust enrichment ... where a written or express contract between the

parties exists.'" Abrams v. Toyota Motor Credit Corp. 2001 WL 1807357* at 12 (Pa.Com.Pl.

2001), *quoting*, Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super.Ct. 1999).

While a party can theoretically plead in the alternative, Plaintiffs clearly have not and

cannot do so. Plaintiffs themselves plead that there exists written contracts between the parties.

(Complaint, ¶¶ 9, 11). Plaintiffs incorporate these allegations into Count II. (Complaint, Count

II, ¶ 39). Thus, in Count II itself, Plaintiffs plead that there are written contracts in existence.

Plaintiffs cannot maintain an action for unjust enrichment. Accordingly, this Court should

dismiss Count II of the Complaint.

## IX.    PLAINTIFFS HAVE FAILED TO ALLEGE A
## CLAIM FOR DECLARATORY JUDGMENT

Count III of the Complaint purports to state a claim for declaratory judgment.  Plaintiffs

note that Section 2167 of the HCA provides that "A health club contract which does not comply

with this act shall be voidable at the option of the buyer."  (Complaint, Count III, ¶ 44). While

Plaintiffs claim that their Contracts are voidable, neither Plaintiff alleges that he or she

disaffirmed his or her respective contract.

> [D]eclaratory judgment relief requires the presence of antagonistic claims
> indicating imminent and inevitable litigation coupled with a clear
> manifestation that the declaration will be of practical help in ending the
> controversy. [citation]  This relief cannot be used in anticipation of events that
> may never occur or for rendering an advisory opinion that may prove to be
> purely academic;  there must be a real controversy. Finally, the grant of a
> declaratory judgment is not a matter of right, but a matter of the court's
> discretion.

Board of Supervisors of South Middleton Township, Cumberland County v. Diehl, 694 A.2d 11,

13 (Pa.Cmwlth. 1997).

Unless and until Plaintiffs affirmatively choose the option to void their respective

contracts, they are simply seeking an advisory opinion.  Plaintiffs cannot continue to obtain the

benefits of their contracts while seeking this Court's ruling as to whether the contracts are

voidable at their option.  A party to a voidable contract may lose his or her right to rescind or

avoid the contract if he or she fails to disaffirm or demonstrates an intention to affirm. In re

Estate of Long, 419 Pa.Super. 389, 392, 615 A.2d 421, 422 (Pa.Super. 1992).  This Court should

dismiss Count III of the Complaint.

Plaintiffs have previously cited *Williams v. Empire Funding Corp.*, 183 F.R.D. 428 (E.D.

Pa. 1998), in which the Court allowed a class to be certified for a declaration as to whether

contracts were subject to the right of rescission under the federal Truth-in-Lending Act.

Plaintiffs failed to acknowledge that there is a split in the federal courts on this issue and that

*Williams* has been criticized.  In *Williams*, the Court acknowledged that a class action seeking

rescission itself as a remedy was not appropriate.  In *Gibbons v. Interbank Funding Group*, 208

F.R.D. 278 (N.D.Cal. 2002), the Court stated that "[i]t is not at all clear why, if class-wide

rescission is inappropriate, a declaration authorizing the same thing is not also inappropriate."

208 F.R.D. at 285.  The Court held that a class action was not appropriate:

> It is undisputed that the purported class members (other than Mr. Gibbons)
> have not submitted notices to rescind.  Thus, plaintiff is effectively asking for
> an advisory opinion. Without any rescission requests, nor subsequent denials
> by defendants, it is not at all clear that a justiciable controversy exists between
> the class and defendants.

Id., 208 F.R.D. at 285.  In this case, neither Plaintiff (nor any purported class member) has

disaffirmed his or her respective contract.  Thus, Plaintiffs are seeking an advisory opinion,

which is clearly improper.

## IX.  CONCLUSION

WHEREFORE, Defendants Holiday Universal, Inc., Scandinavian Health Spa, Inc.,

Bally Total Fitness Holding Corporation and Bally Total Fitness Corporation respectfully request

that this Court dismiss the Joinder Complaint.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**


Dated: November 3, 2005            By:      AM420
                                            Albert G. Bixler, Esquire
                                            Anita J. Murray, Esquire
                                            PA I.D. No.:  45639/84703
                                            1515 Market Street, 9th Floor
                                            Philadelphia, PA  19102
                                            (215) 851-8400/(215) 851-8383
                                            abixler@eckertseamans.com
                                            amurray@eckertseamans.com

Alan Rosen, Esquire
Norman T. Finkel, Esquire
William R. Klein, Esquire
Young, Rosen, Finkel & Silbert, Ltd.
33 N. LaSalle Street, Suite 900
Chicago, IL 60602
312/782-2555


Attorneys for Defendants, Holiday Universal, Inc.;
Scandinavian Health Spa, Inc.; Bally Total Fitness
Holding Corp.; and Bally Total Fitness Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2005, a true and correct copy of the

foregoing Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) Plaintiffs' Joinder

Complaint – Class Action was filed electronically with the Court and served via United States

first class mail, postage prepaid, upon the following:

> David A. Searles, Esquire
> Donovan Searles, LLC
> 1845 Walnut Street, Suite 1100
> Philadelphia, PA  19103
> Counsel for Plaintiffs
>
> Jay Edelson, Esquire
> Blim & Edelson, LLPP
> Monadnock Building, Suite 1642
> 53 W. Jackson Blvd.
> Chicago, IL  60604
> Co-Counsel for Plaintiffs
>
> Joseph K. Goldberg, Esquire
> 2080 Linglestown Road, Suite 106
> Harrisburg, PA  17110
> Co-Counsel for Plaintiffs

### ECKERT SEAMANS CHERIN & MELLOTT, LLC

By:  _____AM420_____

Albert G. Bixler, Esquire
Anita J. Murray, Esquire
PA I.D. No.:  45639/84703
1515 Market Street, 9th Floor
Philadelphia, PA  19102
(215) 851-8400/(215) 851-8383
abixler@eckertseamans.com
amurray@eckertseamans.com

Attorneys for Defendants, Holiday Universal, Inc.;
Scandinavian Health Spa, Inc.; Bally Total Fitness
Holding Corp.; and Bally Total Fitness Corp.

M0530312.DOC