United States District Court
District of Massachusetts

```
                                    )
GISSELLE RUIZ,                      )
Individually and on behalf of       )
all others similarly situated,      )
                                    )
            Plaintiff,              )   Civil Action No.
                                    )   05-11052-NMG
      v.                            )
                                    )
BALLY TOTAL FITNESS                 )
HOLDING CORP. and                   )
HOLIDAY UNIVERSAL, INC.,            )
                                    )
            Defendants.             )
                                    )
```

MEMORANDUM & ORDER

GORTON, J.

The named plaintiff, Gisselle Ruiz ("Ruiz"), brings a putative class action lawsuit on behalf of herself and similarly situated Massachusetts residents against the defendants, Bally Total Fitness Holding Corp. ("Bally") and Holiday Universal, Inc. ("Holiday"). Defendants removed the case from state court on the basis of diversity jurisdiction and have filed a motion to dismiss the complaint for failure to state claims upon which relief can be granted and lack of personal jurisdiction over Bally.

I.   Background

Ruiz alleges that Bally and Holiday are affiliated entities responsible for a health club membership contract that she

-1-

entered into on or about March 11, 2004 (hereinafter, "the Contract"). Under the terms of the Contract, Ruiz was responsible for 1) a membership fee of $1,565 payable with financing at a rate of 14.75% per year for 36 months (hereinafter, "the Membership Fee") and 2) dues of $8 per month. Ruiz's membership was described as "renewable (initial term is one month)". Absent special circumstances, cancellation within 36 months discharged her monthly payment of $8 but did not alter her responsibility for paying the entire Membership Fee. The Contract also contained a provision limiting the liability of the health club "for the loss or theft of, or damage to, the personal property of members or guests".

Ruiz contends that the foregoing provisions of the Contract constitute violations of common law and various Massachusetts consumer protection laws, including the Massachusetts Health Club Services Contracts Act, Mass. Gen. Laws ch. 93, § 78 et seq. (hereinafter, "the Health Club Act"), the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A"), and Mass. Gen. Laws ch. 93, § 101, which prohibits the waiver of consumer rights provided by Massachusetts statutes.

## II. Motion to Dismiss

Defendants have moved to dismiss Ruiz's class action complaint on the grounds that 1) the Court lacks personal jurisdiction over Bally and 2) plaintiff has failed to state

claims upon which relief can be granted. The Court first addresses the issue of personal jurisdiction.

### A. Legal Standard

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Although a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000), it need not credit bald assertions or unsupportable conclusions, Banco Santander de Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003).

### B. Lack of Personal Jurisdiction

Where personal jurisdiction is contested, the plaintiff may not rest upon the allegations of the complaint but must proffer

evidence of specific facts in support of jurisdiction. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (citation omitted). The court is to accept such evidence "at face value". Id.

Here, defendants do not challenge the assertion of Massachusetts jurisdiction over Holiday but oppose any exercise of jurisdiction over Holiday's parent, Bally. Ruiz must show, therefore, that Bally is subject to the jurisdiction of this Court by virtue of Bally's presence in the Commonwealth or connections therewith in satisfaction of the state long-arm statute and constitutional due process. Andresen v. Diorio, 349 F.3d 8, 12 (1st Cir. 2003) (citation omitted).

A court's assertion of personal jurisdiction over a wholly owned subsidiary does not automatically establish jurisdiction over that subsidiary's parent. See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) (citing cases). "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary". Escude Cruz, 619 F.2d at 905 (citations omitted).

The First Circuit Court of Appeals has indicated that personal jurisdiction over parent companies "invariably" depends upon the finding of a "plus" factor, "something beyond the

subsidiary's mere presence within the bosom of the corporate family". Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990). A plus factor of that sort exists 1) where the association between parent and subsidiary demonstrates an agency relationship between the two, 2) where the exercise of control by the parent over the subsidiary goes beyond that "degree of control innately inherent in the family relationship" or 3) where the subsidiary is "merely an empty shell". Id. at 466 (citations omitted). In all such cases, the parent's relationship to the subsidiary implies that it has availed itself of the benefits of the forum state where the subsidiary is subject to personal jurisdiction.

Ruiz alleges that Bally is an "owner" and "operator" of health clubs in Massachusetts and that the Contract which she entered into in Massachusetts is a form agreement created by Bally. She supports those allegations by referring to representations made by Bally 1) in its 2005 Form 10-K annual report filed with the Securities Exchange Commission and 2) on its website. Bally's 10-K, for example, states that it, along with its subsidiaries, "operate[s]" fitness centers in numerous states. The 10-K also describes the kinds of membership plans that Bally offers. Its website indicates that approximately 10 health clubs are operated under the aegis of Bally in Massachusetts. Ruiz contends that those representations not only

support a finding of personal jurisdiction over Bally but also that Bally is subject to the Health Club Act as a "seller" which "operates a health club or enters into contracts for health club services". Mass. Gen. Laws ch. 93, § 78.

Bally responds that plaintiff's evidence is insufficient. It notes that because it is a public company whose wholly owned subsidiaries are not themselves publicly traded, its 10-K must present "consolidated" data that should not be deemed to constitute any special degree of control by Bally over its subsidiaries. Furthermore, Bally contends that the website does not demonstrate the operation of Massachusetts health clubs by Bally. Such clubs, rather, are operated by defendant Holiday under the trade name "Bally Total Fitness".

In consideration of 1) the requirement that Ruiz's evidence of jurisdiction be accepted at face value, 2) the fact that Bally has held itself out as a company operating in Massachusetts and 3) the fact that the dispute in this case concerns a form membership contract that, in all likelihood, was developed by the parent corporation and not Holiday, the Court concludes that plaintiff has adequately demonstrated a basis for this Court's exercise of personal jurisdiction over Bally.

C. **Merits**

1. **Massachusetts Health Club Act**

The thrust of plaintiff's claim is that the Contract

-6-

violates § 80 of the Health Club Act which, in pertinent part, forbids health club membership contracts that:

> 1) exceed a 36-month term,
>
> 2) "require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract", or
>
> 3) "contain any provisions whereby the buyer agrees not to assert against the seller ... any claim or defense arising out of the health club services contract or the buyer's activities at the club".

Section 86 of the Health Club Act authorizes private actions by "[a]ny buyer who has suffered an injury as a result of a violation of [the act]".

In their motion to dismiss, defendants contend that the Contract does not violate § 80 and that, in any event, Ruiz lacks standing to sue under the statute because she has not suffered any injury. Furthermore, defendants aver that Bally is not subject to the Health Club Act because it is not a "seller" whose conduct is subject to regulation thereunder. Even though Bally probably qualifies as a "seller" under the statute because of the representations it made (discussed within the section on personal jurisdiction, above), the Court is persuaded by defendants' other contentions that the Health Club Act claim should be dismissed.

Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage. See Seaco Ins. Co. v. Barbarosa, 761 N.E.2d 946, 951 (Mass. 2002) (citations omitted). In determining the meaning of any

particular contractual term, a court is to look to the agreement as a whole as well as to the context of its creation. See <u>MCI Worldcom Commc'ns, Inc.</u> v. <u>Dep't of Telecomms. & Energy</u>, 810 N.E.2d 802, 810 (Mass. 2004) (citations omitted).

Contrary to plaintiff's claims in this case, the financial provisions of the Contract do not violate the Health Club Act. First, the Contract does not exceed 36 months. Second, the 36-month financing arrangement of the Membership Fee does not "require payments or financing ... that extend[] more than one month beyond the expiration of the contract". Under the terms of the Contract, the financing plan challenged by Ruiz could be prepaid at any time without additional charge and with credit received for the unearned portion of the finance charge. Thus, the Contract did not, in fact, "require" financing for <u>any</u> length of time.

In addition, even if a buyer opted to finance the Membership Fee for a period of 36 months, that decision would not violate the prohibition against financing payments more than one month beyond the contract's expiration. Reasonable interpretation of the Contract as a whole evidences an expiration period of 36 months. Although Ruiz contends that the Contract's expiration date should be considered to be one month because the Contract described her membership as "renewable (initial term is one month)", that interpretation overemphasizes the word "term" and

fails to account for other contractual language.

Here, the Contract stated that Ruiz's "MEMBERSHIP PRICE" consisted of the Membership Fee (which could be financed for a period of 36 months), monthly dues of $8 (an expense fixed for 36 months) and applicable taxes. After 36 months, Ruiz could continue her membership by paying increased monthly dues of $12 or $17 (depending upon whether she had authorized her Membership Fee to be paid through automatic withdrawals). Those terms, taken together, constitute a 36-month contract in compliance with the Health Club Act. The reference to "renewable (initial term is one month)" which permitted Ruiz to terminate her "membership" by ceasing to pay her monthly dues did not create a Contract which expired after one month. The monthly renewable term of Ruiz's membership is not identical to the 36-month term of the Contract as a whole. Other provisions of the Contract, such as the right to cancel for medical reasons or relocation, further support defendants' contention that the Contract did not effectively "expire" every month.

Ruiz's claim that defendants violated the Health Club Act is not rescued by the doctrine of judicial estoppel or the Contract's limitation of liability concerning lost, stolen or damaged personal property. Defendants are not judicially estopped from arguing that the Contract as a whole has a three-year term with membership under that Contract renewable on a

monthly basis because that position is not "clearly inconsistent" with the position taken by an affiliate of defendants in Pulcini v. Bally Total Fitness Corp., 820 N.E.2d 31 (Ill. App. Ct. 2004). See Zedner v. United States, 126 S.Ct. 1976, 1987 (2006) (setting forth general factors for judicial estoppel). With respect to the liability disclaimer, even if that provision is perceived to come within the purview of the Health Club Act, the failure of Ruiz to allege any injury caused thereby deprives her of standing to seek a remedy for the alleged violation.

### 2. Common Law Claims

Unjust enrichment and money had and received are equitable causes of action which are available to plaintiffs who lack adequate remedies at law. See, e.g., Stone v. White, 301 U.S. 532, 534 (1937). A claim for unjust enrichment requires proof that the defendant was enriched to the plaintiff's detriment without justification or an adequate legal remedy. See Massachusetts v. Mylan Labs., 357 F. Supp. 2d 314, 324 (D. Mass. 2004) (citation omitted). An action for money had and received may be brought "to recover money which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff". Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co. of Greenfield, 184 N.E.2d 358, 360 (Mass. 1962) (citation and internal quotation marks omitted).

Because the Court concludes that a valid, express contract governed the relationship between Ruiz and defendants, plaintiff's claims for unjust enrichment and money had and received will be dismissed. See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005) (holding that the existence of an express contract forecloses the applicability of equitable claims) (citations omitted).

### 3. Unfair and Deceptive Practices

Pursuant to § 84 of the Health Club Act, a violation of that statute constitutes grounds for liability under the Massachusetts Consumer Protection Act which forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". Chapter 93A, § 2. Plaintiff's inability to prove that defendants violated the Health Club Act does not foreclose the possibility of their liability under Chapter 93A. Mass. Gen. Laws ch. 93, § 84 (stating that the prescribed list of "unfair and deceptive acts and practices" within the Health Club Act "shall not be construed to prevent other acts or practices of a seller from being declared to be in violation of said chapter ninety-three A").

The burden of establishing liability under Chapter 93A is demanding, however. Ruiz's claim is sustainable only if she can show

> that the defendant's actions were 'within at least the penumbra of some common-law, statutory, or other established

-11-

>  concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous' ...

Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (citations omitted). In addition, the plaintiff must have been substantially injured by the alleged violation. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (citation omitted). A practice may be "deceptive" where it "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted". Aspinall v. Philip Morris Companies, Inc., 813 N.E.2d 476, 486 (Mass. 2004) (quoting Purity Supreme, Inc. v. Attorney Gen., 407 N.E.2d 297, 307 (Mass. 1980).

Where the state legislature has afforded consumers statutory protection against unscrupulous behavior by health clubs, plaintiff's failure to sustain a claim under that statute is compelling evidence that defendants have not acted unfairly or oppressively. Moreover, plaintiff has provided no factual basis for the Court to conclude that the Contract was deceptive or that she suffered substantial injury. Consequently, her Chapter 93A claim will be dismissed.

### 4. Declaratory Judgment

Ruiz's complaint seeks a declaratory judgment that the Contract violates Mass. Gen. Laws ch. 93, §§ 78, 80 and 101, and Chapter 93A. Defendants assert that Ruiz is not entitled to seek declaratory relief because the Contract is not unlawful and Ruiz

has suffered no injury.

If Ruiz cannot establish defendants' liability under the payment-related regulations of the Health Club Act or Chapter 93A, the only basis under which a declaratory judgment would be available is with respect to the provision of the Contract disclaiming the club's liability for loss, damage or theft of a member's personal property. That provision could potentially violate § 80 of the Health Club Act, which forbids certain limitations of liability, or Chapter 93, § 101, which prohibits waivers of statutory protections to "consumers' health, safety or welfare". See also Mass. Gen. Laws ch. 93, § 85 (declaring waivers of Health Club Act provisions void and unenforceable). The disclaimer of liability in the Contract is insufficient to support a private cause of action by Ruiz because she failed to allege any injury caused by that provision. A closer question before the Court is whether that lack of injury forecloses the availability of declaratory relief.

Under Massachusetts law, a declaratory judgment may be rendered where there is an "actual controversy" that is "specifically set forth in the pleadings". Mass. Gen. Laws ch. 231A, § 1. A necessary component of the actual controversy requirement is that the plaintiff

> have standing, a definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point.

Bonan v. City of Boston, 496 N.E.2d 640, 644 (Mass. 1986).

Although declaratory relief may be sought before the plaintiff has suffered harm, a pleading brought under § 231A must

> set[] forth a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted [sic] such antagonistic claims will almost immediately and inevitably lead to litigation.

Sch. Comm. Of Cambridge v. Superintendent of Sch. Of Cambridge, 70 N.E.2d 298, 300 (Mass. 1946).

Here, defendants contend that the contractual disclaimer of liability does not contravene the Health Club Act and that there is no independent legal basis obliging defendants to assume liability for loss, theft or damage to a health club member's personal property.  In further support of their argument, defendants cite Albats v. Town Sports Int'l, Inc., Civil No. 2002-04910 (Mass. Super. Ct. May 10, 2004), an unreported case which they attached to their memorandum of law.  Considering allegations and legal claims that are strikingly similar to those in this case, the Massachusetts Superior Court in Albats allowed a motion for summary judgment of the health club defendants against a claim for declaratory relief where the plaintiff had failed to "present an imminent conflict that, if resolved, would avoid litigation".  On January 20, 2006, the Massachusetts Supreme Judicial Court affirmed that decision by an equally

divided court but issued no opinion.

Although Ruiz describes the manner in which the Contract's financing plan caused her injury, she provides no facts in support of any injury caused by the disclaimer of liability. She distinguishes <u>Albats</u> on the grounds that the defendants in that case had agreed to modify the contractual limitations of liability at issue and that the plaintiff did not seek to be released from her health club contract.

This case presents a closer question than <u>Albats</u> because of the distinguishing facts raised by Ruiz but those distinctions do not excuse plaintiff's failure to allege the existence of an actual controversy with respect to the limitation of liability. While lack of injury, in itself, does not preclude a declaratory judgment suit, Ruiz offers no evidence that imminent or inevitable litigation is likely to develop barring a declaration by this Court. Consequently, defendants are entitled to dismissal of Ruiz's declaratory judgment claim.

**ORDER**

Based on the foregoing memorandum, defendants' motion to dismiss (Docket No. 24) is, with respect to personal jurisdiction, **DENIED**, but is, in all other respects, **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: July 17, 2006