# United States Court of Appeals
## For the First Circuit

No. 06-2254

GISSELLE RUIZ,

Plaintiff, Appellant,

v.

BALLY TOTAL FITNESS HOLDING CORP. ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lipez and Newman,\* Circuit Judges,
and Selya, Senior Circuit Judge.

John Roddy, with whom Gary Klein, Elizabeth Ryan, Shennan Kavanagh, and Roddy, Klein & Ryan were on brief, for appellant.
Norman T. Finkel, with whom William R. Klein, Schoenberg, Finkel, Newman & Rosenberg, LLC, Howard M. Cooper, Juliet A. Davison, Erica Tennyson, and Todd & Weld LLP were on brief, for appellees.

July 30, 2007

---

\*Hon. Pauline Newman, of the Federal Circuit, sitting by designation.

**SELYA, Senior Circuit Judge.** This appeal requires us to determine whether a health-club services contract conforms with various Massachusetts consumer protection statutes. After studying the pertinent contractual and statutory provisions, we find no nonconformity.  Accordingly, we affirm the district court's dismissal of the action.

## I.  BACKGROUND

Because this appeal follows the granting of a motion to dismiss, see Fed. R. Civ. P. 12(b)(6), we rehearse the facts as elaborated in the operative pleading (here, the plaintiff's amended complaint).  See Palmer v. Champion Mortg., 465 F.3d 24, 25 (1st Cir. 2006). We recognize, however, that our obligation to approach the facts from this plaintiff-friendly vantage does not require us to credit "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)).

In March of 2004, plaintiff-appellant Gisselle Ruiz signed a contract for health-club services (the Contract) with Holiday Universal, Inc., a wholly-owned subsidiary of Bally Total Fitness Holding Corp.[1]  The Contract allowed the plaintiff access to one of Bally's facilities for 36 months in exchange for payment

---

[1]Both Bally and Holiday are named as defendants in this litigation. Because the allegations against them are identical, we henceforth refer to the two entities, collectively, as Bally.

of a one-time membership fee of $1,565, followed by monthly dues of $8. Rather than pay the membership fee up front, the plaintiff chose to finance the sum (less a down payment of $150) over a 36-month period at an annual percentage rate of 14.75%. Under that arrangement, she was to pay Bally $48.88 per month (in addition to her monthly dues).

Although the Contract contained a multiplicity of provisions, we enumerate here only those that are directly relevant to our analysis. Under the Contract, the plaintiff was free to stop paying her monthly dues at any time by submitting written notice to Bally, with the understanding that she would then forfeit her right to use the health-club facilities. The plaintiff was not free to discontinue the deferred payments on the membership fee; refund of the membership fee could be triggered only by certain identified events (e.g., long-term disability or relocation to an area remote from any of Bally's locations). So long as the Contract remained in full force and effect, the plaintiff had the option, at the end of the initial 36-month period, to extend her membership from month to month by paying increased dues of $12 or $17 per month (depending upon the payment method that she elected). Finally, the Contract contained a provision specifying that Bally would not be liable for personal property that the plaintiff chose to bring to the club.

-3-

Sometime later in 2004 — the exact date is obscure — the plaintiff purported to cancel the Contract and requested that Bally refund the balance of her membership fee. Bally refused her request.

Undaunted, the plaintiff repaired to a Massachusetts state court and filed a putative class action. Her complaint contained a myriad of claims. Two of them comprise the focal point of this appeal: (i) that the Contract violated a provision of the Massachusetts Health Club Services Contracts Act (the HCSCA) prohibiting the required financing of a health-club contract for more than one month beyond the expiration of that contract, see Mass. Gen. Laws ch. 93, § 80; and (ii) that the Contract transgressed the HCSCA's prohibition on waiver of consumer claims, see id. Relatedly, the plaintiff alleged that these infractions also implicated the Commonwealth's general consumer protection statute. See Mass. Gen. Laws ch. 93A (Chapter 93A). The plaintiff sought damages for herself and for the putative class members, multiplied under Chapter 93A, see id. § 9(3), and the penalty-free opportunity for all class members to rescind their health-club contracts.

Bally removed the case to the federal district court under the diversity of citizenship statute. See 28 U.S.C. § 1332(a); see also id. §§ 1441(a), 1446. Shortly thereafter, it moved to dismiss, asserting among other things that the plaintiff

-4-

lacked standing to pursue the action and that, in all events, the Contract did not offend the HCSCA. The district court agreed with these arguments and dismissed the action. See Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 31 (D. Mass. 2006). This timely appeal ensued.

## II. **ANALYSIS**

We review the district court's dismissal for failure to state a claim de novo. See Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002). In that process we, like the district court, must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. See Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). We may consider not only the factual allegations of the amended complaint but also any matters fairly incorporated within that pleading. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). And, finally, because this is a diversity case, we must apply the substantive law of the forum state (here, Massachusetts). See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 10 (1st Cir. 2000).

With this framework in place, we turn to an evaluation of the plaintiff's claims. In so doing, we bear in mind that we are not bound by the district court's decisional calculus but, rather, may affirm the decision below on any ground made manifest by the record. See United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st

Cir. 2004); InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

## A. **Standing**.

As an initial matter, we address the contention that the plaintiff lacks standing to sue under the relevant statutory provisions because she has not asserted any injury resulting from the alleged infractions. See Mass. Gen. Laws ch. 93, § 86 (providing a private right of action for any consumer who has "suffered any injury as a result of a violation [of the HCSCA]"); Mass. Gen. Laws ch. 93A, § 9(1) (providing "[a]ny person . . . who has been injured" by a practice declared unlawful under Chapter 93A with a private right of action). In the context of a Massachusetts consumer protection statute, the term "injury" has two components. In the first instance, it denotes "an invasion of a legally protected interest." Leardi v. Brown, 474 N.E.2d 1094, 1101 (Mass. 1985); see Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 490-91 (Mass. 2004). To be actionable, however, that invasion must cause a loss (either economic or noneconomic) to the holder of the legally protected interest. See Hershenow v. Enter. Rent-a-Car Co., 840 N.E.2d 526, 532-35 (Mass. 2006).

The plaintiff's primary claim of injury runs along the following lines. If, as she contends, certain provisions of the Contract violate the HCSCA, the Contract is unenforceable. See Mass. Gen. Laws ch. 93, § 85 ("Any contract for health club

-6-

services which does not comply with the applicable provisions of this chapter shall be void and unenforceable as contrary to public policy."). Yet, Bally refused to honor her request to cancel the Contract. Thus, the enduring obligation to make the subsequent payments called for by the Contract constitutes a cognizable injury.

We agree with the premise on which this rationale rests. While the facts relating to the plaintiff's attempted cancellation are as yet undeveloped, the plaintiff is entitled, on a Rule 12(b)(6) motion to dismiss, to all reasonable inferences from the facts alleged in her amended complaint. See Rogan, 175 F.3d at 77. Here, it plausibly may be inferred from the factual averments in the amended complaint that the plaintiff tried to cancel the Contract because she believed that it did not conform to the requirements of Massachusetts law. If that belief proves to be well-founded — that is, if the Contract is found to violate the plaintiff's rights under the HCSCA — that violation would necessarily constitute an invasion of a legally protected interest. See Leardi, 474 N.E.2d at 1101. In that event, the plaintiff would be facing a causally related economic loss in the form of the obligation to make future payments under the Contract.

In an effort to parry this thrust, Bally counters with a pair of Massachusetts cases. First, it laments that, under the plaintiff's theory of injury, any consumer who has made payments

-7-

under a contract alleged to violate the HCSCA would have standing to sue. This result, Bally asserts, would render the statutory injury requirement meaningless.

This lamentation relies heavily on an unpublished trial court decision allowing a motion for summary judgment against a plaintiff who alleged violations of the HCSCA. See Albats v. Town Sports Int'l, Inc., No. 2002-04910, slip op. (Mass. Super. Ct. May 10, 2004).[2] In that case, the only injury claimed by the plaintiff was that she had lost certain protections under the law. Id. at 5-6, 9. In concluding that the plaintiff had not alleged an adequate injury, the Albats court emphasized that the plaintiff had continued to use the health-club facility after filing her initial complaint. Id. at 7. Moreover, she had not manifested a desire to be released from her contractual obligations. Id.

Here, however, the facts are materially different. The plaintiff in this case, unlike the plaintiff in Albats, attempted to cancel the Contract before filing suit. Although she no longer covets her health-club membership, she has been required to continue making payments because Bally refused to honor her

---

[2]The Massachusetts Supreme Judicial Court (the SJC) affirmed the decision in Albats by an equally divided court. This disposition denies precedential force to the SJC's action. See Howes Bros. Co. v. Mass. Unempl. Comp. Comm'n, 5 N.E.2d 720, 730 (Mass. 1936). Nevertheless, it "does not . . . tarnish earlier opinions" in the case. Microsys. Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 40 n.3 (1st Cir. 2000).

request for a full cancellation. Given these averments, Bally's reliance on Albats is mislaid.

The second case upon which Bally relies is Hershenow, in which consumers invoked Chapter 93A in endeavoring to recover payments made under car-rental agreements that allegedly contained illegal exclusions in waivers of collision damage. 840 N.E.2d at 528-30. The SJC held that a statutory violation alone could not constitute a cognizable injury. But no plaintiff had tried to cancel his or her car-rental agreement during the currency of a contract; the Hershenow plaintiffs brought suit only after bilateral performance under the car-rental agreements was complete. Id. The plaintiff here, unlike the plaintiffs in Hershenow, did not wait until after both parties had received the entire benefit of the negotiated bargain. This is an important distinction because the Hershenow court was concerned with establishing that consumers could not argue "per se injury" based merely on a technical violation of a consumer protection statute, id. at 533, whereas the instant plaintiff has eschewed any such attempt. Instead, she has alleged an actual economic loss. The Hershenow decision is, therefore, inapposite.

That ends this aspect of the matter. The plaintiff's standing to sue in this case is not dependent upon a claim of per se injury, nor upon a nebulous theory of injury that would drain the statutory requirement of all meaning. To the contrary, the

-9-

raw factual averments in her amended complaint hold out the prospect — if proven — of satisfying both components of the statutory injury requirement. No more is exigible to ward off a dismissal for lack of standing.

## B. **The Financing Arrangement**.

This brings us to the merits. In that regard, the plaintiff's flagship claim is that the Contract contradicts an HCSCA provision governing the permissible length of financing arrangements in connection with health-club services contracts. That provision reads in relevant part:

> No contract for health club services shall require payments or financing by the buyer over a period that extends more than one month beyond the expiration of the contract.

Mass. Gen. Laws ch. 93, § 80. The plaintiff argues that the Contract runs from month to month — it creates, in effect, a series of one-month terms — and that each monthly term expires unless the subscriber elects to pay the next month's dues. Given this design, the plaintiff claims, the financing arrangement that she entered into, which covered a 36-month period, violates the HCSCA provision quoted above.

Bally demurs. Pointing to various contractual rights that extend over the 36-month period without regard to the payment vel non of monthly dues,[3] it depicts the term of the Contract as

_____

[3]These include the right to a refund of the membership fee for medical reasons or because of relocation, the right to pay the

-10-

36 months. Since this span corresponds precisely with the financing period, Bally opines that the Contract complies with the HCSCA imperative. The district court sided with Bally on this issue. See Ruiz, 447 F. Supp. 2d at 28.

We recognize the closeness of the question anent the duration of the Contract term. We conclude, however, that there is no need to answer that question. Here, the plaintiff's claim is foreclosed regardless of the length of the term. We explain briefly.

By its plain and unvarnished language, the HCSCA provision only proscribes health-club services contracts that require payments or financing running more than one month beyond the expiration of the contract's term. The Contract at issue here did not require any such extended payment plan or financing arrangement. Rather, it afforded the plaintiff a choice; she had the option of paying her membership fee in a lump sum when joining the health club or paying the fee in installments by means of a financing arrangement. Even after making an initial choice in favor of financing, she retained the right to prepay her membership fee in full at any time with no prepayment penalty.[4]

_____

membership fee in full and thereby obtain a refund of unearned finance charges, and the right to fixed monthly dues throughout the 36-month period.

[4]Had she elected to do so, Bally would have been contractually obligated to refund the unearned portion of the finance charges.

-11-

Seen in this light, it is transparently clear that the Contract does not require (or even encourage) long-term financing of the membership fee. Unless the statute means something other than what it says, the absence of any such requirement is fatal to the plaintiff's claim.

The plaintiff strives to convince us that the statute should be read with just such a rhetorical flourish. Cf. Lewis Carroll, Through the Looking-Glass (1871) ("'When I use a word,' Humpty Dumpty said, . . . 'it means just what I choose it to mean, neither more nor less.'"). She acknowledges that the word "require" typically means to demand, to compel, or to impose an obligation. See, e.g., Merriam-Webster's Collegiate Dictionary 1058 (11th ed. 2003) (defining "require" as "to claim or ask for by right and authority" or "to demand as necessary or essential"). Nevertheless, she exhorts us not to read the word literally; essentially, she asks us to equate it with "permit." In her view, the Contract, in combination with Bally's marketing practices, transgresses the spirit — if not the letter — of the HCSCA through the "artifice of the literal monthly renewal language." Appellant's Reply Br. at 4.

In support of this argument, the plaintiff cites a report published six years before the enactment of the HCSCA. See Federal Trade Commission, Report of the Presiding Officer on Proposed Trade Regulation Rule Concerning Health Spas, Public

-12-

Record 215-50 (1979) (FTC Report).    The FTC Report referenced
concerns that health clubs had been luring customers into long-
term contracts that obligated them to pay for services not yet
received.    See id. at 29.    The difficulty with the plaintiff's
attempt to mix and match a federal report and a state statute is
that she has provided us with no evidence that the Massachusetts
legislature was aware of the FTC Report when it enacted the HCSCA
— let alone any evidence that the legislature relied on that
document.  On these facts, the plaintiff's effort to characterize
the FTC Report as persuasive evidence of legislative intent is
unavailing.    Speculation and surmise cannot take the place of
proof.  See Franklin v. Albert, 411 N.E.2d 458, 462 (Mass. 1980).

            The plaintiff also adverts to the hoary principle that
remedial statues should be interpreted broadly to effectuate their
evident purposes, see, e.g., Roberts v. Enter. Rent-A-Car Co., 779
N.E.2d 623, 627 (Mass. 2002), and on the corollary principle that
a statute should not be read literally if a literal reading would
contravene the legislature's discernible intent, see, e.g.,
Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982).

            Here, however, those principles yield to the specific
wording of the HCSCA.    After all, it is settled beyond hope of
contradiction that "courts must presume that a legislature says in
a statute what it means and means in a statute what it says."
Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62 (2002).

Statutory interpretation begins with the language of the statute. Where, as here, that language is clear and unambiguous, the inquiry is at an end.   See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); López-Soto v. Hawayek, 175 F.3d 170, 172 (1st Cir. 1999).   Courts are not free to disregard the plain language of a statute and, instead, conjure up legislative purposes and intent out of thin air.[5]

To be sure, courts do make an occasional exception to the "plain language" rule in order to avoid obvious injustice or absurd results.   See Griffin, 458 U.S. at 571.   But no such exception is applicable here.   There is no internal ambiguity in the statutory provision, the overall statute suggests no other outcome, and the result reached by a literal application of its text is perfectly sensible.

Next, the plaintiff suggests that reading "require" to mean "require" will empty the statutory provision of all meaning. That construction should be avoided at all costs, she adds, because a court should not lightly presume that a legislature would enact a stillborn provision.   See Ins. Rating Bd. v. Comm'r of Ins., 248 N.E.2d 500, 504 (Mass. 1969).

We do not denigrate either the wisdom or the utility of the legal construct that this argument embodies.   But that

[5]This is not a case where either the structure of the statute or another of its provisions informs the meaning of the disputed term.

-14-

construct usually is applied when a particular interpretation of a statute would leave it bereft of any practical effect. See, e.g., Champigny v. Commonwealth, 661 N.E.2d 931, 933 (Mass. 1996).

The provision of the HCSCA that the plaintiff invokes does not fall within this taxonomy. Even when given the more circumspect reading that its text appears to demand, the provision forestalls several potential evils by prohibiting health-club services contracts that "require payments or financing [extending] more than one month beyond the expiration of the contract." So construed, the provision encourages health clubs to disclose the full cost of their contracts by giving consumers the right to pay those costs up front. Further, it ensures that customers cannot be forced into unwanted financing of health-club membership fees.

If more were needed — and we doubt that it is — we note that the Massachusetts legislature has used the words "require" and "permit" countless times in its enactments, typically attaching the conventional meaning to the word. Compare, e.g., Mass. Gen. Laws ch. 6, § 173, with, e.g., Mass. Gen. Laws ch. 12, § 5D(6). This is fairly convincing evidence that the legislature understands the difference between the two terms. See Roberts, 779 N.E.2d at 627 (presuming the legislature's familiarity with language that previously had been used in other Massachusetts statutes). Given this pattern of semantic usage, we see no reason to suspect that the legislature somehow confused the two familiar

-15-

words when enacting the HCSCA.  Cf. Beeler v. Downey, 442 N.E.2d 19, 23 (Mass. 1982) (declining to insert language legislature omitted when the language was used elsewhere in the General Laws).

To say more on this point would be supererogatory.  For the reasons elucidated above, we conclude that the Contract's financing component does not violate the HCSCA.

## C.  Waiver of Liability.

The plaintiff also objects to a separate provision of the Contract.  That provision, which concerns personal property that health-club members may choose to bring onto the premises, reads:

> We urge you not to bring valuables into the Club.  You agree that we will not be liable for the loss or theft of, or damage to, the personal property of members or guests.

The plaintiff argues that this language constitutes a waiver and, as such, violates an HCSCA provision that reads:

> [N]o contract for health club services may contain any provisions whereby the buyer agrees not to assert against the seller . . . any claim or defense arising out of the health club services contract or the buyer's activities at the health club.

Mass. Gen. Laws ch. 93, § 80.  The plaintiff also suggests that the same contractual language violates a separately codified statutory prohibition against waivers of consumer rights.  See id. § 101.

-16-

The plaintiff's claim, under either statute, depends upon the notion that the contractual provision actually effects a waiver. It does not.

Waiver is famously defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Waivers come in various shapes and sizes. Some are express; others are inferable from conduct or language "consistent with and indicative of an intent to relinquish voluntarily a particular right [such] that no other reasonable explanation . . . is possible." Att'y Gen. v. Indus. Nat'l Bank, 404 N.E.2d 1215, 1218 n.4 (Mass. 1980) (quoting Buffum v. Chase Nat'l Bank, 192 F.2d 58, 60-61 (7th Cir. 1951)).

In the context of the right to seek legal recourse, waivers ordinarily must be explicit. See Blanchette v. Sch. Comm. of Westwood, 692 N.E.2d 21, 27 (Mass. 1998); see also Willett v. Herrick, 155 N.E. 589, 593 (Mass. 1927) (finding release of all claims when release terms were "plain and distinct" and "disposed of all causes of action"). The contractual language identified by the plaintiff does not fit this mold. On its face, the provision does not purport to prohibit a contracting consumer from seeking legal redress against Bally.

The plaintiff argues that a violation of the HCSCA's prohibition on waivers can occur even in the absence of explicit

-17-

language barring access to a judicial forum. However, the disposition that she cites, Holiday Universal, Inc. v. Haber, 1990 Mass. App. Div. 69 (Mass. Dist. Ct.), is not helpful to her cause. The language of the agreement at issue there is much stronger than the language of the Contract. The plaintiff in Haber had agreed "to assume the risk of [any] injury" and "to indemnify [the defendant] from any and all liability" arising out of use of the facilities. Id. at 70. Nothing in the Haber decision, fairly read, compels a finding of waiver here.

In all events, the plaintiff's attempt to bring the Contract under the statutory proscription of waivers suffers from an even more obvious infirmity. If a waiver is, as we have said, an intentional relinquishment or abandonment of a known right or privilege, the waiving party must have a right or privilege to waive. Under Massachusetts law, customers — in the absence of an agreement to the contrary[6] — do not have a vested right of recovery against business owners for the loss of personal property brought onto business premises. See, e.g., D. A. Schulte, Inc. v. N. Terminal Garage Co., 197 N.E. 16, 19-20 (Mass. 1935) (holding garage owner not responsible for contents of stored truck).

The plaintiff has pointed to no statutory provision creating such a right of recovery in the health-club context. It

---

[6]There is no allegation here that the parties specifically agreed to the imposition of such liability.

therefore stretches the definition of waiver well past the breaking point to read the language of the Contract as a waiver. On that reading, the plaintiff would be relinquishing a phantom right.

To sum up, the clause in the Contract upon which the plaintiff relies does not effect a waiver. That clause is nothing more than a notice provision, outlining the parties' baseline rights and obligations under the law. As such, it does not violate either of the statutory prohibitions on waiver noted by the plaintiff.

### D. **Chapter 93A.**

Our conclusion that the Contract does not transgress the HCSCA makes quick work of the plaintiff's Chapter 93A claims.[7] Establishing a violation of Chapter 93A requires some heavy lifting. See Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004). A chapter 93A claimant must show that the defendant's actions fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," or were "immoral, unethical, oppressive, or unscrupulous," and resulted in "substantial injury." PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975); see Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510,

---

[7]These claims are procedurally in order. To pave the way for them, the plaintiff issued a pre-suit demand as required by the statute. See Mass. Gen. Laws ch. 93A, § 9(3).

1513 (1st Cir. 1989). Contractual provisions that fall within the compass of, but do not violate, specific consumer protection statutes hardly can trigger liability under Chapter 93A.   See Michael C. Gilleran, The Law of Chapter 93A § 10.5 (Supp. 2006) ("Where conduct is lawful, such as conduct in accord with the provisions of a statute, and such conduct is not undertaken maliciously, and is apparently justified, such conduct will not violate c. 93A."); see also Schubach v. Household Fin. Corp., 376 N.E.2d 140, 142 (Mass. 1978) (explaining that lawfulness of conduct under other statutes, while not conclusive on the subject of Chapter 93A liability, should be taken into consideration); cf. Atlantic Cement Co., Inc. v. S. Shore Bank, 730 F.2d 831, 834 (1st Cir. 1984) (suggesting that Chapter 93A could not be violated by conduct in full compliance with the U.C.C.).

Here, then, the contractual provisions previously discussed cannot ground a cause of action under Chapter 93A. There is nothing more to be said; the plaintiff has made no developed argument that the Contract offends Chapter 93A in any way distinct from her HCSCA claims. Consequently, her Chapter 93A claims fail.

## III.  CONCLUSION

We need go no further. We find, as a threshold matter, that the plaintiff has made the minimal showing of injury contemplated by the HCSCA and by Chapter 93A (and, thus, has

standing to sue).   On the merits, however, we hold that the
Contract does not violate either the HCSCA's extended financing
provision or the statutory prohibitions against waivers of
consumer rights.  And finally, Bally's conduct has not been shown
to offend the provisions of Chapter 93A.   It follows inexorably
that the district court appropriately dismissed the plaintiff's
amended complaint.

**Affirmed.**